## DECLARATION OF GEORGE BARNETT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Now comes George Barnett and makes the following Declaration:

1. My name is George Barnett. I am an employee of Alcoa USA Corp. and a representative of Local 104 of the United Steelworkers which is the bargaining representative of Alcoa employees from Alcoa's Warrick Operations in Newburgh, Indiana. I make this Declaration on personal knowledge, and I am competent to testify to the matters stated herein.

2. I have been employed by Alcoa at the Warrick Operations since November, 1997. I am currently a member of the Executive Board of USW Local 104 and a member of the USW Local 104 Negotiating Committee. Since May, 2016, I have also served as the Local 104 benefits representative.

3. As benefits representative, I assist both active employees and retirees with questions and problems that they have concerning either their insurance benefits or pensions. Employees or retirees who call the Local 104 office with questions relating to their insurance or pension benefits are generally referred to me, and I attempt to help them.

4. Prior to this year, I was rarely called upon to help folks who retired before May 31, 1993 with their Alcoa healthcare benefits. The only incidents that I can recall relate to Alcoa's reimbursement of Medicare Part B premiums to these retirees. In connection with the reimbursement, Alcoa required the pre-1993 retirees to annually submit the document that they received from Social Security/Medicare which specified the amount of their annual Medicare Part B premium. Occasionally, retirees would stop

1

by the Local 104 office seeking assistance with respect to the submission of this document to Alcoa, and I would assist them.

5. In late August or early September, 2020, Donald Hall, a pre-1993 retiree from the Warrick Operations who now lives in Florida, contacted Local 104. He sent a letter that he had recently received from Alcoa concerning a change in his health insurance benefits. This four-page undated letter advised retirees that beginning January 1, 2021, their health care benefit would be changed to an HRA contribution delivered through Via Benefits, advised retirees that they must enroll in the new coverage between October and December, 2020 or they would not be able to enroll and receive the contribution at a later date, provided a phone number and web site where retirees could obtain additional information and provided a schedule of events from September, 2020 through January 2021. A copy of this letter is attached to this Declaration as Exhibit A.

6. Mr. Hall was the first retiree to contact Local 104 about Alcoa's change in the benefits of pre-1993 retirees. Since September, Local 104 has received inquiries from over 20 retirees or surviving spouses concerning Alcoa's plan to change their insurance. In addition to Exhibit A, Alcoa and Via Benefits have sent out an additional packet of information entitled "2021 Getting Started Guide", which is attached as Exhibit B. Alcoa and/or Via Benefits have also made an on-line webinar available describing the transition to the new insurance and advising retirees what they must do to enroll in the new Medicare Exchange program. To be better able to assist the retirees, I have reviewed all of the foregoing written material that Alcoa and Via Benefits have provided to the retirees, and I have viewed the Webinar that was made available on-line.

7. As the change in benefits affects retirees from the Warrick facility who retired at least 27 years ago, most of the affected retirees and spouses are in their 80s and 90s. I have had in-person meetings or phone conversations with more than 16 of the retirees or spouses who have contacted the Local 104 office. I have recorded the names of 16 retirees with whom I have spoken, and I believe that I have had phone conversations with an additional 6 to 10 retirees whose names I did not record.

8. From my personal observation based on my interactions with these retirees, I have found that the retirees face several problems that make enrollment in the new Medicare Exchange program extremely difficult for them. First, they are overwhelmed by the volume of information that they need to understand in order to make the transition in benefits. Those retirees and spouses with whom I have spoken usually do not understand the written materials that Alcoa and Via Benefits have provided to them and they do not understand how Medicare Supplements, Medicare Advantage, or Health Reimbursement Accounts, which are central to the new health care program, work. It normally takes about one halfhour, depending on how many questions the retiree has, for me to explain to them what the transition is about and what they need to do to complete the process. If they then want me to assist them in compiling the necessary information that they are required to provide to Via Benefits, that process takes approximately an additional two hours. Second, most of the retirees lack the necessary computer skills to use the internet to obtain information from Via Benefits or to complete the enrollment process. They either do not own a computer or, if they own one, they do not have the skills necessary to navigate the internet. None of the retirees whom I have assisted have watched the Via Benefits on-line webinar. And third, as most of them are

3

unable to use a computer to enroll, they must enroll via telephone, and this process, which based on my experience takes up to six hours for a retiree and spouse, requires a degree of concentration and stamina that in my experience many of them do not have.

  9. One retiree and spouse I have assisted are John Joyner and his wife. After several phone calls during the first half of November, they came to the Local 104 hall on Thursday, November 19, 2019, to prepare for a phone call to Via Benefits for the purpose of enrolling. In our phone conversations, I had told them what they needed to bring in order to prepare for the phone call with Via Benefits. This included: their address, phone numbers, email addresses and last 4 digits of their social security numbers; a complete list of prescriptions that each of them have, including the name of the drug, the amount of the dosage, the frequency that they take the drug, and the frequency that each prescription is refilled; a complete list of doctors that are treating each of them including addresses and phone numbers; a complete list of hospitals, clinics where they have treatment; and a complete description of their checking account including name of the bank and the routing numbers associated with the account. When they arrived at the Local 104 hall on Thursday, they had managed to locate most of this information. I explained the transition process to them, and we went through the information that they had brought with them that would have to be supplied to Via Benefits in the phone call. I made a list of the information so that it would be readily available during the call. Altogether, we were together in the office for at least three hours preparing for the call. We then agreed that they would return to the Local 104 hall on the following day, Friday, November 20, and we would make the call to Via Benefits.

10. They returned on Friday at 10:40 a.m., and we began the call to Via Benefits. For each call to Via Benefits, information about the retiree and spouse must be provided to three different Via Benefits representatives, one after the other. Each of the representatives takes information from the retiree and spouse, and the time spent on the phone is lengthened by the fact that much of the same information must be provided to each of the three Via Benefits representatives. At 2:45 p.m. we were still on the phone. As I had to report to work for Alcoa at 3:00 p.m., I asked the Via representative how much longer the process was going to take, and she said that she was almost finished with John Joyner and would then move to his wife. As it was apparent that this process would not be finished by 3:00 p.m., and I had to go to work, we suspended the call at that time. I encouraged the Joyners to resume the call on their own the following week because my schedule was full for the remainder of November, and I thought the quicker they completed the process the better. I have recently spoken with Mrs. Joyner again, and she told me that her husband has received a notice stating that he is now enrolled in the new program, but she has not received such a notice. So she is confused about what her status is. I am on vacation this week, so Mrs. Joyner is going to telephone Tim Underhill, Business Manager for Local 104 and make arrangements to come in to the Local 104 hall this week and have him assist her to make another call to Via Benefits to learn what her status is. Like me, Mr. Underhill has learned the details concerning the transition process and has helped some retirees attempting to enroll. I believe that unless I or someone else was able to assist them by explaining the process and helping them organize the information that needed to be provided to Via Benefits, the Joyners would not be able to navigate the enrollment process on their own.

11. I have attempted to assist several surviving spouses who are in their late eighties or early nineties. One of these retirees, I believe it was Carolyn Reed, came to the Local 104 hall, andI met with her on October 14, 2020 to try to assist her with the enrollment process. She told me that she does not have a computer. As usual, I explained the process as a transition from the insurance that she has had since her husband retired to a program based on Medicare Supplements or Medicare Advantage and an HRA, and I then explained the specific information that she needed to collect in order to make the call to Via Benefits to enroll. Providing this information took at least a half hour. When I finished, she told me that the process was too difficult and that she was not going to fool with it. She said that she would have get along without the Company program.

12. Another retiree spouse that I assisted was Eleanor Daniel who is in her late eighties or early nineties. She and her son came into the Local 104 hall on or about October 22, 2020. They brought with them information that she needed to provide to Via Benefits in order to be enrolled. We got on the phone with Via Benefits and spent over two hours speaking with the Via Benefits representatives. We were unable to complete the enrollment because Ms. Daniel had failed to bring the necessary information about her checking account so she could not provide the Via Benefits representative with the checking account number and routing information. We concluded the call with Via Benefits, and Ms. Daniel told me that she would call Via Benefits the next day to provide the checking account information and complete the enrollment.

13. Another retiree that I assisted was Phillip Arend, who is in his late 80s. Mr. Arend came into the Local 104 hall the morning of November 11. His case was easier than most because he had no prescriptions to itemize and report to Via Benefits. I

began preparing the list of items that needed to be reported to Via Benefits, and it turned out that Mr. Arend had failed to bring in the necessary information concerning his checking account. I told Mr. Arend that we could not proceed without that information. So he returned home, got the checking account information, and came back to the Local 104 hall. We then made the call to Via Benefits and completed Mr. Arend's enrollment. The process took most of the morning.

14. A few of the retirees with whom I have spoken, like Ms. Daniel whose experience I describe in paragraph 12 above, have had the assistance of younger individuals like one of their children or grandchildren. These retirees have had the fewest problems enrolling because the younger person assisting them has been able to use a computer both to obtain information about the transition process and to accomplish the actual enrollment.

15. From my direct experience with the enrollment process and from my experience dealing with these retirees and spouses in their 80s and 90s, most of whom do not have computer skills or knowledge concerning Medicare Supplements, Medicare Advantage or Health Reimbursement Accounts, it is apparent to me that those retirees or spouses who cannot obtain the assistance of someone who does have computer skills and who does have knowledge concerning this transition process to an HRA will not be able to successfully complete the enrollment. I fear that there will be other retirees or spouses who, like Ms. Reed described in paragraph 11, find the process too difficult and give up. I also fear that other retirees and spouses who have not reached out to the Union may not be equipped to even begin the process.

Executed this _15th_ day of December, 2020

I declare under the penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

_____
George Barnett