IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ROBERT W. SIMPKINS et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALCOA USA CORP. et al.,<br><br>Defendants. | No. 3:20-cv-278-RLY-MPB |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO BIFURCATE**

Plaintiffs' motion to bifurcate is premature and will prejudice Defendant Alcoa USA Corp. ("Alcoa") and its ability to present its defenses in this putative class action. Despite recent Supreme Court precedent stressing the "rigorous analysis" required to address motions for class certification and whether bifurcation is warranted, Plaintiffs are rushing to demand that the Court preliminarily bifurcate discovery and trial into separate liability and damages "phases" and stay all consideration of damages—before any discovery has begun or class certification briefed. That proposed bifurcated schedule would deprive Alcoa of its right to fully and fairly defend itself against Plaintiffs' claims. Alcoa must understand and have the opportunity to address Plaintiffs' claimed damages during the class certification stage and any dispositive motion briefing and/or trial. Discovery into damages is necessary to determine whether Plaintiffs can meet their burden to show that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. The claims pled by Plaintiffs present a host of individualized issues inappropriate for class action treatment—including issues of both liability and damages unique to every class member—which can only be properly analyzed with damages discovery. Damages

discovery is also relevant to the underlying question of liability; in fact for at least one of Plaintiffs' claims, proof of damages is an element of liability. Granting Plaintiffs' motion would not only tie Alcoa's hands and prevent it from discovering information essential to its defense, but the gaps in evidence would also prevent the Court from making an informed decision on class certification and whether bifurcation is warranted or needed.

Plaintiffs' motion fails to provide a compelling reason to rush to bifurcate liability and damages at the outset of this case. The primary justification offered by Plaintiffs is that it would be more efficient and cost-effective to forego damages discovery now because damages cannot be fully calculated unless and until Plaintiffs prevail on the merits. But this argument misleadingly present damages discovery as an all-or-nothing affair. Alcoa is not currently seeking to calculate the total cost of damages before class certification or trial. Rather, it is seeking only the limited damages discovery relevant to issues of liability and whether the Plaintiffs' proposed class meets Rule 23's requirements. Plaintiffs' stated concern in their motion that the parties will have to conduct costly damages discovery twice unless the case is bifurcated now is overblown and misguided.

The other arguments made by Plaintiffs—that parties in retiree benefits class actions "routinely" agree to bifurcate liability and damages and that Courts "almost never" determine damages—are irrelevant and speculative. The self-serving pronouncements by Plaintiffs regarding their counsel's subjective views and experience in other cases are not legal authority. Whether class certification and bifurcation are appropriate is a determination that can only be made at a later date after the parties have been permitted to conduct discovery into the relevant issues in order to test and present their theories of the case. Plaintiffs' motion to strategically

limit discovery and bifurcate this case in the earliest stages is premature, unwarranted, and prejudicial. It should be denied.

## BACKGROUND

Plaintiffs initiated this putative class action against Defendants[1] on December 10, 2020. ECF No. 1. The parties filed a Proposed Joint Case Management Plan ("Joint CMP") on March 20, 2021. ECF No. 43. In the Joint CMP, Plaintiffs contended that the Court should preliminarily bifurcate discovery and trial into separate liability and damages "phases" and defer consideration of damages until some indeterminate time in the future. *Id.* at 6-7. Alcoa opposed Plaintiffs' proposal to bifurcate, and so the parties jointly proposed that the Court permit briefing on the issue. *Id.* at 7. On March 12, 2021, the Court entered an order on the Joint CMP and directed the parties to brief the issue of bifurcation. ECF No. 44. On March 22, 2021, Plaintiffs filed the motion to bifurcate. ECF No. 46.

Plaintiffs propose that the Court order "phased" discovery, before any discovery has begun, pursuant to which fact discovery related solely to liability issues would continue until the discovery cut-off date, October 10, 2021. *See* Pls.' Mot. to Bifurcate at 2, ECF No. 45 ("Pls.' Mot."). Plaintiffs' motion for class certification would be filed during this discovery period, on September 10, 2021. *See* Order on Case Management Plan at 12, ECF No. 44. After fact discovery on liability issues closes, Plaintiffs propose the parties file dispositive motions in December 2021. *See* Pls.' Mot. at 2. Plaintiffs then propose an additional 5-month discovery period for expert discovery related solely to issues of liability. *Id.* Then, if necessary, this case

---

[1] Defendants are Alcoa USA Corp., Retirees Group Benefit Plan for Certain Hourly Employees of Alcoa USA Corp., Medicare Exchange Healthcare Reimbursement Plan for Certain Medicare Eligible Retirees of Alcoa, and Alcoa Medicare Part B Reimbursement Plan for Certain Medicare Eligible Retirees of Alcoa USA. This response brief is submitted on behalf of all Defendants.

would proceed to trial, again on issues of liability only, in or after September 2022. *Id.* Plaintiffs would then have this Court schedule an entirely separate round of discovery and trials for purposes of determining and assessing damages, under a schedule to be developed by the parties only after the trial. *Id.*

## ARGUMENT

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." "The burden is on the moving party to show that bifurcation is proper." *Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 232874, at *11 (N.D. Ill. May 30, 2019).

"The Seventh Circuit has set forth the conditions that must be met before a Court may separate claims or issues for trial" under Rule 42(b). *Webster v. Ctr. for Diagnostic Imaging, Inc.*, No. 1:16-cv-2677, 2018 WL 656345, at *1 (S.D. Ind. Feb. 1, 2018) (Magnus-Stinson, J.). "First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). "Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation." *Id.* "Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Id.* "Finally, separate trials must not be granted if doing so would violate the Seventh Amendment." *Id.* In other words, in deciding whether to bifurcate, "[t]he court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). However, "[w]hen weighing the competing equities under Rule 42(b), ***prejudice is the Court's most important consideration***."

4

*Fetzer v. Wal-Mart Stores, Inc.*, No. 12-cv-9312, 2016 WL 6833912, at *5 (N.D. Ill. Nov. 21, 2016) (quotation omitted) (emphasis added).

Under Rule 26(d), the Court may modify the timing and sequence of discovery. The rules of discovery authorize broad discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). For purposes of pretrial discovery, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### I.     Plaintiffs' motion to bifurcate is premature and will prejudice Alcoa.

The equities weigh in favor of Alcoa having every opportunity to investigate all evidence relevant to the issue of class certification and liability, including damages. In order to be able to fully and fairly defend itself against Plaintiffs' claims, Alcoa must understand and have the opportunity to address Plaintiffs' claimed damages during the class certification stage and any dispositive motion briefing and/or trial.

The Supreme Court has stressed in recent years the requirement to give careful consideration to the question whether a plaintiff has carried their burden to show that a putative class should be certified under Rule 23, as "the class certification decision is generally the most important aspect of a class action case." William B. Rubsenstein, *Newberg on Class Actions* § 7:18 (5th ed. 2013); *see also* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1785 (3d ed. 2013) ("The determination whether or not to certify an action as a class action has enormous implications for all participants—the named parties, the absent class members, and the court itself."). Class actions "may only be certified if the trial court is satisfied, after a ***rigorous analysis***, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis added); *see*

5

*also* 5 James Wm. Moore et al., *Moore's Federal Practice*, §23.80[1] (2021) ("The court must conduct a 'rigorous analysis' into whether all the prerequisites of Rule 23(a) and (b) have been met before certifying the suit as a class action or denying certification."). In 2011, the Supreme Court re-emphasized this high standard in *Wal-Mart Stores, Inc. v. Dukes*, stating that the rigorous analysis will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." 131 S. Ct. 2541, 2551 (2011). Two years later in *Comcast Corp. v. Behrend*, the Supreme Court again spelled out that district courts "must conduct a rigorous analysis" to determine whether all aspects of a putative class action, ***including damages***, are suitable for class certification. 133 S. Ct. 1426, 1433 (2013) (examining plaintiffs' damages models at the class certification stage and whether it showed that damages could be calculated on a classwide basis).

Plaintiffs' proposal to forego any damages discovery in this case until after a trial on the merits would inappropriately result in a limited record at the class certification stage, preventing the kind of full and conclusive "rigorous analysis" that is necessary under the law. Although Plaintiffs would clearly benefit from the Court not devoting any attention to damages and instead rushing to bifurcate these proceedings now, such a result would be fundamentally improper and severely prejudice Alcoa. *See Chitwood v. Bacon*, No. 3:20-cv-122, 2020 WL 7774900, at *1 (D. Ala. Dec. 30, 2020) (denying motion to bifurcate liability and damages, in part because "the motion is premature given that substantial discovery has not yet taken place"); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-cv-226, 2017 WL 359852, at *6 (N.D. Ind. Jan. 25, 2017) (stating that the decision of whether to bifurcate discovery between liability and damages "is better decided in conjunction with the class certification analysis" than before); *Krueger v. N.Y. Telephone Co.*, 163 F.R.D. 446, 448 (S.D.N.Y. 1995) (denying plaintiffs' motion to bifurcate liability and damages and to stay discovery pending resolution of a trial on liability issues, and

finding that "staying discovery at this point, given the circumstances of the case, would be both inefficient and unfair" and that "defendants are entitled to discovery from the class members with respect to damages and liabilities issues"); *Newberg on Class Actions* § 7.14 ("[T]he defendant is entitled to utilize . . . discovery devices to demonstrate that the facts cut against certification."); 5 James Wm. Moore et al., *Moore's Federal Practice*, §23.85[1] (2021) ("Typically, district courts will allow discovery relevant to determining whether the requirements of Rule 23(a) are satisfied and whether the action is maintainable under one of the categories listed in Rule 23(b)."); *Manual for Complex Litigation* (Fourth) § 21.14 (2012) ("Some discovery may be necessary . . . when the facts are relevant to any of the certification requirements are disputed, or when the opposing party contends that proof of the claims or defenses unavoidably raise individual issues.").

Here, damages discovery is necessary and directly relevant to both liability issues and class certification. Plaintiffs are alleging that Alcoa has violated ERISA and the LMRA by modifying the healthcare insurance for certain hourly retirees, surviving spouses, and dependents by transitioning their prior group healthcare plan to an annual healthcare reimbursement account ("HRA") with funds to purchase their own healthcare insurance through an insurance exchange. *See, e.g.*, Pls.' Compl. ¶ 8. Plaintiffs define the putative class as essentially all retirees formerly represented by the Plaintiff-Unions[2] whose healthcare insurance was modified by Alcoa. *See id.* ¶ 80. However, it is undisputed that a large portion of the putative class members have enrolled in the new HRA program and continue to receive healthcare insurance from Alcoa following the change—over 67% of the putative class, according to Alcoa's figures in December 2020. *See*

---

[2] The Plaintiff-Unions are United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, and Aluminum Trades Council of Wenatchee, Washington AFL-CIO.

Defs.' Resp. to Pls.' Mot. Prelim. Inj. at 10, ECF No. 30.  Alcoa believes that few, if any, members of the putative class suffered any harm as a result of obtaining healthcare insurance through their new HRA accounts rather than the prior group plan, and accordingly the putative class as defined by Plaintiffs is inappropriately overbroad for certification.  *See Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018) ("We have said that a class should not be certified if 'it sweeps within it persons who could not have been injured by the defendant's conduct . . . [or] if it is apparent that it contains a great many persons who have suffered no injury.'" (quoting *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)).

  Moreover, the majority of the putative class members may not want to return to the old form of healthcare insurance, and even the minority of retirees who did not enroll in the HRA program may already have benefits available through other healthcare plans, such as a spouse's plan, that would leave them better off than either the prior group plan or the new HRA program.  These questions relating to damages raise the issue of a conflict of interest and whether the class representatives can adequately represent the interests of the putative class as required by Rule 23(a)(4).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (stating that the "adequacy inquiry" under Rule 23(a)(4) serves primarily "to uncover conflicts of interest between named parties and the class they seek to represent").

  In addition, although the bulk of Plaintiffs' complaint alleges that the transition to the HRA program violates collective bargaining agreements ("CBAs") and related plan documents between the Plaintiff-Unions and Alcoa, Plaintiffs also allege that putative class members received "other promises" from Alcoa outside of the documents to provide continuing healthcare insurance.  *See* Pls.' Compl. ¶ 8, ECF No. 1.  In order to prove such a claim under federal law and Indiana state law, each purported class member would be required to show that they relied

8

on Alcoa's alleged promises and suffered financial damages as a result. *See Burton v. Gen. Motors Corp.*, No. 1:95-cv-1054, 2008 WL 3853329, at *12 (S.D. Ind. Aug. 15, 2008) (upholding jury instructions for promissory estoppel claim in LMRA lawsuit requiring plaintiffs to show that "the plaintiff suffered a financial loss because [defendant] broke the promise"). Not only does this inquiry into damages present individualized issues unsuitable for class treatment, but courts have also instructed that it is generally inappropriate to bifurcate trial into liability and damages phases when the nature or extent of a plaintiff's damages is probative of the underlying question of liability. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 841 (N.D. Ill. 2006) (finding bifurcation inappropriate because the issues of liability and damages were intertwined); O*rtega v. United States*, No. 16 C 5475, 2017 WL 3841632, at *5 (N.D. Ill. Aug. 31, 2017) (same).

Moreover, among other forms of relief, Plaintiffs are requesting that the Court award the putative class members individual "monetary damages" to restore them to the position in which they would have been prior to the modification of their healthcare insurance. *See* Pls.' Compl. at 26, ECF No. 1. It is unclear and unlikely that all class members suffered common damages. If Plaintiffs do not have common claims for damages, that would make certification potentially inappropriate. *See Comcast*, 133 S. Ct. at 1433 (recognizing that plaintiffs bear the burden of establishing that their damages case meets the requirements of Rule 23); Fed. R. Civ. P. 23(b)(3) (requiring that "[t]he questions of law or fact common to class members predominate over any questions affecting only individual members").[3]

---

[3] In addition to Rule 23(b)(3), which authorizes class actions for monetary damages, Plaintiffs also seek to certify classes under Rules 23(b)(1) and 23(b)(2). *See* Pls.' Compl. ¶¶ 88-90, ECF No. 1. However, the Supreme Court has expressed serious doubt about whether claims for monetary damages may ever be certified under Rule 23(b)(2), and monetary relief also makes certification under Rule 23(b)(1) inappropriate as well. *See Dukes*, 131 S. Ct. at 2557-58.

9

In their motion to bifurcate, Plaintiffs contend that individualized damages will never preclude class certification and are therefore irrelevant to the Court's analysis. *See* Pls.' Br. Supp. Mot. to Bifurcate ("Pls.' Br.") at 6-9, ECF No. 46. This is wrong and fundamentally misrepresents Seventh Circuit precedent. For example, in *Espenscheid v. DirectSat USA, LLC*, the Seventh Circuit made clear that variance in class members' damages both forbids an unmanageable trial and prevents the extrapolation of damages from the representatives to the class as a whole. 705 F.3d 770, 773-777 (7th Cir. 2013). The court determined that the plaintiffs' proposed trial plan was infeasible due to variance in damages across class members, and that class treatment was not appropriate because a formulaic calculation of damages was not possible and over 2,000 separate individual damages hearings loomed. *Id.* at 773-774. Other courts in the Seventh Circuit have made similar findings. *See Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232, at *8-9 (N.D. Ill. Aug. 27, 2014) (denying motion to certify class based on individualized damages issues, and rejecting plaintiffs' "extreme position" that "individualized hearings on damages are never a problem"); *see also* 5 James Wm. Moore et al., *Moore's Federal Practice*, §23.45[2][b] (2021) ("The presence of individual damages issues . . . may require a court to deny certification of a Rule 23(b)(3) class action. Courts have denied certification in cases in which calculations of damages are complex or otherwise burdensome.").[4]

Plaintiffs emphasize in their motion that the Seventh Circuit has stated that "[i]t has long been recognized that the need for individual damages determinations at [a] later stage of the

---

[4] Although *Espenscheid* and *Dailey* were class actions under the Fair Labor Standards Act, the Seventh Circuit applies the same standards for class actions under Rule 23. *See Espenscheid*, 705 F.3d at 772 ("[T]here isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences."); *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) (analyzing whether "common questions predominate[d]" in a proposed FLSA collective action).

litigation does not *itself* justify the denial of certification," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) (emphasis added), and that Rule 23 does not require that "every member of the class have *identical* damages," *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, (7th Cir. 2013) (emphasis added).  Courts can of course use bifurcation as a convenient and efficient mechanism to manage individual issues in class actions, but that does not mean that individualized damages issues are never a problem or can simply be glossed over.  Rather, as stated by the Seventh Circuit in *Butler*, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be *readily determined* in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." 727 F.3d at 801.  But if individual damages issues overwhelm the questions common to the class and Plaintiffs cannot show through evidence that damages are capable of being "readily determined," then certification is inappropriate.  *See Espenscheid*, 705 F.3d at 773-77; *Dailey*, 2014 WL 4379232, at *8-9; Fed. R. Civ. P. 23 Advisory Committee's Note to 2003 Amendment ("An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.").  Furthermore, Plaintiffs also argue they can overcome any individualized damages issues through the certification of separate issue and damages classes under Rule 23(c)(4), but courts in the Seventh Circuit have held that the case must first satisfy the predominance requirement as a whole.  *See Hamilton v. O'Connor Chevrolet, Inc.*, No. 02-cv-1897, 2006 WL 1697171, at *6 (N.D. Ill. June 12, 2006) ("[A] class action movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment . . . when

other individualized issues will dominate or be meaningfully material to the resolution of the absent class members' claims.").

The above examples are just a sample of the damages discovery relevant to issues of liability and class certification in this case. Decisions as to how to best manage this litigation should not be made until relevant discovery has been completed. *See* 4 Newberg on Class Actions § 11:3 (5th ed.) ("Courts often consider bifurcation **at the class certification stage** in determining whether common issues predominate and whether a class suit would, therefore, be a superior form of adjudication." (emphasis added)). Alcoa should have every opportunity to investigate all relevant evidence pertaining to the issues of class certification and liability, and will suffer material prejudice in its ability to make its case if Plaintiffs' motion is granted.

II.     **Plaintiffs fail to provide any compelling reason to prematurely bifurcate liability and damages.**

Plaintiffs' primary argument to rush to bifurcate this case and stay all damages discovery is that it would be more efficient and cost-effective. According to Plaintiffs, "damages here will continue to accrue until the contractual benefits are reinstated, which would most likely occur only after liability is found," and "any discovery taken before liability is found and benefits are reinstated would necessarily be incomplete." Pls.' Br. at 4-5. Plaintiffs contend that "absent bifurcation of discovery, the parties would be obliged to conduct damages discovery twice, and absent bifurcation of trial, two separate damages proceedings would be required," such that "[t]he inefficiency of denying bifurcation is plain." *Id.* at 5. These arguments miss the mark and are deeply misleading. Alcoa is not seeking to calculate the total cost of all damages before certification and trial. The proportionality standard under Rule 26(b)(1) can effectively limit pre-certification damages discovery to issues relevant to liability and whether the Plaintiffs' proposed class meets Rule 23's requirements. And in any event, efficiency gains from

preventing Alcoa the opportunity to seek relevant discovery are vastly outweighed by the substantial prejudice that Alcoa would suffer, as discussed above.

Plaintiffs' remaining arguments for preliminary bifurcation rely on speculation and unpersuasive or irrelevant authority. They proclaim that "parties in retiree healthcare cases routinely join to seek bifurcation of liability and damages, whether for discovery, trial, or both," and cite to several cases in which their current attorneys were counsel of record, as well as a declaration by an attorney in Plaintiffs' law firm. *See id.* at 2-3; Pls.' Ex. F. Plaintiffs argue that the attorney "averred in another retiree healthcare case . . . that he had 'rarely experienced a situation in which a company defendant opposed bifurcation'" over his career representing retirees and unions, but his experience is irrelevant and not legal authority. *Id.* at 3 n.1. The self-serving, subjective views and experience of Plaintiffs' counsel should not serve as the benchmark for resolving a dispute between the parties. Further, despite Plaintiffs' pronouncement that bifurcation in retiree healthcare class actions is "routine," they have tellingly not demanded bifurcation in another retiree healthcare class action they brought against Alcoa in this Court, and which has been ongoing since December 2019. *See Butch v. Alcoa*, No. 3:19-cv-258 (S.D. Ind.), Proposed Joint Case Management Plan, ECF No. 53, attached as Exhibit 1.

In fact, in nearly all of the cases relied on by Plaintiffs for support (*see* Pls.' Br. at 3-4, 6-8), the decision to bifurcate liability and damages was made ***after*** class certification had been decided or ***after*** discovery had already taken place (and usually both):

- ***Contreras v. ASARCO LLC*, No. 2:18-cv-3495 (D. Ariz.).** The parties agreed to bifurcate damages and liability after the court had already certified a class. *See* ECF No. 87 (order certifying class, predating proposed joint case management plan), attached as Exhibit 2; Pls.' Ex. A (proposed joint case management plan).

- ***Comer v. Gerdau Ameristeel US Inc.*, No. 8:14-cv-607 (M.D. Fla.).** The parties agreed to bifurcate damages and liability after the court had already

13

certified a class.  *See* ECF No. 37 (order certifying class, predating amended case management report), attached as Exhibit 3; Pls.' Ex. C (amended case management report).

- ***Dewhurst v. Century Aluminum Co.*, No. 2:09-1546 (S.D. W.Va.).**  Damages and liability were bifurcated after the court had already certified a class.  *See* ECF No. 78 (order certifying class, predating the joint report of the parties' planning meeting), attached as Exhibit 4; Pls.' Ex. E (joint report of the parties' planning meeting).

- ***Zanghi v. FreightCar America, Inc.*, No. 3:13-cv-146, 2016 WL 223721 (W.D. Pa. Jan. 19, 2016).**  Damages and liability were bifurcated after the court had already certified a class and after extensive discovery in underlying related litigation where classes had also been certified.  *See* ECF No. 94 at 4 (report of Rule 26(f) planning meeting discussing underlying litigation), attached as Exhibit 5; ECF No. 100 (order certifying class and granting bifurcation), attached as Exhibit 6.

- ***Tackett v. M&G Polymers USA, LLC*, No. 2:07-cv-126, 853 F. Supp. 2d 697 (S.D. Ohio 2012).**  The parties agreed to bifurcate damages and liability after the court had already certified a class.  *See* ECF No. 103 (order certifying class, predating bifurcation), attached as Exhibit 7; ECF No. 166 (order granting motion to bifurcate), attached as Exhibit 8.

- ***Winnett v. Caterpillar Inc.*, Nos. 3:06-cv-235, 3:06-cv-1113, 2010 WL 4249124 (M.D. Tenn.).**  Damages and liability were bifurcated after the court had already certified a class and after extensive discovery.  *See* ECF No. 140 (order certifying class, predating bifurcation), attached as Exhibit 9; ECF No. 367 (order granting motion to bifurcate), attached as Exhibit 10.

- ***Grove v. Johnson Controls, Inc.*, No. 12-cv-2622 (M.D. Pa.).**  Damages and liability were bifurcated after the court had already certified a class and after extensive discovery.  *See* ECF No. 88 (order certifying class, predating bifurcation), attached as Exhibit 11; Pls.' Ex. G (order granting motion to bifurcate).

- ***Merrill v. Briggs & Stratton Corp.*, No. 2:10-cv-700 (E.D. Wis.).**  Damages and liability were bifurcated after the court had already certified a class and after extensive discovery.  *See* ECF No. 61 (order certifying class, predating bifurcation), attached as Exhibit 12; Pls.' Ex. H (order approving bifurcation).

- ***Curtis v. Alcoa*, 3:06-cv-448, 2009 WL 3334929 (E.D. Tenn. Sept. 1, 2009).**  Damages and liability were bifurcated after the court had already certified a class and after extensive discovery.  *See* ECF No. 179 (order certifying class, predating bifurcation), attached as Exhibit 13; ECF No. 454 (order bifurcating trial), attached as Exhibit 14.

- ***Temme v. Bemis Company, Inc.***, No. 2:08-cv-90, 2012 WL 13140409 (E.D. Wis. Apr. 18, 2012). Damages and liability were bifurcated after the court had already certified a class and after extensive discovery. *See* ECF No. 50 (order certifying class, predating bifurcation), attached as <u>Exhibit 15</u>.

Even in *Amos v. PPG Industries, Inc.*, No. 2:05-cv-70, 2014 WL 12847118 (S.D. Ohio Oct. 31, 2014)—which Plaintiffs highlight as a case where the court ordered bifurcation over the defendant's objection that it required damages discovery in order to oppose class certification, *see* Pls.' Br. at 7-8—discovery had already been ongoing for well over a year, with the parties already deposing numerous witnesses (including one of the named plaintiffs with regard to his individual damages) and exchanging extensive written discovery. *See id.*, Joint Mot. to Extend Disc., ECF No. 140 (discussing discovery conducted as of October 23, 2013, over one year before bifurcation), attached as <u>Exhibit 16</u>; *id.*, Defs.' Resp. to Pls.' Mot. to Bifurcate at 6, ECF No. 215 (citing deposition testimony by named plaintiff regarding his damages), attached as <u>Exhibit 17</u>. Moreover, the defendants in *Amos* had already agreed to bifurcation of damages and liability at trial, and the Court specifically noted that the defendants did not contend that the plaintiffs could not establish that all of the putative class members had suffered damages (unlike Alcoa here). *Id.*, 2014 WL 12847118, at *1, 3. Finally, half of the defendants did not even oppose bifurcation of discovery. *See* Defs.' Resp. to Pls.' Mot. to Bifurcate at 6, ECF No. 215, <u>Exhibit 17</u>. Accordingly, *Amos* and the other case law cited by Plaintiffs discussed above are inapposite to the circumstances presented here, where Plaintiffs are seeking to bifurcate liability and damages before class certification briefing and before ***any*** discovery has taken place.

Elsewhere in their motion, Plaintiffs contend that courts "almost never" determine damages in retiree healthcare class actions because "[w]hen a defendant prevails, there obviously is no need of damages evidence or damages calculations," and "when retirees prevail, the parties are highly incentivized to work together to resolve the issue of damages." Pls.' Br. at 1-2. These

15

remaining arguments amount to little more than speculation and do not support bifurcation or denying Alcoa relevant discovery necessary for its defense. *See Chitwood*, 2020 WL 7774900, at \*1 (denying motion to bifurcate liability and damages, and stating that "plaintiff's contention that bifurcating the trial could eliminate the need to try damages is nothing more than speculation"); *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990) (stating that the "observation that a jury determination of no liability would eliminate the need for a trial on damages" is true in any case and "does not advance the cause of bifurcation").

### III. The damages sought by Plaintiffs are vague and shifting, requiring discovery in order for Alcoa to understand the true scope of Plaintiffs' claims.

Finally, it is worth noting that the nature of the damages sought by Plaintiffs is vague and unclear to Alcoa, and have already shifted over the short course of this case. In the Joint CMP filed on March 10, 2021, Plaintiffs for the first time claimed that they are seeking "disgorgement necessary to remedy Alcoa's termination of class members' retiree healthcare benefits." ECF No. 43 at 6. Plaintiffs' Complaint does not mention disgorgement anywhere, and their motion to bifurcate is equally silent on disgorgement despite the motion's focus on the issue of damages. The Court should not permit Plaintiffs to hide their damages theories in a black box until the conclusion of this case. Alcoa must be able to obtain discovery on the exact nature of the damages and remedies Plaintiffs are seeking in order to effectively present its defense and consider any potential settlement. This is another reason to deny Plaintiffs' motion.

### CONCLUSION

The Court should deny Plaintiffs' motion to bifurcate and allow Alcoa the opportunity to investigate all relevant evidence pertaining to the issues of class certification and liability, consistent with its proposed case plan. *See* Joint CMP, ECF No. 43.

Respectfully submitted,

Dated:  April 5, 2021        /s/ *Mark E. Miller*
Mark E. Miller (Attorney No. 10458-82)
Mark Miller Law Office
915 Main Street – Suite 203
P.O. Box 3009
Evansville, Indiana  47730
Telephone: 812.303-3444
mmiller@indianalawonline.com

K&L GATES LLP

Thomas Birsic (*pro hac vice*)
Jeffrey Richter (*pro hac vice*)
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: 412.355.6500
Fax: 412.355.6501
thomas.birsic@klgates.com
jeff.richter@klgates.com

Rosemary Alito (*pro hac vice*)
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: 973.848.4000
Fax: 973.848.4001
rosemary.alito@klgates.com

*Counsel for Defendants Alcoa USA Corporation, Retirees Group Benefit Plan for Certain Hourly Employees of Alcoa USA Corp., Medicare Exchange Healthcare Reimbursement Plan for Certain Medicare Eligible Retirees of Alcoa, and Alcoa Medicare Part B Reimbursement Plan for Certain Medicare Eligible Retirees of Alcoa USA*

## **CERTIFICATE OF SERVICE**

I certify that, on April 5, 2021, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court to be served on all counsel of record by operation of the Court's CM/ECF filing system.

/s/ *Mark E. Miller*
Mark E. Miller