UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LYNNETTE J. KAISER, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ALCOA USA CORP., *et al.*, )<br>)<br>Defendants. ) | No. 3:20-cv-00278-RLY-MPB |

**ENTRY GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

In 2021, Defendant Alcoa USA Corp. terminated its Fixed Group Health Plan (or the "old plan") for pre-1993 retirees, surviving spouses, and dependents' health insurance benefits and instituted an allegedly less favorable Health Reimbursement Arrangement. The old plan had been guaranteed pursuant to pre-1993 collective bargaining agreements between Alcoa and the retirees' Unions—the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"), the Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC"), and their predecessors.

Plaintiff, Lynnette J. Kaiser, was entitled to benefits under the Fixed Group Health Plan as a surviving spouse of a pre-1993 Alcoa retiree. She challenges that old plan's elimination of retiree healthcare coverage. She believes the collective bargaining agreements that established the old plan guaranteed that coverage under the old plan could not be unilaterally terminated. For this proposition she points to bargaining

1

between Alcoa and the Unions in 1993 which, for the first time, gave Alcoa the right to unilaterally terminate benefits. Because there are approximately 3,153 retirees, surviving spouses, and dependents who retired before the 1993 agreement and are not subject to that agreement, Plaintiff Kaiser seeks class certification. After reviewing the parties' submissions and the evidence, the court **GRANTS** Plaintiff's motion for class certification.

I.      **Background**

Beginning in 1977, Alcoa and the Unions negotiated a series of collective bargaining agreements for Alcoa employees and retirees that would provide healthcare benefits to Union retirees, their spouses, and their dependents. (Filing No. 42, Answer ¶ 3; *see also generally* Filing No. 83-1, 1977 Master Agreement). These collective bargaining agreements, also known as "master agreements," stated that Alcoa would provide health insurance coverage for employees that became known as the Fixed Group Health Plan. (Answer ¶ 1). They also guaranteed that "[n]o employee covered by this article shall suffer any reduction in the level of any of the several healthcare benefits of this Article." (*See, e.g.*, Filing No. 83-9, 1988 Master Agreement at 98–99).[1] Alcoa could only diminish or eliminate benefits when "subsequent governmental legislation provides for the reduction or elimination of the premium for Medicare Part B for any person." (*Id.*)

---

[1] The other master agreements have substantively identical language. (*See generally* Filing Nos. 83-1 to 11).

By 1993 Alcoa faced an "increase in the companies' total retiree-healthcare costs" from both higher payments to healthcare providers and a newly recognized accounting obligation that heightened the Company's projected retiree-healthcare costs. *Curtis v. Alcoa, Inc.*, 525 Fed. App'x 371, 373 (6th Cir. May 9, 2013). Accordingly, Alcoa and the Unions bargained over placing limitations on retiree healthcare benefits. *Id.* Ultimately, after fierce negotiations, they agreed to prospectively cap lifetime healthcare benefits in exchange for increased pension and 401(k) benefits. *Id.* Alcoa and the Unions implemented this cap in 2007 to apply only to employees that retired after May 31, 1993. *Curtis v. Alcoa, Inc.*, No. 3:06-cv-448, 2011 WL 850410, at *1 (E.D. Tenn. March 9, 2011).

Plaintiff Kaiser argues the implication of the 1993 negotiations and the 2007 implementation is that both the Unions and Alcoa believed all the prior collective bargaining agreements contained guaranteed and uncapped lifetime benefits. (Pl's. Br. at 10–11). The Sixth Circuit thought similarly. *Curtis*, 525 Fed. App'x at 373 ("Under the parties' 1988 CBA that expired in 1992, the companies provided lifetime, uncapped retiree-healthcare benefits."). Alcoa and their agents even treated pre-1993 retirees' healthcare benefits as a single group of "Uncapped" retirees. (Ackerman Decl. at 87, 89). On January 1, 2020, Alcoa terminated its Fixed Group Health Plan for pre-1993 retirees and created a new Health Reimbursement Arrangement which provides more limited funds and allows Alcoa to terminate the Fixed Group Health Plan at will. (Compl. ¶¶ 1, 8; *see also* Filing No. 49-1, HRA Plan Description at 13).

The putative class of plaintiffs are retirees, their spouses, and their dependents, who were represented by the Unions, retired before the 1993 master agreement came into effect, and had been receiving benefits under Alcoa's Fixed Group Health Plan prior to its termination. (Compl. ¶¶ 80–86). According to Alcoa, the putative class contains approximately 3,153 individuals. (Filing No. 90-1, Ackerman Decl. ¶ 12). Plaintiff Kaiser seeks to certify this class and alleges that each of these putative class members had a right to lifelong healthcare benefits that could not be unilaterally diminished by Alcoa. (Compl. ¶¶ 1, 2). She is the spouse of a retiree from Alcoa's Warrick facility in Newburg, Indiana, who USW represented during his employment. (Answer ¶¶ 3–4). Plaintiff Kaiser had been entitled to healthcare benefits under the old plan prior to its termination. (Compl. ¶ 15).

## II.   Legal Standard

To determine whether class certification is proper, the "court may not simply assume the truth of the matter as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Therefore, the plaintiff must "prove that there are *in fact* sufficiently numerous parties [and] common questions of law or fact" by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis original). While this "will entail some overlap with the merits," *id.*, it does not provide a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Ct. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013). Accordingly, the court may consider the merits "only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied." *Id.* This brief survey of the merits may not evaluate the probable outcome of a merits question; it only serves to determine if the Rule 23 factual predicates exist. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001); *see also Amgen* 568 U.S. at 466.

### III.   Discussion

To meet her burden for class certification, Plaintiff Kaiser must show the proposed class satisfies "the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner*, 669 F.3d at 811. Rule 23(a) requires that the class satisfy the requirements of commonality, numerosity, typicality and adequacy of representation. Fed. R. Civ. P. 23(a). Following that analysis, Rule 23(b) allows class certification if (1) separate actions would establish "incompatible standards of conduct for the party opposing the class" or individual adjudication would "be dispositive of the interests of the other members not parties to the individual adjudication," (2) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" so that injunctive relief "is appropriate respecting the class as a whole," or (3) "questions of law or fact common to class members predominate," Fed. R. Civ. P. 23(b)(1–3).

The court concludes all the Rule 23(a) requirements are satisfied, and the class can be certified under Rule 23(b)(2). The putative class of 3,153 retirees all share the common question of whether Alcoa first gained the power to unilaterally terminate benefits after 1993 which satisfies the first three Rule 23(a) requirements. The court also finds Plaintiff Kaiser is adequate to represent the class. And because the issue here is that

5

Alcoa has acted in a generally applicable way to each member of the class and any potential relief is indivisible as to each member of the class, certification under Rule 23(b)(2) is proper.

### 1. Commonality

Commonality focuses on whether "there are questions of law or fact common to the class." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). In that regard, the focus is on whether the members of "the proposed plaintiff class are the victims of a common wrong rather than many individualized wrongs," Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 156 (2009), rather than whether plaintiffs merely suffer "as a result of a violation of the same provision of law." *Chi. Tchrs.*, 797 F.3d at 434. The claims "must depend on a common contention" that is "capable of classwide resolution" meaning the resolution of the question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Although, a proposed class need not show "the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015).

Plaintiff Kaiser demonstrates that whether the 1993 agreement gave Alcoa the new power to terminate or diminish health insurance benefits is a common question. Plaintiffs' claim is that prior to 1993, Alcoa guaranteed its employees "lifetime, uncapped retiree-healthcare benefits" and that Alcoa violated that contractual right. (*See* Compl. ¶ 39); *see also Alcoa*, 525 F. App'x 371, 373 (6th Cir. May 9, 2013). If that were true, Alcoa's termination of the old health insurance plan would have violated each class

6

members' right to lifetime benefits. That creates commonality. Because the courts determination of the novelty of the power to diminish retiree benefits will greatly further the resolution of each class members' claim, that question is a common question to the class.

      A peek at the merits confirms this is a common question because the pre-1993 collective bargaining agreements seem to place no limitations on the retirees benefits while limitations first appear during the 1993 bargaining cycle. Specifically, the master agreements contain language identical or similar to language guaranteeing that "[n]o employee covered . . . shall suffer any reduction in the level of any of the several healthcare benefits" provided by the contract. (*See, e.g.*, 1988 USW Master Agreement at 98–99). The contracts further provide that Alcoa could only reduce or eliminate benefits "if subsequent governmental legislation provides for the reduction or elimination of the premium for Medicare Part B for any person." *Id.* The Sixth Circuit, considering the merits, described a pre-1993 agreement as guaranteeing that Alcoa would "provide[] lifetime, uncapped retiree-healthcare benefits." *Curtis v. Alcoa*, 525 F. App'x 371, 373 (6th Cir. 2013). Only after "an increase in the companies' total retiree-healthcare costs" and hard bargaining in 1993 did the unions concede to Alcoa the ability to implement a cap or otherwise diminish future retiree health benefits. *Id.* While this is not a conclusive determination, *Bell*, 800 F.3d at 376 ("[C]ourt may not resolve merits questions at the class certification stage"), Plaintiff Kaiser has submitted evidence supporting her contention that there is a common question. Accordingly, she

7

demonstrated "that there are *in fact* . . . common questions of law or fact." *Dukes*, 564 U.S. at 350.

Alcoa's argument to the contrary fails. It contends that the putative class's argument for commonality improperly focuses on evidence extrinsic to the individual collective bargaining agreements, which cannot be properly considered as a matter of contract law. According to Alcoa, because the individual collective bargaining agreements that give class members their rights unambiguously do not contain a right to unchanging benefits, there is no common question. *See, e.g.*, *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) ("Where the words of a [bargaining agreement] in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."). This argument has two problems.

First, it ignores Seventh Circuit precedent. Otherwise unambiguous language can be rendered ambiguous by the surrounding circumstances, such as by later bargaining indicating the parties understood a contract in a way different than the language may suggest. *See Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 649 (7th Cir. 2011); *see also Gilmer v. Stone*, 120 U.S. 586, 590 (1887) ("The law is not so unreasonable . . . as to deny to the reader of [a contract] the same light which the writer[s] enjoyed.").

Second, this is essentially a merits argument. To accept Alcoa's argument would require the court to examine the contracts and find that they are, in fact, unambiguous such that other evidence cannot be used. This sort of "dress rehearsal for the trial on the merits" is the exact process the court cannot engage in during class certification proceedings. *Messner*, 669 F.3d at 811.

8

### 2.     Numerosity

Federal Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).  In practical terms, that means that a group of 40 plaintiffs is generally sufficient to satisfy the numerosity requirement, even though the number may be less in certain circumstances.  *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *see also Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (collecting cases of class certification with fewer than 29 class members).

The putative class also satisfies the numerosity requirement because it numbers approximately 3,153 members, which renders joinder impracticable.  By Alcoa's own approximation, the class numbers 3,153 retirees, surviving spouses, and dependents. (Ackerman Decl. ¶ 12).  And each of those members benefits from an answer to the question discussed above.  Were there any doubt that this is sufficiently numerous, the joinder of that many plaintiffs would cause significant practical problems or would "clog the docket with numerous individual suits." *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981).  As the point of class certification is to avoid those problems where appropriate, there can be no doubt that numerosity is satisfied.

### 3.     Typicality

Typicality is the measure of whether the named "plaintiff's interests are aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interests of the class." *Harris v. Cir. City Stores, Inc.*,

No. 07 C 2512, 2008 WL 400862, at *6 (Feb. 7, N.D. Ill. 2008).  A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory."  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, *Class Actions* § 1115(b) at 185 (1977)).  The most important component is the similarity of the named plaintiff's and class's legal theories because identical legal theories on the same question of law may warrant certification "even in the face of differences of fact."  *Id.*

The named Plaintiff also satisfies the Rule 23(a)(3) requirement that they be "typical of the claims or defenses of the class."  To the extent there are minor differences of fact between Plaintiff Kaiser's and the putative class members' claims, they do not make her claims atypical.  Plaintiff Kaiser advances an identical legal theory to the putative class.  Namely, the 1993 collective bargaining negotiations indicate that both parties understood the pre-1993 agreements to guarantee undiminishable health insurance plans to retirees and their surviving spouses and dependents.  Further, all the claims, putative class representative included, arise from a singular event: Alcoa's decision to terminate the old health insurance plan.  In other words, Plaintiff Kaiser's claims assert the same legal theories and are based on the same conduct as the claims of the class.

Alcoa's only quibble with this analysis is that Plaintiff Kaiser's spouse—from whom she derives the right to healthcare benefits—retired from just one of the 48 different facilities that compose the class.  That fact does nothing to change the result here.  As discussed in relation to commonality, Plaintiff alleges that 1993 was the first

time Alcoa could modify benefits regardless of the facility involved. Accordingly, which facility the class representative comes from is not relevant to the common question at issue and, thus, not relevant to whether the named plaintiff is typical. Accordingly, Plaintiff Kaiser's claims are typical of the class.

### 4. Adequacy

Finally, Plaintiff Kaiser is an adequate representative under Rule 23(a)(4). That Rule requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To protect the interests of the class fairly and adequately, the representative must not have antagonistic or conflicting interests with the class. *See Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999).

Here, Plaintiff Kaiser has the same stake in the case as other class members. Her fortune rises and falls on the same legal theory as the rest of the class. As a result, she has a strong incentive to vigorously pursue the claim common to each member of the class.

Alcoa believes that Plaintiff Kaiser is not adequate to represent the interests of the class because there is an intra-class conflict—between class members like Plaintiff Kaiser who prefer the old plan and some unidentified class-members who prefer the new plan— that prevents Plaintiff Kaiser from adequately representing the entire class. That is unpersuasive for two reasons. First, "[t]o deny class certification now, because a potential conflict of interest that may not become actual, would be premature." *Kohen v. Pac. Inv. Mgmt.*, 571 F.3d 672, 680 (7th Cir. 2009).

Second, Alcoa's argument is premised on the idea that Plaintiff Kaiser wants "to dismantle the HRA program and force everyone back onto the prior fixed group plan." (Filing No. 90, Defs.' Br. in Opp. at 2).  But Plaintiff Kaiser seeks relief that has nothing to do with eliminating the Health Reimbursement Arrangement; she is instead seeking an "[o]rder . . . to reinstate the retiree healthcare coverage and Medicare Part B premium reimbursement" and a declaration "that Defendants cannot unilaterally terminate or modify the contractually-provided retiree healthcare coverage." (Compl. ¶¶ B–C).  That would not require Alcoa to dismantle the new program.  Alcoa could continue to provide undiminished benefits to pre-1993 retirees, spouses, and dependents and offer the new program simultaneously.  In other words, Alcoa is threatening to create a class conflict by eliminating the new plan when it need not do so.  But it has not cited any case where a court has denied class certification based on a manufactured a class conflict.  Thus, Alcoa's threatened action does not render Kaiser an inadequate class representative.

Alcoa does not dispute that the law firms Feinstein Doyle Payne & Kravec, LLC and Macey Swanson LLP are adequate class counsel.  On the court's independent investigation, the court finds that counsel has extensive experience in class actions and complex litigation with concomitant knowledge of the applicable law and has done significant work to develop the claims here. (Filing Nos. 90-7, 90-8).  This satisfies the factors laid out in Rule 23(g)(1) for adequate class counsel.

       5.    **Rule 23(b)**

The class satisfies the requirements to be certified under Rule 23(b)(2).  A (b)(2) class requires that "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) focuses on "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Thus, Rule 23(b)(2) classes are acceptable where "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* That is the case here.

The putative class seeks relief that would provide identical relief to each class member. In terminating the retirees' old healthcare benefits, Alcoa acted identically to each class member. And the remedy sought by the class for Alcoa's action is a declaration and an injunction regarding Alcoa's contractual authority to modify benefits. (Compl. ¶¶ B–C). Because the focus of the injunctive and declaratory relief is on Alcoa's powers, the proposed relief is indivisible so that Alcoa either acted lawfully or unlawfully as to every class member. Certification under Rule 23(b)(2) is proper.

Alcoa contends that Rule 23(b)(2) certification is not proper because Plaintiff Kaiser is actually seeking individualized money damages for class members. *See Dukes*, 564 U.S. at 360–62 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)."). In its view, because the injunction requested by Plaintiff Kaiser would require reinstating company-paid life insurance which would pay out benefits based on an individual's plan, her claim is really one for individualized, rather than incidental, damages. That conclusion is not consistent with Seventh Circuit precedent on the issue. Instead, "[t]he present case is one of incidental damages because if the plaintiffs get the

13

[injunction] they are seeking, the benefits to which the . . . plan entitles them will simply be read off from the plan." *In re Allstate Ins.*, 400 F.3d 505, 507 (7th Cir. 2005). If the class prevails, any monetary recovery will have already been set by their individualized facility-level collective bargaining agreements and can "simply be read off from" those plans. *Id.*

As Alcoa's other counterarguments simply recast its previously discussed merits contentions, the court certifies the main class under Rule 23(b)(2).

## IV. Conclusion

For the reasons discussed above, the court **GRANTS** Plaintiff's motion for class certification (Filing No. 81). The court, thereby, certifies a Rule 23(b)(2) class, represented by Plaintiff Lynnette J. Kaiser, of:

> All former employees of Alcoa USA Corp., its predecessors, or affiliated companies (collectively, "Alcoa") who were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ALF-CIO/CLC ("USW"), Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC"), the Longview Federated Aluminum Council, or a predecessor union, together with their eligible spouses, surviving spouses, and other dependents, who as of December 31, 2020, were eligible to receive uncapped health care benefits from Alcoa upon attaining Medicare-eligibility, and whose Alcoa-provided benefits or eligibility for those benefits was terminated as of January 1, 2021.

The court appoints the law firms Feinstein Doyle Payne & Kravec, LLC and Macy Swanson LLP as class council for the aforementioned class.

The parties are **ORDERED to confer and produce a proposed notice of class certification within 45 days of the date of this Entry**. If the parties are unable to agree

on a proposed notice, **competing proposals are due 60 days from the date of this Entry**.

**IT IS SO ORDERED** this 29th day of September 2022.

                                                 RICHARD L. YOUNG, JUDGE
                                                 United States District Court
                                                 Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.