UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LYNNETTE J. KAISER, on behalf of herself and all others similarly situated, *et al.*, </br></br>                    Plaintiffs, </br></br>         v. </br></br> ALCOA USA CORP., *et al.*, </br></br>                    Defendants. | ) ) ) ) ) ) ) No. 3:20-cv-00278-RLY-CSW ) ) ) ) ) |

**ENTRY GRANTING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

On January 1, 2021, Defendant Alcoa USA Corporation[1] unilaterally terminated the health benefits it provided to Medicare-eligible retirees through a fixed group health plan and replaced that plan with a health reimbursement arrangement. Plaintiffs are a group of former Alcoa employees and Union members[2] who retired from Alcoa plants prior to the 1993 collective bargaining agreement taking effect and their dependents.[3] They contend Alcoa guaranteed them lifetime healthcare benefits that could not be unilaterally diminished by Alcoa and that the new health reimbursement arrangement

---

[1] The other Defendants are three ERISA plans sponsored and administered by Alcoa for the retiree plaintiffs.
[2] Two national Unions that engaged in bargaining with Alcoa for the collective bargaining agreements at issue in this case are also plaintiffs.
[3] Because Alcoa has merged (and then later separated from) other companies over the years, not all retirees in the class are "Alcoa" retirees. The court refers to all members of the class as "Alcoa retirees" because no party disputes that Alcoa provides all members of the class their retirement benefits. Moreover, none of the current litigants have discussed any differences between different groups of retirees, nor proposed any subclasses for the resolution of issues particular to one group of retirees, but not any other.

1

operates to reduce their healthcare benefits in violation of those guarantees. This court certified a Rule 23(b)(2) class to answer the common question of whether Alcoa first received the ability to limit retirees' future benefits in the 1993 collective bargaining agreement. Following the close of discovery, Plaintiffs and Defendants moved for summary judgment. The court heard oral argument on those motions on January 25, 2024. For the reasons that follow, the court now **GRANTS** Plaintiffs' motion for partial summary judgment as to liability and **GRANTS in part** and **DENIES in part** Defendants' cross-motion for summary judgment.

**I.      Background**

Alcoa, like many corporations, bargains with collective groups of employees who have formed unions. (*See, e.g.*, Filing No. 147-9, 1988 Alcoa-USW Collective Bargaining Agreement). These negotiations have resulted in collective bargaining agreements stretching at least as far back as 1968. (*See* Filing No. 97-1, 1968 Alcoa-USW Collective Bargaining Agreement). Each of these agreements contains promises by Alcoa to provide employees healthcare benefits during their retirements. (*See, e.g.*, 1988 Alcoa-USW Collective Bargaining Agreement at 98). The exact scope of these promises is the issue in this case.

Beginning with the 1993 changes to the generally accepted accounting principles, Alcoa faced increasing healthcare costs. *See, e.g.*, *Curtis v. Alcoa, Inc.*, No. 3:06-cv-448,

2011 WL 850410, at ¶ 7 (E.D. Tenn. March 9, 2011)).[4]  This led to Alcoa proposing a cap on the healthcare expenditures it would expend on behalf of the retirees around the same time.  (Filing No. 136-8, Porter Dep. at 28–37).  After much gnashing of teeth by the Unions and concessions from Alcoa, the Unions allowed Alcoa to implement a cap but required deferring the cap's implementation until after the next round of collective bargaining.  (*Id.*).  At first, the parties could not agree to when the cap would engage but ultimately agreed to implement the cap on January 1, 2007.  (Filing No. 136-11, Kovaloski Dep. at 26–32).

When Alcoa attempted to implement the cap, a group of retirees who retired after the 1993 cap agreement brought suit.  *Curtis*, 2011 WL 850410.  In their view, the cap was not supposed to be real, but was for accounting purposes only.  *See id.* at ¶ 264.  The post-1993 retirees sought a preliminary injunction, which Alcoa defeated in part on the ground that the post-1993 retirees—who were seeking lifetime, uncapped benefits— "seek to receive benefits as if they had retired before June 1, 1993."  (Filing No. 132-4 at 22).  Alcoa also sought summary judgment on the explanation that plaintiffs' "theory is that this cap letter had no effect whatsoever, that the rights of the people who retired after 1993 are exactly the same as the rights of people who retired before 1993."  (Filing No. 132-21 at 59).  After the *Curtis* court denied summary judgment, the case proceeded to an

---

[4] The court takes judicial notice of the *Curtis* trial and appellate docket pursuant to Federal Rule of Evidence 201.  *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts.").

eight-day bench trial where Alcoa explained it "will [pay healthcare benefits] for the rest of these people's lives." (*Id.* at 72).

Ultimately, the *Curtis* district court, in a comprehensive decision, found for Alcoa and explained the promise of healthcare benefits was a promise of healthcare benefits for life, but those lifelong benefits were subject to the healthcare cap. *Curtis*, 2011 WL 850410, at ¶ 237 ("[P]laintiffs' health benefits are lifetime benefits . . . subject to the cap."). Yet that court's judgment did not contain any declaration that the plaintiffs had lifelong healthcare benefits. (*Curtis*, Docket at Filing No. 524 ("**IT IS ORDERED AND ADJUDGED** that the plaintiffs take nothing . . . .") (emphasis in original)). The post-1993 retirees sought to amend that judgment to add an express declaration that "Plaintiffs' healthcare benefits under the Alcoa Inc. plan(s) are vested lifetime benefits in accordance with ¶¶ 236 and 237 of the Court's Findings of Fact and Conclusions of Law filed March 9, 2011." (Filing No. 132-25, at 1). Alcoa opposed the motion on the ground that "[e]ven before this Court's ruling, Alcoa was committed to providing benefits to members of the plaintiff class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa has agreed to give them." (Filing No. 132-27 at 2). The *Curtis* court denied the retirees' motion. (*Curtis*, Docket at Filing No. 541).

The retirees appealed; Alcoa did not cross-appeal nor contest the district court's findings. (*See generally Curtis v. Alcoa*, No. 12-5801, 6th Cir. Docket). Based on Alcoa's arguments that the district court correctly found the post-1993 retirees' benefits had vested but were subject to the cap, the Sixth Circuit affirmed and explicitly

4

reaffirmed that the retirees had lifelong healthcare benefits. *Curtis v. Alcoa*, 525 F. App'x 371, 381 (6th Cir. 2013) (explaining the district court did not commit error in finding "plaintiffs are entitled to *lifetime*, capped *healthcare benefits*") (emphasis in original). Alcoa did not seek a modification of that order, a rehearing *en banc*, or cross-petition for a writ of certiorari. (*See generally Curtis v. Alcoa*, 6th Cir. Docket).

Things proceeded amicably until Alcoa announced it would transition pre-1993 retirees from their old, fixed group health plan to a newer health reimbursement arrangement. (Filing No. 90-1, Ackerman Decl. ¶¶ 2, 7). Willis Towers Watson provided some analysis indicating this would provide cost savings for retirees in the short term. (Ackerman Decl. ¶ 3–5). However under the health reimbursement arrangement, Alcoa could terminate healthcare benefits "at any time," 33% of post-1993 retirees are not receiving healthcare benefits, and the burden of inflation shifts from Alcoa onto the retirees. (Filing No. 49-1, New Plan SPD at 3; Filing No. 90, Alcoa's Br. in Opp. to Class Certification at 5; Filing No. 150-5, Allen Dep. at 176). Believing this new plan reduced their benefits and that Alcoa had promised them lifelong benefits that could not be unilaterally reduced (as Alcoa stated in the *Curtis* litigation), Plaintiff Lynette Kaiser brought suit on behalf of a putative class of pre-1993 retirees and their dependents and spouses to enjoin Alcoa from removing the old plan. (Filing No. 1, Compl.). The court certified this class as proposed. (Filing No. 108).

## II.   Legal Standard

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). That requires reviewing the record in the "light most favorable to the nonmoving party and draw[ing] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). When reviewing cross-motions for summary judgment, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

The mere existence of an alleged factual dispute is not sufficient to defeat a motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). That is because "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

### III. Discussion

The retirees bring a civil action under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3) to enforce the collective bargaining agreements the retirees retired under. In their view, the collective bargaining agreements promised them lifelong healthcare benefits, which were abridged when Alcoa transitioned them from the old, fixed group health plan to the new health reimbursement arrangement plan. The parties spill a considerable amount of ink discussing the exact contours of the specific bargaining agreements and why these agreements do or do not provide healthcare benefits for the rest of the retirees' lives. The court, however, begins with whether the doctrine of judicial estoppel prohibits Alcoa

6

from arguing the retirees do not have lifelong healthcare benefits. Finding that it does, the court need proceed no farther into the analysis of whether the retirees have lifelong healthcare benefits, and thus turns to Alcoa's non-estopped arguments for summary judgment: the retirees have not shown the new plan is not reasonably commensurate with the old plan, and the retirees' claim under 29 U.S.C. § 1132(a)(3) is barred by their claim under 29 U.S.C. § 1132(a)(1)(B). The court takes these arguments in turn.

### A. Judicial Estoppel

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule is judicial estoppel, and its purpose is to "prevent the perversion of the judicial process." *In re Cassidy* 892 F.2d 637, 641 (7th Cir. 1990). Due to its purpose, judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). And because the doctrine may be invoked *sua sponte*, the court need not accept a waiver of it. *See Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001).

Three factors guide the court's discretion in applying judicial estoppel. *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (citing *New Hampshire*, 532 U.S. at 750–51). First, whether the party against whom estoppel is sought has taken a position "clearly inconsistent" with its earlier position. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). Second, whether the party succeeded in persuading a court to accept that party's earlier position. *See Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797,

7

804 (7th Cir. 2023) ("Having convinced the district court otherwise, the doctrine of judicial estoppel prevents [Plaintiff] from having it both ways). And third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Knight*, 695 F.3d at 721–22.

This is not a set of "inflexible prerequisites or an exhaustive formula" for applying judicial estoppel, *New Hampshire*, 532 U.S. at 751; rather, these three factors are "general guideposts that must be considered in the context of all the relevant equities in any given case," *In re Knight*, 695 F.3d at 722. Thus, other considerations, such as the magnitude of the interpretative task left to the district court in the original proceeding, can influence the analysis. *See In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662–63 (7th Cir. 2010) (finding judicial estoppel "particularly appropriate in the setting of this case, in which the parties . . . assist[ed] the bankruptcy court in interpreting the meaning of" a reorganization plan). For example, in *Airadigm*, a bankruptcy court was challenged with interpreting a complicated, seven-year-old plan of reorganization. *Id.* at 647. In considering that plan, the bankruptcy court heard argument from the financier of the reorganization, who argued in the papers and at oral argument that a different "Back-up plan" controlled a creditor's claim which did not allow for recovery by the creditor. *Id.* at 662. The bankruptcy court agreed, which saved the financier $47 million on the $49 million claim. *Id.* On appeal and after the creditor assigned its claims to the financier, the financier reversed course and argued it was entitled to the $49 million claim under the primary plan of reorganization. *Id.* at 661. The Seventh Circuit applied judicial estoppel

8

because the "bankruptcy court was faced with no small task" due to "numerous interpretative difficulties." *Id.* If the court allowed a beneficiary to that agreement to change course, "it would give the impression that, rather than helping the bankruptcy court to interpret the plan, [the financier] hoodwinked that court." *Id.*

The application of judicial estoppel is appropriate here to bar Alcoa from arguing it is not obligated to provide pre-1993 retirees lifetime benefits. First, Alcoa's position in this litigation is diametrically opposed to its position in *Curtis v. Alcoa, Inc.*, No. 3:06-cv-448, 2011 WL 850410 (E.D. Tenn. Mar. 9, 2011). That litigation concerned the healthcare benefits cap Alcoa and the Unions negotiated in 1993 for post-1993 retirees. When Alcoa sought to implement the cap, in accord with its agreement with the Unions, a group of employees sued arguing that "the cap [was] not real," and was, instead, to disguise Alcoa's retiree obligations for accounting purposes. *Id.* at *45, 49. That court found for Alcoa after an eight-day bench trial and held "that plaintiffs are entitled to lifetime, capped healthcare benefits." *Id.* at 55.

In *Curtis*, Alcoa made multiple statements relevant to proceedings here. For example, in opposing the *Curtis* plaintiffs' motion for a preliminary injunction, Alcoa explained that the post-1993 retirees—who were seeking lifetime, uncapped benefits—"seek to receive benefits as if they had retired before June 1, 1993," which necessarily implies that pre-1993 retirees had lifetime, uncapped benefits. (Filing No. 132-4 at 22). And this was not merely a blunder; Alcoa explained the *Curtis* plaintiffs' "theory" was untenable because that theory would mean "that th[e] cap letter had no effect whatsoever, that the rights of the people who retired after 1993 are exactly the same as the rights of

9

people who retired before 1993." (Filing No. 132-21 at 59). In other words, Alcoa took the position before the *Curtis* district court that without the cap, "the rights" of pre- and post-1993 retirees "are the same," (i.e., the only difference between pre- and post-1993 retirees was the cap). (*Id.*).

Alcoa further represented that retiree health benefits were guaranteed for life. For example, it explained to the *Curtis* court that it would continue to pay retirees' healthcare benefits for the rest of their lives, which necessitated the cap in the first instance. (*Id.* at 87 ("Alcoa's paying almost $8,000 per person pre-Medicare. We'll continue to do that for the rest of their lives.")). Further context makes clear that Alcoa made this comment in reference to the written CBA between Alcoa and the Union. (*Id.* at 72 ("We are forced to return to the written . . . deal. Alcoa is living up to that deal. Alcoa . . . will [pay healthcare benefits] for the rest of these people's lives.")). Further, after the district court entered judgment for Alcoa, the plaintiffs sought to amend that judgment to add an express declaration that "Plaintiffs' healthcare benefits under the Alcoa Inc. plan(s) are vested lifetime benefits in accordance with ¶¶ 236 and 237 of the Court's Findings of Fact and Conclusions of Law filed March 9, 2011." (Filing No. 132-25, at 1). Alcoa opposed the motion, but not on whether Plaintiffs were entitled to vested benefits: "Even before this Court's ruling, Alcoa was committed to providing benefits to members of the plaintiff class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa has agreed to give them." (Filing No. 132-27 at 2). That, ultimately, persuaded the *Curtis* court not to amend its judgment.

These representations are clearly inconsistent with Alcoa's position in this case. Alcoa now contends it never promised any retirees that it would provide healthcare benefits for the rest of their lives. (*But see* Filing No. 132-21 at 87 ("Alcoa's paying almost $8,000 per person pre-Medicare. We'll continue to do that for the rest of their lives")). Moreover, Alcoa quite clearly explained in *Curtis* that it believed there to be a singular difference between pre-1993 and post-1993 retirees: the cap. If, as Alcoa represented to the *Curtis* court, post-1993 retirees have lifetime healthcare benefits, Alcoa necessarily represented that pre-1993 retirees had lifetime healthcare benefits because, according to Alcoa, the only difference between the two groups was the presence of the cap for post-1993 retirees.

Most importantly, these representations persuaded the *Curtis* court. That court adopted the exact position suggested by Alcoa that post-1993 retirees were "entitled to lifetime, capped healthcare benefits." *Curtis*, 2011 WL 850410, at *55; (*cf.* Filing No. 132-21 at 72 ("The Union agreed to th[e] cap. . . . We are forced to return to the written . . . deal. Alcoa is living up to that deal. Alcoa . . . will [pay healthcare benefits] for the rest of these people's lives.")). Alcoa certainly took this as a victory when it explained that "[t]he Court agreed with Alcoa—that Plaintiffs' benefits had vested 'subject to the cap' . . . ." (Filing 132-27 at 7). The district court even acceded to Alcoa's argument that no specific declaration that post-1993 retirees had lifetime healthcare benefits was necessary because such a declaration would be duplicative of Alcoa's contractual promises when it denied Plaintiffs' motion to amend the judgment. *See Curtis v. Alcoa, Inc.*, No. 3:06-cv-448, Filing No. 541 (E.D. Tenn. June 11, 2012). Alcoa's

11

representations and concessions that retirees had lifetime healthcare benefits were so pervasive that the Sixth Circuit remarked off-hand that "[u]nder the parties' 1988 CBA that expired in 1992, [Alcoa] provided lifetime, uncapped retiree healthcare benefits." *Curtis v. Alcoa, Inc.*, 525 F. App'x 371, 373 (6th Cir. 2013). Put differently, based on Alcoa's representations that it agreed with the *Curtis* plaintiffs' position on the length of benefits, it was simply unquestioned that pre-1993 retirees had lifetime healthcare benefits.

Allowing Alcoa to reverse course and argue that pre-1993 employees have no guaranteed lifetime retiree healthcare benefits would provide Alcoa an unfair advantage. As the Seventh Circuit has explained, "[j]udicial estoppel is designed to prevent parties from obtaining an unfair advantage *by* taking a present position that is inconsistent with one successfully taken in the past." *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014) (emphasis added). Alcoa would quite clearly gain an unfair advantage by taking the position that pre-1993 retirees do not have lifetime healthcare benefits, which is inconsistent with a position "successfully taken in the past." *Id.*

The complexity of the interpretive question posed to this court and the *Curtis* court also weighs in favor of applying judicial estoppel. The *Curtis* court was tasked with sifting through decades of continuous bargaining between the Unions and Alcoa. The parties submitted around 9,382 pages of documentary exhibits at trial.[5] *See Curtis*, Filing Nos. 565–77. Alcoa was also the only entity with any experience at the bargaining table;

---

[5] This does not include deposition excerpts and trial testimony, which easily stretch multiple hundred more pages. *See Curtis*, Filing Nos. 547–64.

12

the plaintiffs were not parties to the early negotiations between Alcoa and the Unions (who were not themselves a party). This is similar to the position of the bankruptcy court in *Airadigm*. Like the situation there, allowing Alcoa to reverse its position would give the impression that Alcoa hoodwinked the *Curtis* court instead of assisting it in sifting through the voluminous record and lengthy bargaining history.

Alcoa brings forward two arguments for why judicial estoppel would be inappropriate. Neither is persuasive. First, Alcoa argues its statements were taken out of context; its position in *Curtis* was actually that no retiree received lifetime healthcare benefits. Second, judicial estoppel would be inappropriate because the Sixth Circuit does not give preclusive effect to judgments prior to the Supreme Court's decision in *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Kelsey-Hayes Co.*, 854 F.3d 862, 872 (6th Cir. 2017) ("[G]iven the Court's strong language in *Tackett*, we will not give pre-*Tackett* decisions on these exact issues preclusive effect.").

Alcoa's first argument is not exactly correct—the supposedly missing context is that Alcoa argued both positions in the alternative and, in doing so, maintained both positions before the *Curtis* district court (instead of only one as Alcoa suggests). But the relevant inquiry is not just the arguments Alcoa made, but which argument persuaded the district court. Because it was Alcoa's argument that retirees had lifetime, capped healthcare benefits that persuaded the *Curtis* court, judicial estoppel locks Alcoa into that position. This accords with the treatment given by the Courts of Appeal that have considered this topic. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 554 (5th

13

Cir. 2014) (explaining that "the fact that a party's previous position was an alternative argument is not determinative" such that "[o]nce a court has accepted and relied upon one of a party's several alternative positions, any argument inconsistent with that position may be subject to judicial estoppel"); *see also In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 479 (6th Cir. 2019) (explaining judicial estoppel "does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position") (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 n.3 (7th Cir. 1990)). This makes sense: if a party seeks to maintain an alternative argument before a court, it must be prepared to be locked into that position should it prove persuasive.

Equally important to the exercise of the court's discretion here is that Alcoa abandoned its argument that retirees did not have lifetime healthcare benefits. The *Curtis* district court was quite clear in its opinion that post-1993 retirees had lifetime healthcare benefits. *See Curtis*, 2011 WL 850410, at *52 ("[T]he court finds that . . . plaintiffs are entitled to lifetime, capped healthcare benefits."). Alcoa never sought reconsideration of this portion of the opinion, nor did it cross appeal or raise that issue in the plaintiffs' appeal. (*See Curtis v. Alcoa*, No. 12-5801, Docket at Filing No. 41). To the contrary, it repeatedly asked the Sixth Circuit to affirm the district court's "correct" findings and argued that healthcare benefits had vested. (*See, e.g., id.* at 24–30 ("The district court found that Appellants' benefits vested only at retirement . . . . The district court's findings were not in error."); *see also id.* at 53 (citing the district court's finding that Alcoa provided certain healthcare benefits to retirees and stating that "Alcoa provides

14

Appellants more than the vested benefits to which they were entitled under the CBAs in existence when they retired.")).  Indeed, when the Sixth Circuit affirmed that plaintiffs had lifetime benefits explicitly, *see Curtis*, 525 F. App'x 371 at 381, Alcoa did not cross-petition for a writ of certiorari or seek *en banc* review of that determination.  (*See Curtis v. Alcoa*, No. 12-5801, Docket at Filing Nos. 67 (Plaintiff's Petition for Rehearing *En Banc*), 73 (Alcoa's Opposition to the Petition for Rehearing *En Banc*), and 92 (Plaintiff's Petition for a Writ of Certiorari)).  So while there may be some situations where it may not be appropriate to discretionarily estop a party from asserting a position it previously asserted as an alternative argument, this case does not present one of those situations.

Second, that the Sixth Circuit would not give preclusive effect to the *Curtis* decision does lend much weight toward not applying judicial estoppel.  Judicial estoppel is about "the fact of inconsistency itself" rather than "the fact of adjudication," which means "[j]udicial estoppel has little to do with preclusion by judgment, even when it requires reliance by a court on a prior inconsistent position."  Wright & Miller, *Federal Prac. & Proc.*, § 4477 (3d ed.).  To be sure, judicial estoppel may be inappropriate where "the defendants' change in position resulted from circumstances outside their control— namely, a change in controlling . . . law."  *Jarrard v. CDI Telecom., Inc.*, 408 F.3d 905, 915 (7th Cir. 2005).  But that principle applies when a party cannot maintain its prior position due to substantive changes in the law.  *Id.* (refusing to apply judicial estoppel because Defendant "could not have argued their prior position without running afoul of controlling Indiana caselaw").  Any legal change here is essentially evidentiary, not substantive.  Just because the method the Sixth Circuit uses to interpret the parties'

15

intentions changed,[6] does not mean the parties' intentions actually changed or that the parties are no longer permitted to agree to vest benefits. The switch in position here is not necessary for reasons outside Alcoa's control.

Having decided judicial estoppel is appropriate, the remaining issue is the scope of the estoppel, meaning what Alcoa is barred from arguing. Plaintiffs argue Alcoa should be barred from arguing pre-1993 retirees do not have lifetime healthcare benefits because Alcoa explicitly tied pre- and post-1993 retirees' benefits to each other, with the only difference being that post-1993 retirees' lifetime benefits were subject to a cap. Alcoa contends that estoppel should only bar it from arguing post-1993 retirees' health benefits were lifelong because the *Curtis* case involved different issues—whether the cap was real—and different plaintiffs. Plaintiffs get the better of the argument because the legal issues and the specific plaintiffs are not germane to the issue of estoppel. Alcoa did make representations about pre-1993 retirees' benefits that helped persuade the *Curtis* court, even if that was not strictly the issue presented in that case. For that reason, Alcoa is barred from arguing pre-1993 retirees do not have lifetime healthcare benefits.[7] Accordingly, the class has established, as a matter of law, that they had a right to lifetime healthcare benefits from Alcoa.

---

[6] As the Seventh Circuit has noted, the Supreme Court's decision in *Tackett* is entirely consistent with its precedent on vesting in collective bargaining agreements, so it is not clear there was a change in controlling law at all. *See Stone v. Signode Indus. Grp., LLC*, 943 F.3d 381, 385 (7th Cir. 2019) ("*Tackett* and *Reese* are consistent with the approach we have taken for decades.").

[7] At no point did Alcoa indicate there were any differences between different sects of pre-1993 retirees; it continuously discussed pre-1993 retirees as one monolithic group. Indeed, the undisputed evidence confirms this. (*See, e.g.*, Filing No. 90-1, Willis Towers Watson Analysis at 89 (comparing "uncapped" pre-1993 retirees as a single group to other groups of retirees)).

### B. Comparability of the New Plan

Alcoa argues the new health reimbursement arrangement plan is reasonably commensurate with the retirees' prior insurance plan, which Alcoa contends means it did not violate its contractual promises. Plaintiffs respond that they do not need to show the new plan was not reasonably commensurate under governing law and, in the alternative, that the undisputed facts show the health reimbursement arrangement plan is not reasonably commensurate with the old, fixed group health plan. Because no reasonable jury could find the health reimbursement arrangement plan is reasonably commensurate with the old, fixed group health plan, the court does not address whether a plaintiff needs to show the new plan is not reasonably commensurate to prevail.

The health reimbursement arrangement is not reasonably commensurate with the old plan for three reasons. First, the new plan expressly provides that Alcoa can terminate the benefits "at any time," which is a substantial decrease from the retirees' current lifelong benefits. (Filing No. 49-1, New Plan SPD at 3). Second, 33% of the class is receiving no benefits because they are not eligible for the new plan, despite Alcoa guaranteeing them healthcare benefits for life.[8] (Filing No. 90, Alcoa's Br. in Opp'n to Class Certification at 5 (conceding that only "67% of the proposed class" was receiving

---

[8] Alcoa frames this as a decision to "affirmatively decline to participate," but provides no reason why that matters. Alcoa promised to provide lifetime benefits and it is not currently providing any benefits under the new plan. That the new plan would allow a retiree to have no benefits means the new plan represents a significant reduction in the benefits available to that retiree. No evidence suggests that the retirees' decision not to enroll in the new plan was a decision to forego healthcare benefits instead of a decision not to deal with the difficulties a health reimbursement account might present.

benefits under the new plan)). Third, the new plan diminishes retiree benefits by shifting the burden of rising healthcare costs onto the retirees instead of being borne by Alcoa, which eats away at the real benefits retained by the retirees. (*See* Filing No. 150-5, Allen Dep. at 176). All this demonstrates that Alcoa's changes "significantly reduced" the "general level of benefits" available to the retirees. *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 311 (7th Cir. 1996) (explaining a new plan is not reasonably commensurate if it significantly reduces the general level of benefits).

To be sure, Alcoa has come forward with some evidence suggesting employees may be better off in some ways over the short term, but this does not create a genuine dispute as to the above diminution of rights. For example, even if the new plan provided less out-of-pocket costs in its first year of operation, (*see* Filing No. 90-1 at ¶¶ 3–5 (analyzing retiree out-of-pocket costs under the old and new plan)), that Alcoa unilaterally transformed retirees' lifetime benefits into gratuitous benefits at Alcoa's leisure represents a significant decrease in retirees' benefits regardless of the short-term monetary gain. Accordingly, the retirees' have shown, as a matter of law, that Alcoa breached their collective bargaining agreements by unilaterally reducing their healthcare benefits despite the contractual promise for lifelong healthcare benefits.

    **C.**    **Plaintiffs' § 1132(a)(3) Claim Is Barred**

Plaintiffs brought suit under 29 U.S.C. § 1132 to enjoin Alcoa from removing the old, fixed group health plan. They did so through two subsections of that statute: § 1132(a)(1)(B) and § 1132(a)(3). Section 1132(a)(1)(B) allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his

18

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(3), alternatively, allows a participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief." Alcoa moves for summary judgment on the ground that § 1132(a)(3) relief is barred because Plaintiffs can adequately obtain relief through § 1132(a)(1)(B). *See Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 544 (7th Cir. 2022) ("[A] participant generally cannot pursue both a [§ 1132(a)(1)(B)] claim and a [§ 1132(a)(3)] claim if the two claims seek the same relief or are based on the same allegations."). Plaintiffs have not responded to this argument but continue to seek the injunction identified in their complaint. Thus, on the understanding that Alcoa argues Plaintiffs may receive their requested injunction under § 1332(a)(1)(B) which bars an injunction under § 1132(a)(3), judgment for Alcoa on Plaintiffs § 1132(a)(3) claim is proper. *Cf. Stone v. Signode Indus. Grp., LLC*, 943 F.3d 381, 385 (7th Cir. 2019) (affirming a district court's grant of a permanent injunction for a claim brought under 29 U.S.C. § 1332(a)(1)(B)).

## IV. Conclusion

For the foregoing reasons, the court **GRANTS** Plaintiffs' Partial Motion for Summary Judgment as to Liability (Filing No. 131) and **GRANTS in part** and **DENIES in part** Defendants' Cross-Motion for Summary Judgment (Filing No. 145). Defendants' Cross-Motion is granted only with respect to Plaintiffs' claim under 29 U.S.C. § 1132(a)(3) and denied on every other ground.

**IT IS SO ORDERED** this 25th day of March 2024.

```
                                    _____
                                    RICHARD L. YOUNG, JUDGE
                                    United States District Court
                                    Southern District of Indiana
```

Distributed Electronically to Registered Counsels of Record.