**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

LYNNETTE J. KAISER, et al.,

               Plaintiffs,

        v.                            No. 3:20-cv-278-RLY-CSW

ALCOA USA CORP., et al.,

               Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO STAY INJUNCTION PENDING APPEAL</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 3

    I.      Defendants will suffer irreparable harm without a stay of the injunction. ............ 4

    II.     A stay of the injunction will not substantially harm Plaintiffs. ........................... 6

    III.    The public interest favors a stay pending appeal. .................................................. 7

    IV.    Defendants have a reasonable likelihood of succeeding on their appeal. .............. 8

          A.     The Court applied a version of judicial estoppel that is incongruent with Seventh Circuit precedent. ............................................................ 10

          B.     Alcoa's position in this case is not "clearly inconsistent" with its position in the *Curtis* litigation. ............................................................ 11

              i.     Alcoa's clear and express position in Curtis was that the post-1993 retirees did not have vested healthcare benefits ......... 12

              ii.    Alcoa did not take the "alternative" position that benefits are vested. ................................................................................ 14

              iii.   The Court erroneously relied on unsupported inferences and out-of-context statements by Alcoa. .................................... 16

          C.     Alcoa did not persuade the *Curtis* court that benefits are vested. ............ 22

          D.     Alcoa would not derive an unfair advantage if it were not judicially estopped, nor would Plaintiffs incur an unfair detriment. ....................... 26

          E.     The Court's judicial estoppel analysis further erred in other key ways. ..................................................................................................... 27

CONCLUSION ................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1st Source Bank v. Neto,*
    861 F.3d 607 (7th Cir. 2017) ............................................................................8, 13

*In re A&F Enters., Inc. II,*
    742 F.3d 763 (7th Cir. 2014) ...................................................................................4

*In re Advanced Telecomm. Network, Inc.,*
    No. 03-bk-299, 2016 WL 6407366 (Bankr. M.D. Fla. Oct. 28, 2016) ...................19

*In re Airadigm Comms., Inc.,*
    616 F.3d 642 (7th Cir. 2010) ....................................................................22, 26, 29

*Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass,*
    404 U.S. 157 (1971)................................................................................................19

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,*
    910 F.2d 1540 (7th Cir. 1990) .............................................................8, 10, 13, 22

*Bucciarelli-Tieger v. Victory Recs., Inc.,*
    No. 06 C 4258, 2007 WL 1498910 (N.D. Ill. May 17, 2007) ..................................7

*Byron v. Clay,*
    867 F.2d 1049 (7th Cir. 1989) ...............................................................................28

*Cal. v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ...................................................................................5

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. AIG, Inc.,*
    840 F.3d 448 (7th Cir. 2016) .................................................................................21

*Chaveriat v. Williams Pipe Line Co.,*
    11 F.3d 1420 (7th Cir. 1993) .................................................................................10

*Cohen v. Minneapolis Jewish Fed'n,*
    No. 16-cv-325, 2018 WL 6191046 (W.D. Wis. Nov. 28, 2018) ..............................5

*Common Cause Indiana v. Lawson,*
    978 F.3d 1036 (7th Cir. 2020) ........................................................................4, 6, 8

*Curtis v. Alcoa, Inc.,*
    No. 06-cv-448 (E.D. Tenn.) ........................................................................ *passim*

i

*Deutsche Bank Nat'l Tr. Co. v. Cornish*,
   759 F. App'x 503 (7th Cir. 2019) ........................................................................7

*Eli Lilly and Co. v. Valeant Pharms. Int'l*,
   No. 08-cv-1720, 2011 WL 573761 (S.D. Ind. Feb. 15, 2011) (Walton Pratt, J.) ..............10, 30

*FreemantleMedia-Ltd. v. Colmar, Ltd.*,
   No. 01 C 7733, 2001 WL 1360432 (N.D. Ill. Nov. 5, 2001) ....................................................7

*Graham v. Med. Mut. of Ohio*,
   130 F.3d 293 (7th Cir. 1997) ........................................................................4

*Ill. Bell Tel. Co. v. Hurley*,
   No. 05 C 1149, 2005 WL 735968 (N.D. Ill. Mar. 29, 2005) ....................................................5

*Iowa Utils. Bd. v. F.C.C.*,
   109 F.3d 418 (8th Cir. 1996) ........................................................................5

*Jarrard v. CDI Telecomms.*,
   408 F.3d 905 (7th Cir. 2005) ........................................................................11

*In re Knight-Celotex, LLC*,
   695 F.3d 714 (7th Cir. 2012) ........................................................................27

*Levinson v. United States*,
   969 F.2d 260 (7th Cir. 1992) ........................................................................1, 8, 10

*Luna v. United States*,
   454 F.3d 631 (7th Cir. 2006) ........................................................................28

*M&G Polymers USA, LLC v. Tackett*,
   574 U.S. 427 (2015)........................................................................22

*Menominee Indian Tribe of Wisconsin v. Thompson*,
   922 F. Supp. 184 (W.D. Wis. 1996) ........................................................................11

*O'Brien v. Appomattox Cnty.*,
   71 F. App'x 176 (4th Cir. 2003) ........................................................................5

*Solis v. Tenn. Com. Bancorp, Inc.*,
   No. 10-5602, 2010 WL 11187001 (6th Cir. May 25, 2010)........................................................................6

*United States v. Accra Pac, Inc.*,
   173 F.3d 630 (7th Cir. 1999) ........................................................................28

*United States v. Hook*,
   195 F.3d 299 (7th Cir. 1999) ........................................................................11, 22

*Walton v. Bayer Corp.*,
    643 F.3d 994 (7th Cir. 2011) ...................................................................8, 22, 26

*Zerante v. DeLuca*,
    555 F.3d 582 (7th Cir. 2009) ...............................................................................11

**Statutes**

Employee Retirement Income Security Act of 1974 (ERISA) .......................................2

**Other Authorities**

Fed. R. Civ. P. 59(a) .................................................................................................20

Fed. R. Civ. P. 62(d) ..............................................................................................4, 7

## INTRODUCTION

On March 28, 2025, the Court entered final judgment for Plaintiffs and issued a permanent injunction ordering Alcoa USA Corp. ("Alcoa") to reinstate and maintain the prior retiree healthcare benefits plan for the Class Members. Defendants subsequently filed a notice of appeal of this case to the Seventh Circuit. ECF No. 183. Because implementing the injunction prior to the Seventh Circuit's review would result in irreparable harm to Defendants, Defendants respectfully ask the Court to stay the injunction pending their appeal.

All of the requisite factors support granting a stay. Most importantly, Defendants will be irreparably harmed if the injunction remains in place. Alcoa will be forced to pay substantial sums in order to reinstate and maintain the prior benefits plan for the Class Members, but will be unable to recover those costs in the event that Defendants prevail on appeal. In contrast, a stay will not substantially harm Plaintiffs; to the contrary, it would protect Class Members from the risk of being ping-ponged from one healthcare plan to another and back again. Moreover, the public interest also supports a stay. There is no public interest in enforcing an injunction against a party that was wrongly estopped from arguing its case on the merits, or that restores benefits that were lawfully modified pursuant to the parties' agreements.

Finally, there is a reasonable likelihood that the Seventh Circuit will reverse the Court's order granting summary judgment for Plaintiffs. It is respectfully submitted that the Court erred when it concluded that Defendants are judicially estopped from arguing their position in this case based on Alcoa's purported position in *Curtis v. Alcoa, Inc.*, No. 06-cv-448 (E.D. Tenn.). Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to them, the rule in the Seventh Circuit is that judicial estoppel must be applied both narrowly and cautiously. *See, e.g.*, *Levinson v. United States*, 969 F.2d 260, 264

1

(7th Cir. 1992). However, the Court's ruling overread the *Curtis* record and overlooked dispositive issues of fact and law. Accordingly, the Court should grant Defendants' motion and stay the injunction pending appeal.

## BACKGROUND

The named Plaintiffs are two labor unions (United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (the "USW") and Aluminum Trades Council of Wenatchee, Washington AFL-CIO (the "ATC") (together, the "Unions")) and one spouse of a deceased retiree of Alcoa.

Alcoa had previously sponsored a supplemental Medicare fixed group healthcare plan (the "Prior Plan") for some of its hourly retirees and their surviving spouses and dependents. Ex. A, First Decl. of Tiffany Ackerman ¶ 2 ("First Ackerman Decl."). In 2019, Alcoa decided to transition certain hourly retirees, surviving spouses, and dependents from the Prior Plan to individual plans effective January 1, 2021. *Id.* ¶ 7. Under the new arrangement, Alcoa provides funds through a Health Reimbursement Account ("HRA"). *Id.* Individuals use the HRA funds to purchase a healthcare plan through an exchange and pay for qualified medical expenses, such as premiums or out-of-pocket medical costs like a deductible or copayment. *Id.*

On December 10, 2020, Plaintiffs filed this class action lawsuit to stop Alcoa from transitioning to the HRA Plan any retirees the Unions had formerly represented when they were employees of Alcoa. Plaintiffs alleged that the transition to the HRA Plan breached the terms of contracts between Alcoa and the Unions and violated the Employee Retirement Income Security Act of 1974 ("ERISA"). Pls.' Compl. ¶¶ 8-10, ECF No. 1. Plaintiffs sought to represent a class meant to encompass every affected retiree represented by the Unions during their employment, as well as eligible spouses and dependents. Pls.' Mot. to Certify Class, ECF No. 81. On

2

September 29, 2022, the Court certified the class. ECF No. 108. According to Alcoa's records at the time of certification, there were 3,153 Class Members. Ex. A, First Ackerman Decl. ¶ 12.

On March 25, 2024, the Court granted Plaintiffs' Motion for Partial Summary Judgment. *See* Entry Granting Pls.' Partial Mot. for Summ. J., ECF No. 166 (the "Order"). The basis for the Court's ruling was that "the doctrine of judicial estoppel prohibits Alcoa from arguing the retirees do not have lifelong healthcare benefits." *Id.* at 6-7. The Court held that Defendants are judicially estopped based on Alcoa's purported position in *Curtis v. Alcoa, Inc.*, which was initially filed against Alcoa in the U.S. District Court for the Eastern District of Tennessee in 2006. *See* Order at 9. The Court did not order any remedies against Defendants.

On March 28, 2025, the Court entered final judgment for Plaintiffs and ordered declaratory and injunctive relief. *See* Final Judgment, ECF No. 182; Order Granting Permanent Injunction, ECF No. 181 ("Injunction Order"). The Court declared "class members are entitled to lifetime healthcare benefits from Alcoa" and entered a permanent injunction that "Alcoa must promptly reinstate and maintain for the lifetime of all class members the fixed group health and prescription drug benefit plan, including Medicare Part B premium reimbursement . . . to class members before January 1, 2021." Injunction Order at 1. The Court also ordered that "the Prior Plan shall be reinstated retroactive to January 1, 2021," explaining that this means "[c]lass members are entitled to submit for payment claims for health and prescription drug expenses incurred from January 1, 2021, through the time Alcoa reinstates the Prior Plan." *Id.*

## ARGUMENT

Defendants have filed a notice of appeal of this case to the Seventh Circuit. ECF No. 183. Because implementing the injunction prior to the Seventh Circuit's review would result in irreparable harm to Defendants, they respectfully ask the Court to stay the injunction pending

their appeal pursuant to Fed. R. Civ. P. 62(d).  "Stays . . . are necessary to mitigate the damages that can be done during the interim period before a legal issue is finally resolved on its merits." *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).  To determine whether to stay an injunction, courts consider four factors:

> (1) The likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issues of the stay will substantially injure other parties; and (4) the public interest.

*Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020).  "The standard calls for equitable balancing, much like that required in deciding whether to grant a preliminary injunction," but the "first two factors are most critical." *Id.*  All four factors support a stay here.

## I.     Defendants will suffer irreparable harm without a stay of the injunction.

Whether the applicant will be irreparably harmed absent a stay is one of the "most critical" factors.  *Id.* at 1039.  Harm is "irreparable" where it "cannot be repaired, retrieved, put down again, [or] atoned for."  *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (citations omitted).  Defendants will be irreparably harmed absent a stay because Alcoa will be forced under the injunction to pay substantial sums it will be unable to recover if Defendants prevail on appeal.

The injunction ordered by the Court will require Alcoa to promptly reinstate and maintain the Prior Plan for the lifetime of all Class Members, including Medicare Part B premium reimbursement, and further allow Class Members "to submit for payment claims for health and prescription drug expenses incurred from January 1, 2021 through the time Alcoa reinstates the Prior Plan."  *See* Injunction Order at ¶¶ 1-2.  Alcoa estimates that the obligation to reinstate and maintain the Prior Plan will cost Alcoa approximately $6,225 per class member per year.  Ex. B, Second Declaration of Tiffany Ackerman ¶ 3.  Significantly, although the Class Members will be

the beneficiaries of the healthcare coverage, the money paid by Alcoa to reinstate and maintain the Prior Plan would not be paid to the Class Members. *Id.* ¶¶ 3-4. Alcoa is not a healthcare provider; it is an employer sponsoring the healthcare plan. *Id.* Alcoa will therefore need to pay premiums and fees to various third parties to administer the benefits, as well as administrative expenses through its benefits department and to other third-party vendors. *Id.* ¶¶ 3-5. It will not be possible to later recover these expenses paid to third parties if Defendants prevail on appeal and the injunction is vacated.

In addition to maintaining the Prior Plan going forward, the injunction also requires Alcoa to pay any past due benefits directly to the Class Members, as well as Medicare Part B premium reimbursements. Alcoa will have little, if any, recourse to recoup these payments from Class Members. Any available recourse would likely involve undesirable individual actions against Class Members, which would be a costly burden to such parties and Alcoa.

Thus, because Alcoa is unlikely to recover the costs of its obligations under the injunction, Defendants will suffer irreparable harm in the absence of a stay pending appeal. *See Cal. v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (party's inability to recover their economic losses during the pending litigation constituted irreparable harm); *O'Brien v. Appomattox Cnty.*, 71 F. App'x 176, 178 (4th Cir. 2003) (same); *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) (same); *Cohen v. Minneapolis Jewish Fed'n*, No. 16-cv-325, 2018 WL 6191046, at *1 (W.D. Wis. Nov. 28, 2018) (irreparable harm where absent a stay, if funds in dispute were distributed to third parties, there would be no way for them to be recovered); *Ill. Bell Tel. Co. v. Hurley*, No. 05 C 1149, 2005 WL 735968, at *7 (N.D. Ill. Mar. 29, 2005) (party demonstrated irreparable harm where there was no entity against which monetary damages could be recovered).

5

## II.     A stay of the injunction will not substantially harm Plaintiffs.

Next, Plaintiffs and the Class Members will not experience substantial harm if the injunction is stayed.  *See Common Cause*, 978 F.3d at 1039.  For one thing, aside from the single named individual Plaintiff, Lynette Kaiser (a spouse of a retiree), there is no evidence that any Class Member wants the reinstatement of the Prior Plan.  In fact, the evidence indicates that Class Members want the opposite.  In the three-and-a-half years since the transition to the HRA Plan, Alcoa's benefits administration has not received ***any*** complaints from Class Members who enrolled in the HRA Plan that their claims covered under the Prior Plan are no longer covered.  *See* Defs.' Resp. to Pls.' Mot. for Entry of Order of J. at 9-10, ECF No. 170.  This is not surprising, because the HRA Plan offers them more options (and in many cases, better coverage) than the Prior Plan, allowing Class Members to tailor their coverage to suit their unique healthcare needs and circumstances.  *See id.* at 3-4.  Accordingly, most Class Members are already enjoying enhanced healthcare benefits under the HRA Plan.

Insofar as Plaintiffs argue that the HRA Plan is not as good in some ways or that some Class Members did not enroll in the HRA Plan, any costs incurred by Class Members will, if the Seventh Circuit affirms this Court's judgment, be able to be monetized and compensated either through the injunction's provisions for payment of back claims with interest or through an award of money damages.  Thus, any possible harm to Class Members through staying the injunction could be remedied by monetary damages or the functionally equivalent retrospective relief built into the injunction itself.  *See Solis v. Tenn. Com. Bancorp, Inc.*, No. 10-5602, 2010 WL 11187001, at *1 (6th Cir. May 25, 2010) (balancing of harms supported stay pending appeal; injunction would cause disruption to the defendants' operation and personnel "that cannot be undone," while the plaintiff could be made whole by award of compensatory damages, back pay

6

and interest).  Nothing more is needed to "secure [Plaintiffs'] rights" pending appeal.  Fed. R.

Civ. P. 62(d).  And if the Seventh Circuit reverses the Court and vacates the injunction, then

Plaintiffs will have incurred no harm whatsoever as they will not have been entitled to the

benefits in the first place.

In contrast, the ***denial*** of a stay would threaten Class Members with significant harm:

potentially transitioning them from the current HRA Plan to the rebooted Prior Plan and then

back again should Defendants succeed on appeal (and possibly thereafter, on remand, again

moved back to the Prior Plan if another such injunction is entered, and again moved back to the

HRA Plan if the decision is vacated on appeal, and so on).  Such shifting back-and-forth between

the Prior Plan and the HRA Plan, and the resulting rounds of communication, will likely result in

confusion and frustration on the part of the Class Members, as well as unnecessary costs.  There

is no reason to risk such harmful whiplash.

## III.    The public interest favors a stay pending appeal.

The public interest also supports a stay.  *See Deutsche Bank Nat'l Tr. Co. v. Cornish*, 759

F. App'x 503, 506 (7th Cir. 2019) (a stay of an injunction pending appeal is appropriate when the

public interest lies in favor of such a stay).  As explained below, the Court erred when it held that

Plaintiffs are entitled to vested retiree healthcare benefits because Alcoa is judicially estopped

from arguing otherwise.  *See infra* at IV.  There is no public interest in requiring Alcoa to restore

benefits that were lawfully modified or in enforcing a contract in a manner inconsistent with its

plain language.  It is well-recognized that "there is a public interest in enforcing valid contracts."

*Bucciarelli-Tiger v. Victory Recs., Inc.*, No. 06 C 4258, 2007 WL 1498910, at *4 (N.D. Ill. May

17, 2007); *see also FreemantleMedia-Ltd. v. Colmar, Ltd.*, No. 01 C 7733, 2001 WL 1360432, at

*2 (N.D. Ill. Nov. 5, 2001) (moving parties had "the public interest firmly in their favor" because

"the public has no interest in enforcing agreements that do not exist"). Moreover, there is no public interest in enforcing an injunction against a party that was wrongly estopped from having its day in court to make its case on the merits. Nor is there public interest in risking harm to the Class Members from being potentially moved from one healthcare plan to another and back. Thus, consideration of the public interest favors the grant of a stay.

## IV.    Defendants have a reasonable likelihood of succeeding on their appeal.

Finally, Defendants respectfully submit that there is a reasonable likelihood that the Seventh Circuit will reverse the Court's decision granting summary judgment for Plaintiffs on the basis of judicial estoppel. *See Common Cause*, 978 F.3d at 1039. Judicial estoppel is an equitable doctrine that "prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so." *Levinson*, 969 F.2d at 264. "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547 (7th Cir. 1990).

While the Seventh Circuit has not identified an "exhaustive formula," several factors are typically applied: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) (internals omitted).[1]

---

[1] An additional "clear prerequisite[]" the Seventh Circuit has identified is that the "the facts at issue should be the same in both cases." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (quotation omitted). While the

Applying these factors, the Court held that Defendants are judicially estopped from arguing their position in this case based on Alcoa's purported position in *Curtis v. Alcoa, Inc.* *See* Order at 9. *Curtis* concerned the 1993 Cap Agreement and its bargaining history, under which Alcoa and the USW had agreed that Alcoa's healthcare contributions to certain future post-1993 retirees would be "capped" at a future date. *See Curtis*, No. 06-cv-448, 2011 WL 850410, at *1 (E.D. Tenn. Mar. 9, 2011). The 1993 Cap Agreement was included in every subsequent post-1993 collective bargaining agreement ("CBA") in the form of a "Cap Letter." *Id.* In 2006, Alcoa and the USW agreed to implement the Cap with respect to employees retired after May 31, 1993. *Id.* Soon thereafter, the *Curtis* lawsuit was brought by a group of Alcoa retirees who had retired between 1993 and 2006 seeking to stop Alcoa from applying the Cap to their healthcare benefits. *Id.* The plaintiffs argued that the Cap Letters attached to the 1993, 1996, and 2001 CBAs under which they had retired—clearly stating that Alcoa had the right to engage the Cap—were invalid and had no effect. *Id.* Following a bench trial in 2009, the *Curtis* court held that "Alcoa did not breach its contracts with the plaintiffs," *id.* at *55, and ordered that "the plaintiffs shall take nothing" and dismissed the case with prejudice, *see* Judgment Order, *Curtis*, ECF No. 524.

After analyzing the *Curtis* record both in the lower court and on appeal, the Court determined that Alcoa made several statements in *Curtis* "representing that retiree health benefits were guaranteed for life." Order at 9-10. The Court concluded that "Alcoa is barred from arguing pre-1993 retirees do not have lifetime healthcare benefits" in this case on the basis of judicial estoppel, and held that "[a]ccordingly, the class has established, as a matter of law, that they had a right to lifetime healthcare benefits from Alcoa." *Id.* at 16.

---

Court did not discuss this requirement, it also precludes judicial estoppel here. As explained below, the facts that controlled the outcome of *Curtis* had nothing to do with those material to the rights of the Class Members here.

However, the Court's analysis misread the *Curtis* record and overlooked dispositive issues of fact and law, creating a reasonable prospect that its decision will be reversed by the Seventh Circuit.  As set forth below, there are no statements by Alcoa that were clearly inconsistent with this case so as to trigger judicial estoppel, none of Alcoa's purported statements were relied on by the *Curtis* court in rendering its judgment (including its dictum that the *Curtis* class members' capped benefits were vested), and Alcoa would not derive an unfair advantage if it were not judicially estopped, nor would Plaintiffs incur an unfair detriment.  Fundamentally, Alcoa cannot be "stuck with" the proposition that pre-1993 retirees have vested benefits, or the broader proposition that all retirees have vested benefits, because it did not "prevail in" *Curtis* (nor could it have) "by representing that" either of those propositions "is true."  *Astor*, 910 F.2d at 1547.

> **A.      The Court applied a version of judicial estoppel that is incongruent with Seventh Circuit precedent.**

As an initial matter, the Court erred by applying an overly punishing version of judicial estoppel.  The rule in the Seventh Circuit is that judicial estoppel must be applied both ***narrowly*** and ***cautiously*** because of the harsh results attendant with precluding a party from asserting a position that would normally be available to them.  *See Levinson*, 969 F.2d at 265 (judicial estoppel must be "applied with caution to avoid impinging upon the truthseeking function of the court." (quotation omitted)).  As put by this Court in another case, "[j]udicial estoppel must be applied ***with caution and in the narrowest of circumstances and with clear regard for the facts in the particular case.***"  *Eli Lilly and Co. v. Valeant Pharms. Int'l*, No. 08-cv-1720, 2011 WL 573761, at *4 (S.D. Ind. Feb. 15, 2011) (Walton Pratt, J.) (emphasis added).  Indeed, judicial estoppel is "strong medicine," which "has led courts and commentators to characterize the grounds for its invocation in term redolent of intentional wrongdoing."  *Chaveriat v. Williams*

*Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993); *see also Jarrard v. CDI Telecomms.*, 408 F.3d 905, 915 (7th Cir. 2005) (rejecting judicial estoppel where party prevailed twice on diametrically incompatible positions because, "though facially inconsistent, [they] were not an attempt to play 'fast and loose' with the court, and thus the broad antifraud purpose of judicial estoppel does not come into play").

The Court did not acknowledge this case law cautioning reluctance to impose the harsh remedy of judicial estoppel.  Moreover, the Court failed to heed its obligation at summary judgment to view the record in the light most favorable to Defendants and draw all reasonable inferences in their favor.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  Instead, the Court made repeated inferences ***against*** Defendants when an alternative view of the record was equally (if not more) plausible.  As a result, the Court applied a version of judicial estoppel at summary judgment that is incongruent with Seventh Circuit precedent.

**B.     Alcoa's position in this case is not "clearly inconsistent" with its position in the *Curtis* litigation.**

Most fundamentally, for judicial estoppel to apply, the party to be estopped must have taken a position "clearly inconsistent with its earlier position."  *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999).  This is a high standard—judicial estoppel cannot be applied "where there is only an ***appearance*** of inconsistency between the two positions."  *Menominee Indian Tribe of Wisconsin v. Thompson*, 922 F. Supp. 184, 208 (W.D. Wis. 1996) (emphasis added).  In applying this factor, the Court determined that Defendants' position in this case—that retiree healthcare benefits for the Class Members are not vested for life—is "clearly inconsistent" with several representations by Alcoa in *Curtis* that the Court characterized as "representing that retiree health benefits were guaranteed for life."  Order at 9-11.  However, the Court misinterpreted the *Curtis* record and elevated unfounded inferences and out-of-context

11

statements above clear and express statements by Alcoa showing that its position in *Curtis* was fully consistent with its position in this case.

### i. **Alcoa's clear and express position in Curtis was that the post-1993 retirees did not have vested healthcare benefits.**

Contrary to the Court's conclusion, the *Curtis* record shows that Alcoa's clear and express position was that the post-1993 retirees in that case were ***not*** promised vested healthcare benefits either before or after retirement. Alcoa repeatedly expressed this position in virtually every substantive filing in *Curtis*:

- <u>Alcoa's Answer to Plaintiffs' Amended Complaint ¶ 91, ECF No. 11</u>: "Alcoa admits that Plaintiffs do not have vested welfare benefits and that it is entitled to amend those benefits."

- <u>Alcoa's Response to the Plaintiffs' Motion for Preliminary Injunction at 2, ECF No. 64</u>: "Plaintiffs have no 'vested' right to free medical care for life, as they contend. Rather, the relevant labor agreements are clear on their face that Alcoa had the right to engage the Cap."

- <u>Alcoa's Oral Argument in Support of Summary Judgment at 52, ECF No. 379</u>: "If there's any vesting at all here, your honor—we'd submit that the record demonstrates that you can't find as a matter of law, respectfully, that there is."

- <u>Alcoa's Proposed Findings of Fact and Conclusions of Law at 75, ECF No. 507-2</u>: "Although the issue is unnecessary, as discussed below, for a decision on whether Plaintiffs' benefits vested upon retirement, Alcoa's position is that retiree medical benefits do not vest."

Indeed, even the plaintiffs in *Curtis* understood that Alcoa's position was always that the post-1993 retirees' healthcare benefits were ***not*** vested:

> Throughout this litigation at each and every stage of these proceedings the Plaintiffs consistently asserted that their health care benefits were vested lifetime benefits. ***The Defendant consistently denied it.***

Pls.' Mem. of Law Supp. Mot. for Clarification and/or Amendment of the J. Order at 1, *Curtis*, ECF No. 526 (emphasis added).

Context is key to understanding Alcoa's position and statements. The dispute in *Curtis* was fundamentally about the ***level*** of benefits due to the post-1993 retirees—i.e., whether Alcoa could lawfully engage the Cap. After Alcoa engaged the Cap pursuant to the 1993 Cap Agreement, the capped retirees brought the *Curtis* lawsuit to compel Alcoa to revert them back to ***uncapped*** benefits. To prevail on that claim, they needed to establish vested rights in ***uncapped*** benefits. Accordingly, their claim failed ***either*** if they had no vested retiree healthcare benefits rights at all ***or*** if any vested benefits were lawfully capped—either way, Alcoa would not be in breach of any obligations to the *Curtis* class. Thus, Alcoa argued that the *Curtis* class members had no vested healthcare benefits rights at all (an argument that, if accepted, would have ended the case), and also correctly pointed out that the issue was "unnecessary" because even if the class members' healthcare benefits vested at retirement, they were at most vested in ***capped*** benefits, allowing Alcoa to lawfully engage the Cap. Alcoa's Proposed Findings of Fact and Conclusions of Law at 75, *Curtis*, ECF No. 137-8.

Additionally, when viewing the *Curtis* record amid the backdrop of this case, it is crucial to remember that the Class Members in this case and their contracts and retiree healthcare benefits were not even at issue in *Curtis*. This is because *Curtis* concerned the level of healthcare benefits for ***post-1993*** retirees, while this case concerns the introduction of the HRA Plan in 2019 for a different group of retirees who retired ***before*** 1993 under different CBAs with different bargaining histories and whose healthcare benefits were never subject to the Cap Agreement or capped. All of Alcoa's statements in *Curtis* must be read in this essential context—Alcoa was at all times asserting positions with respect to the post-1993 retirees only.[2]

---

[2] Relatedly, *Curtis* and this case do not involve "the same" operative facts, which, under Seventh Circuit precedent, precludes using *Curtis* to judicially estop Alcoa here. *Neto*, 861 F.3d at 612; *see also Astor*, 910 F.2d at 1547 (explaining that, for judicial estoppel to apply, the suits must "grow[] out of the same events"). To the extent that *Curtis* turned on the bargaining parties' intent regarding lifetime vesting in the ***post***-1993 CBAs at issue there, that

The implausibility of Alcoa taking a position in *Curtis* as to the healthcare benefits of the Class Members here (an entirely different population of retirees with different contracts) underscores why the Court's conclusion lacks merit.

    ***ii.***   ***Alcoa did not take the "alternative" position that benefits are vested.***

    The Court's judicial estoppel analysis briefly acknowledged that Alcoa expressed the position in *Curtis* that "no retiree received lifetime healthcare benefits," but then brushed this fact aside by claiming that Alcoa "argued both positions in the alternative and, in doing so, maintained both positions before the *Curtis* district court."  Order at 13.  The Court further stated that "[b]ecause it was Alcoa's argument that retirees had lifetime, capped healthcare benefits that ***persuaded*** the *Curtis* court, judicial estoppel locks Alcoa into that position."  *Id.* (emphasis added).  Setting aside for now the issue of whether the *Curtis* court was "persuaded" by Alcoa's purported vesting argument (as explained below, it was not, *see infra* at 22-25), the Court's finding that Alcoa argued both positions in the alternative is wrong and misunderstands the record.

    The Court did not provide any supporting citation, but it appears to have been relying on Alcoa's argument that "[e]ven if Plaintiffs' benefits vested upon retirement, the benefits would have vested with the cap already in place."  Alcoa's Proposed Findings of Fact and Conclusions of Law at 79, *Curtis*, ECF No. 137-8.  However, this does not mean that Alcoa took the alternative position that the *Curtis* class members' benefits were, in fact, vested.  Its position was that those benefits were not vested (as explained above), ***but that if the court rejected that argument and found that benefits were vested***, the class was still not entitled to relief, because the benefits were nevertheless capped.  In other words, Alcoa used the common "assuming

---

issue is not the same, and does not arise from the same facts, as the bargaining parties' intent regarding lifetime vesting in the entirely different set of ***pre***-1993 CBAs that are relevant in ***this*** case.

*arguendo*" legal argument that allows a party to examine the conclusion of premises without admitting that these premises could be true, in order to show that the issue of whether benefits vested upon retirement was ultimately pointless in *Curtis* because it would have the same legal effect with regard to the enforceability of the Cap.

Alcoa's filings were clear on this point.  In its Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") following the bench trial, Alcoa told the court that "***although the issue is unnecessary, for a decision on whether plaintiffs' benefits vested upon retirement, Alcoa's position is that retiree medical benefits did not vest.***"  Alcoa's Proposed Findings at 75, *Curtis*, ECF No. 137-8 (emphasis added).  Alcoa then spent several pages explaining why "the evidence does not support Plaintiffs' contention that retiree medical benefits are vested" based on Sixth Circuit case law, the language of the contracts, and relevant testimony.  *Id.* at 75-77.  Then, Alcoa stated that "***even if*** plaintiffs' benefits vested upon retirement, the benefits would have vested with the cap already in place."  *Id.* at 79-88 (emphasis added).

In making this argument, Alcoa was careful to ensure that the *Curtis* court was never under the impression that Alcoa believed that benefits were vested.  For example, at the summary judgment oral arguments, Alcoa's attorney told the court that he was "going to cover the question of vesting" and "the question of what happens if your honor were to decide, ***we believe, respectfully, contrary to the record here***, that the benefits in questions did vest . . . ."  Summ. J. Tr. at 38, *Curtis*, ECF No. 379 (emphasis added); *see also id.* at 52 ("If there's any vesting at all here, your honor—we'd submit that the record demonstrates that you can't find as a matter of law, respectfully, that there is.").  Thus, the Court erred when it held that Alcoa took the position "in the alternative" that benefits were vested.  Resting judicial estoppel on this sort of *arguendo* position is, to Defendants' knowledge, unprecedented.

15

### iii.    The Court erroneously relied on unsupported inferences and out-of-context statements by Alcoa.

In contrast to Alcoa's clear and express statements and arguments that healthcare benefits for the post-1993 retirees were **not** vested, the Court concluded that Alcoa "represented that retiree health benefits" for the Class Members "were guaranteed for life" based on unsupported inferences and out-of-context statements.  Order at 10.  Examining each statement relied on by the Court shows that its reading is incorrect and has no support in the text or context.

**First**, the Court purported to draw support from Alcoa's brief in opposition to the plaintiffs' preliminary injunction motion, where Alcoa stated that "plaintiffs here seek to receive benefits as if they had retired before June 1, 1993."  Alcoa's Opp. to Pls.' Mot. for Prelim. Inj. at 22, *Curtis*, ECF No. 64 ("Alcoa's Prelim. Inj. Opp.").  The Court inferred that this statement "necessarily **implies** that pre-1993 retirees had lifetime, uncapped benefits" because the plaintiffs in *Curtis* "were seeking **lifetime**, uncapped benefits." Order at 9 (emphases added).

This reading is not reasonable and has no support in the text.  The excerpt highlighted by the Court is not taking a position on anything related to whether pre-1993 retirees had vested lifetime benefits.  Context shows that Alcoa's brief was simply characterizing how the plaintiffs were framing their argument that the 1993 Cap Agreement did not apply to them:

> Plaintiffs here seek to receive benefits as if they had retired before June 1, 1993. **By definition, however, they did not.  Employees have no right to the benefits under a CBA that expired prior to the date of their retirement.**  *See Prater v. Ohio Educ. Ass'n*, No. 2:04CV1077, 2006 WL 2815142, at *9 (S.D. Ohio Sept. 28, 2006) ("the Sixth Circuit's decision in *Maurer* makes clear that the provisions in effect at the time of retirement control the issue of whether there was an intent to vest").

Alcoa's Prelim. Inj. Opp. at 22, *Curtis*, ECF No. 64 (emphasis added) (citation omitted).  Alcoa's point was just that the post-1993 retirees' rights to benefits were governed by the CBAs with the

16

Cap Agreement, not the earlier, pre-1993 CBAs without the Cap Agreement.  That simple point did not imply that either set of the retirees' benefits were vested for life.

The Court's reading also ignored the context.  Again, the ultimate issue in *Curtis* was whether the post-1993 retirees were entitled to **uncapped** benefits.  Vesting *vel non* was simply not relevant in the abstract; it mattered only insofar as it was relevant to the legality of the Cap.

***Second***, the Court erroneously relied on a similar statement by Alcoa's attorney at the summary judgment oral argument that "[p]laintiff's theory is that this cap letter had no effect whatsoever, that the rights of the people who retired after 1993 are exactly the same as the rights of people who retired before 1993."  Order at 3; 9-10 (quoting Summ. J. Tr. at 59:12-14, *Curtis*, ECF No. 379).  The Court interpreted this to mean that "Alcoa took the position . . . that without the cap, 'the rights' of pre- and post-1993 retirees 'are the same,' (i.e., the only difference between pre- and post-1993 retirees was the cap)."  *Id.* at 10.  The Court held this was another statement by Alcoa that "implies that pre-1993 retirees had lifetime, uncapped benefits."  *Id.* at 9.

However, like before, that does not follow.  Alcoa's attorney was simply characterizing the plaintiffs' argument that the 1993 Cap Agreement had no effect, and explaining that it was the ***plaintiffs'*** theory (not Alcoa's) that pre-1993 and post-1993 retirees' rights were "the same":

> Now there's really no dispute that the Cap Letter is part of the CBA and enforceable on both sides.  . . . The question then is, if it's part of the CBA, what is its effect?  ***Plaintiffs'*** theory is that this Cap Letter had no effect whatsoever, that the rights of the people who retired after 1993 are exactly the same as the rights of people who retired before 1993.  ***They*** say the fact that you have attached this to the back of the CBA is irrelevant; the rights are the same as if it had never been there at all.

Summ. J. Tr. at 59:6-17, *Curtis*, ECF No. 379 (emphases added).  Inferring from this statement that Alcoa took the position that the "only difference between pre- and post-1993 retirees was the cap" is not a reasonable way to read the language, nor does it imply that Alcoa took the position that retirees had vested lifetime benefits.  To be sure, Alcoa believed that the Cap distinguished

pre-1993 from post-1993 retirees, but the critical point is that Alcoa never took the position that either set of retirees was entitled to vested benefits.[3]

**Third**, the Court similarly erred by relying on the statement by Alcoa's attorney at the summary judgment oral argument that "Alcoa's paying almost $8,000 per person pre-Medicare. We'll continue to do that for the rest of their lives." Order at 10 (quoting Summ. J. Tr. at 72:21-22, *Curtis*, ECF No. 379). The Court read this to mean that "Alcoa represented that retiree health benefits were guaranteed for life." *Id.* But the most reasonable interpretation of this statement is that he was not talking about a ***contractual obligation*** to provide lifetime benefits to the post-1993 retirees (i.e., vested benefits); he meant that Alcoa intended to continue to ***voluntarily*** provide benefits at the agreed capped level for the rest of the *Curtis* retirees' lives. This is the only logical reading because, as explained, Alcoa's attorney argued extensively at the same oral argument that the benefits were ***not*** vested for life. *See* Summ. J. Tr. at 37-58, *Curtis*, ECF No. 379. It would be absurd for him to turn around minutes later and casually admit that benefits ***were*** vested, and nothing in the record shows that the *Curtis* court or the plaintiffs interpreted his statements as such an admission.

The attorney's statements are further explained by the terms of the 1993 Cap Agreement. An essential part of the Cap Agreement was that the healthcare benefits for the capped retires would be a "mandatory" subject of the next round of bargaining between Alcoa and the USW, which to this day permits the USW to strike over proposed changes to the healthcare benefits of the capped retirees. *See* Alcoa's Prelim. Inj. Opp. at 17, *Curtis*, ECF No. 64. The significance of

---

[3] Notably, the Court also relied on this misreading to erroneously conclude that ***all*** of Alcoa's statements in *Curtis* as to the post-1993 retirees also applied to the pre-1993 Class Members in this case. *See* Order at 11 ("Alcoa quite clearly explained in *Curtis* that it believed there to be a singular difference between pre-1993 and post-1993 retirees: the cap. If, as Alcoa represented to the *Curtis* court, post-1993 retirees have lifetime healthcare benefits, Alcoa necessarily represented that pre-1993 retirees had lifetime healthcare benefits because, according to Alcoa, the only difference between the two groups was the presence of the cap for post-1993 retirees.").

this fact cannot be overstated. Ordinarily, the healthcare benefits of existing retirees are a "permissive" subject of bargaining, preventing the USW from calling a related strike under federal labor law. *See Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 176-82 (1971). Thus, the practical result of the 1993 Cap Agreement was that Alcoa could not change the benefits of the capped post-1993 retirees without the USW's agreement (lest risking a strike). Indeed, in this case, Alcoa did not introduce the HRA Plan for the capped post-1993 retirees for this very reason. Accordingly, the statement by Alcoa's attorney can only be properly understood in this context (and at most, the meaning is a question of fact that precludes summary judgment). *See, e.g.*, *In re Advanced Telecomm. Network, Inc.*, No. 03-bk-299, 2016 WL 6407366, at *2 (Bankr. M.D. Fla. Oct. 28, 2016) ("Judicial estoppel issues are intensely factual and rarely are subject to resolution by summary judgment.").[4]

**Fourth and finally**, the Court gave undue weight to language from Alcoa's brief in opposition to the plaintiffs' Motion for Clarification and/or Amendment of the Judgment Order ("Motion to Amend") following the bench trial ruling.

By way of context, the *Curtis* court determined in its Findings of Fact and Conclusions of Law ("Findings and Conclusions") following the bench trial that: (1) each of the Cap Letters (negotiated in 1993, 1996 and 2001) was enforceable (*43-52, ¶¶ 238-75); (2) the plaintiffs' retirement benefits vested at retirement subject to the enforceable cap agreements (*37-43,

---

[4] The Court further erroneously determined that Alcoa's attorney "made this comment in reference to the written CBA between Alcoa and the Union," quoting another point in the oral argument where the attorney said that "[w]e are forced to return to the written . . . deal. Alcoa is living up to that deal. Alcoa . . . will [pay healthcare benefits] for the rest of these people's lives." Order at 10 (omissions in original) (quoting Summ. J. Tr. at 72:19-22, *Curtis*, ECF No. 379). But Alcoa's attorney did not say the "written deal" required it to provide lifetime benefits. Summ. J. Tr. at 72, *Curtis*, ECF No. 379 (emphasis added). Moreover, context shows that the "deal" mentioned by Alcoa's attorney was not an unidentified "written CBA" that would apply to the Class Members here—it was the 1993 Cap Agreement and the related negotiations. Summ. J. Tr. at 58:23-59:4, *Curtis*, ECF No. 379. Even if Alcoa's attorney was referring to a "written CBA," it would have been the CBAs at issue in *Curtis*—the 1993, 1996, and 2001 CBAs—which do not apply to the pre-1993 Class Members in this case.

¶¶ 211-37); and (3) Alcoa had properly implemented the Cap Agreement (*37-43, ¶¶ 211-37). *See Curtis*, 2011 WL 850410. The court held that "Alcoa did not breach its contracts with the plaintiffs," *id.* at *55, and ordered that "the plaintiffs shall take nothing" and dismissed the case with prejudice, *see* Judgment Order, *Curtis*, ECF No. 524.

A few weeks later, the plaintiffs filed a Motion to Amend pursuant to Fed. R. Civ. P. 59(a). *Curtis*, ECF No. 525. Essentially, the plaintiffs argued that the court's judgment that they "take nothing" was inconsistent with its conclusion that the retirees had vested benefits. The plaintiffs claimed that this amounted to a victory for them and asked the court to issue a separate declaratory judgment that the retirees' healthcare benefits were "vested" and for related injunctive relief. Proposed Order, *Curtis*, ECF No. 525-1. In addition, the plaintiffs concurrently filed a Motion for Award of Attorneys' Fees and Expenses ("Motion for Attorneys' Fees") in which they argued that they "achieved some success on the merits of the case" entitling them to attorneys' fees because vesting "was a disputed issue." Mot. for Attorneys' Fees at 1, *Curtis*, ECF No. 527.

Alcoa opposed the plaintiffs' Motion to Amend as "a transparent attempt to obtain attorney's fees" "after failing to secure any tangible victory for [the class]." Alcoa's Opp. to Pls.' Mot. to Amend at 1, *Curtis*, ECF No. 532. As Alcoa explained, "[t]he purpose of the lawsuit was to secure health benefits for the class ***beyond***" the capped benefits they were already receiving, which is why the plaintiffs never sought a declaration that their benefits were "vested" only—they always sought a declaration that benefits were vested ***and uncapped***. *Id.* at 1, 7-8 (emphasis added). While the court had indeed rejected Alcoa's position that the retirees' healthcare benefits were not vested, there was no basis to amend the judgment to include a freestanding declaration on that issue alone. As Alcoa explained, there is no requirement "that

every legal conclusion in a court's opinion be included in the court's order," nor was there "any evidence that even suggests that Alcoa has any intention, or has taken any action, to terminate Plaintiffs' [capped] benefits." *Id.* at 9; 9 n.3. That made the plaintiffs' request for a separate declaratory judgment that the retirees' healthcare benefits were vested unnecessary and unripe at that time. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. AIG, Inc.*, 840 F.3d 448, 451-52 (7th Cir. 2016). Such a declaration would have been an advisory opinion unrelated to the only concrete dispute between the parties, i.e., the Cap.

In that vein, Alcoa's Opposition to the Motion to Amend stated that "[e]ven before [the *Curtis*] Court's ruling, Alcoa was committed to providing benefits to members of the plaintiff class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa has agreed to give them." *Id.* at 2. Here, the Court misconstrued this language as "represent[ing] that retiree health benefits were **guaranteed** for life." Order at 10 (emphasis added). Again, however, the most reasonable reading of this language is that Alcoa stated that it intended to continue to **voluntarily** provide benefits at the capped level for the rest of the *Curtis* retirees' lives.[5] Nothing in the record shows that the court or the plaintiffs interpreted these statements as an admission by Alcoa that benefits are vested or otherwise contractually guaranteed. And in any event, Alcoa's words could not have been such an admission because the court had **already concluded** in its bench trial ruling (directly contrary to Alcoa's submissions) that those retirees' healthcare benefits were vested based on the language of the contracts (as explained below). Thus, by that time, whether benefits were vested had become a moot point.

---

[5] Indeed, as noted above, Alcoa has not modified the benefits of the *Curtis* retirees, including because the Cap Agreement makes those benefits subject to mandatory bargaining. *See supra* at 19.

For these reasons, the Court erred when it held that Alcoa took a "clearly inconsistent" position between this case and *Curtis* so as to trigger judicial estoppel. *Hook*, 195 F.3d at 306.

### C.     Alcoa did not persuade the *Curtis* court that benefits are vested.

For judicial estoppel to be warranted, it is not enough for a party to take a "clearly inconsistent" position between two cases—the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Walton*, 643 F.3d at 1002. "What matters . . . is whether, in reaching its earlier decision, the court **relied on the representation** of the one against whom estoppel is asserted." *In re Airadigm Comms., Inc.*, 616 F.3d 642, 662 (7th Cir. 2010) (emphasis added); *see also Astor*, 910 F.2d at 1547 ("The principle is that if you prevail in Suit #1 *by* representing that A is true, you are stuck with A in all later litigation growing out of the same events.") (emphasis added).

The Court held that this factor supported judicial estoppel here because Alcoa's purported "representations . . . persuaded the *Curtis* court" that benefits are vested. Order at 11. But this is without merit. To be sure, the *Curtis* court concluded that the *Curtis* retirees' benefits vested upon their retirement. But the court's conclusion was based on its interpretation of the language in the CBAs and summary plan descriptions ("SPDs") that applied to the post-1993 retirees, applying then-binding Sixth Circuit precedent (the "*Yard-Man* inference") that placed a heavy "thumb on the scale in favor of vested retiree benefits in all [CBAs]," *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 428 (2015):

> The CBAs linked eligibility for retiree health benefits to eligibility for a pension. The retiree health benefits provided by the CBAs included benefits to a surviving spouse, and a Medicare Supplement plan. The SPDs provided that retirees would receive retiree health benefits on the first day of their retirement and they would last until the death of the retiree.

22

> Since retirees are eligible to receive pension benefits for life, the act of tying retiree health benefits to pension eligibility indicates that the parties intended that the company provide lifetime health benefits as well.  In determining vesting, the question is not whether or not there is a cap—benefits can still be vested at a capped level—but whether whatever benefit levels which were promised by the healthcare plan were promised to last past the expiration of a particular CBA.  *Yard-Man*, 716 F.2d at 1479.  ***The language of the CBAs and SPDs show that plaintiffs' health benefits are lifetime benefits.***  Further proof that plaintiffs' health benefits are vested is promises for benefits after Medicare eligibility and Medicare premium reimbursements, which would be illusory if the benefits were not vested.  Accordingly, the court finds that plantiffs['] health benefits vested at time of their retirement, subject to the cap.

*Curtis*, 2011 WL 850410, at ¶¶ 236-37, *43 (emphasis added).  Given the court's express reliance on the (now overruled) *Yard-Man* inference, it is likely that if it decided *Curtis* today, it would agree with Alcoa that the CBAs and SPDs do ***not*** vest benefits.  Regardless, Alcoa's failure to persuade the court on this point was ultimately immaterial to the judgment in *Curtis* because the court determined that even if the post-1993 retirees vested in healthcare benefits upon retirement, they vested in the ***capped*** benefits, not the uncapped benefits they were seeking.

In short, the *Curtis* court's vesting analysis never cited, referenced, or relied on ***any*** of Alcoa's purported statements focused on by this Court.  Nor did the court ever suggest that it viewed Alcoa as taking the position that benefits were vested (indeed, the court would not have even needed to look to any documents for evidence of vesting if Alcoa took such a position).

The Court's contrary conclusion that Alcoa "persuaded" the *Curtis* court that benefits were vested rested on clear errors.  The Court mistakenly believed that the *Curtis* court had relied on the statement by Alcoa's attorney that "'[w]e are forced to return to the written . . . deal.  Alcoa is living up to that deal.  Alcoa . . . will [pay healthcare benefits] for the rest of these people's lives.'"  Order at 11 (omissions in original) (quoting *Curtis*, 2011 WL 850410, at *55; Summ. J. Tr. at 72:19-22, *Curtis*, ECF No. 379).  In reality, this statement by Alcoa's attorney was ***not*** cited or referenced in the court's vesting analysis, and was not even made at the bench

trial at all—it was made **over one year prior** at the summary judgment hearing.[6] There is no reasonable basis to simply assume that the *Curtis* court relied on (let alone remembered) isolated statements by Alcoa's attorney at a different hearing one year before.[7]

The Court also erred when it cited Alcoa's brief in opposition to the plaintiffs' Motion to Amend the judgment, remarking that Alcoa apparently "took" the judgment "as a victory when it explained that '[t]he Court agreed with Alcoa—that Plaintiffs' benefits had vested 'subject to the cap.'" Order at 11 (quoting Alcoa's Opp. to Pls.' Mot. to Amend in *Curtis*, ECF No. 132-27 at 7). As explained above, however, even though the *Curtis* court agreed with Alcoa that **if** benefits are vested they had vested at retirement subject to the Cap Agreement, Alcoa never took the position or argued that benefits are vested—it did the opposite. *See supra* at 13-16. And Alcoa took the judgment as a victory because it **was** a victory; the dispute in *Curtis* was over the legality of the Cap, and the court upheld it.

The Court also relied on the denial of the plaintiffs' Motion to Amend, claiming that the *Curtis* court "acceded to Alcoa's argument that no specific declaration that post-1993 retirees had lifetime healthcare benefits was necessary because such a declaration would be duplicative of Alcoa's contractual promises." Order at 11. In actuality, the *Curtis* court denied the Motion to Amend on entirely different grounds—that the plaintiffs had brought suit challenging **the Cap**, and had failed—without mentioning any of the purported statements by Alcoa relied on by this Court. *See* Memorandum and Order, *Curtis*, ECF No. 541. The language in Alcoa's opposition

---

[6] The Court evidently confused the August 2008 summary judgment hearing with the late 2009 bench trial, mistakenly stating that Alcoa's statements at the summary judgment hearing were made at the bench trial. *See* Order at 3-4 ("After the *Curtis* court denied summary judgment, the case proceed to an eight-day bench trial where Alcoa explained it 'will [pay healthcare benefits] for the rest of these people's lives.'" (quoting Summ. J. Tr. at 72, *Curtis*, ECF No. 379)); *see also Curtis*, 2011 WL 850410, at *1 (bench trial dates).

[7] The same reasoning also dispels the notion that the *Curtis* court relied on Alcoa's other purported vesting arguments focused on by this Court, such as statements in Alcoa's opposition to the plaintiffs' motion for preliminary injunction filed in May 2007. *See* Alcoa's Prelim. Inj. Opp., *Curtis*, ECF No. 64; *supra* at 16-19.

24

brief could not have "persuaded" the *Curtis* court to find that benefits were vested because the court had already so found based on the applicable CBAs and SPDs, which the denial of the Motion to Amend did nothing to change. And any suggestion that Alcoa "persuaded" the court to deny the Motion to Amend, by purportedly acquiescing in that earlier finding, ignores the much simpler basis of Alcoa's opposition to that motion and of the court's order denying it: i.e., the failure of plaintiffs' challenge to the Cap meant that the capped benefits they were "receiving" were "lawful," and so there was simply no entitlement to any "relief" because Alcoa was not doing anything wrong. *Curtis* ECF No. 541 at 5.

Finally, the Court also erroneously relied on the Sixth Circuit's opinion affirming the *Curtis* bench trial ruling, in which the Sixth Circuit "remarked off-hand that '[u]nder the parties' 1988 CBA that expired in 1992, [Alcoa] provided lifetime, uncapped retiree healthcare benefits.'" Order at 12 (quoting *Curtis v. Alcoa, Inc.*, 525 F. App'x 371, 373 (6th Cir. 2013)). The Court inferred from this language that "based on Alcoa's representations that it agreed with the *Curtis* plaintiffs' position on the length of benefits, it was simply unquestioned that pre-1993 retirees had lifetime healthcare benefits." *Id.* But this conclusion does not follow because the Sixth Circuit never said anything about the basis for its remark or even provided a citation. It is impossible to determine exactly what the Sixth Circuit was relying on, but it is far more plausible that it was relying on the lower court's vesting conclusion, which, as explained, was based on the language of the contracts over Alcoa's objections, not Alcoa's purported "representations."

Accordingly, the Court erred when it held that Alcoa persuaded the *Curtis* court that benefits are vested.[8]

---

[8] Notably, the Court used this erroneous finding as the basis to disregard Alcoa's clear position in *Curtis* that benefits are **not** vested. *See* Order at 13 ("Because it was Alcoa's argument that retirees had lifetime, capped healthcare benefits that persuaded the *Curtis* court, judicial estoppel locks Alcoa into that position."). Because the

25

**D.    Alcoa would not derive an unfair advantage if it were not judicially estopped, nor would Plaintiffs incur an unfair detriment.**

The next judicial estoppel factor applied by the Court was "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Walton*, 643 F.3d at 1002. The Court's analysis of this factor was short and conclusory, finding that "Alcoa would quite clearly gain an unfair advantage by taking the position that pre-1993 retirees do not have lifetime healthcare benefits, which is inconsistent with a position 'successfully taken in the past.'" Order at 12 (quoting *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014)).

The Court failed to appreciate that Alcoa did not prevail in *Curtis* on its purported position that benefits are vested. The plaintiffs ultimately took nothing because the court held that the Cap Letters were enforceable, the plaintiffs' benefits did not vest before retirement and therefore were subject to the enforceable Cap Agreement, and Alcoa had properly implemented the Cap Agreement. *Curtis*, 2011 WL 850410, at *37-52, ¶¶ 211-75. As Alcoa repeatedly told the *Curtis* court, whether benefits actually vested at retirement was irrelevant to the plaintiffs' claims. Thus, because Alcoa prevailed in consideration of issues ***other*** than whether benefits vested at retirement, it is not "playing 'fast and loose' with the courts by prevailing twice on opposing theories." *Airadigm*, 616 F.3d at 661. A determination that Alcoa is not judicially estopped would therefore not result in an unfair advantage to Alcoa.

Nor would the Plaintiffs incur an "unfair determent" if Alcoa is not estopped. *Walton*, 643 F.3d at 1002. The Court did not address this factor in its analysis, but there is nothing to suggest it would be unfair for Plaintiffs to have to litigate over whether the Class Members have

---

*Curtis* court's determination on vesting was not based on any of the purported statements by Alcoa focused on by this Court, this conclusion is also without merit.

vested retiree healthcare benefits. Plaintiffs could not have reasonably believed that Alcoa would not oppose their lawsuit to challenge the transition to the HRA Plan for the Class Members. *See In re Knight-Celotex, LLC*, 695 F.3d 714, 724 (7th Cir. 2012) (refusing to invoke judicial estoppel, and finding that the party arguing estoppel "could not have reasonably believed that [the party to be estopped] intended to abandon so casually" his claims and the related "millions of dollars," and that therefore the "prospect" that the party would have to litigate against the claims was not an "unfair detriment"). Plaintiffs are free (subject to the rules governing extrinsic evidence) to try to use Alcoa's prior statements in *Curtis* to argue that it believes that benefits are vested, as they did in their summary-judgment briefing. But to estop Alcoa from even making its argument about vesting, based on its prior statements about different retirees in a case that it won on independent grounds, is not to relieve Plaintiffs of an unfair detriment but to grant them an unearned windfall.

## E.     The Court's judicial estoppel analysis further erred in other key ways.

Finally, the Court's conclusion that judicial estoppel is warranted also relied on two additional points that are without merit.

***First***, the Court faulted Alcoa for not doing more to challenge the *Curtis* court's vesting decision. The Court held that it was "[e]qually important" to its analysis that "Alcoa abandoned its argument that retirees did not have lifetime healthcare benefits" because Alcoa did not seek reconsideration of the *Curtis* court's conclusion that the capped benefits were vested, nor cross appeal or raise that issue in its appellate response brief. Order at 14. The Court further noted that after the Sixth Circuit affirmed the district court, "Alcoa did not cross-petition for a writ of certiorari" to the Supreme Court "or seek *en banc* review of that determination." *Id.* at 15.

27

As an initial matter, the Court failed to appreciate that "you can't appeal from a judgment entirely in your favor." *Byron v. Clay*, 867 F.2d 1049, 1050 (7th Cir. 1989); *see also United States v. Accra Pac, Inc.*, 173 F.3d 630, 632 (7th Cir. 1999) ("[A] litigant may not appeal from unfavorable statements in a judicial opinion, if the judgment was favorable."); *Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006) ("Parties in litigation may suffer setbacks along the road to favorable judgments. Appeals are taken to reverse judgments, not intermediate setbacks."). The *Curtis* court's judgment dismissed the plaintiffs' case entirely in Alcoa's favor, thus preventing Alcoa from taking a cross appeal under well-settled, black-letter law.

In addition, the Seventh Circuit has rejected the notion that a party's failure to object to a ruling warrants judicial estoppel. In *Allison v. Ticor Title Insurance Co.*, a group of unit owners of a vacation resort lost their property interests when they failed to object to a bankruptcy court's order approving an agreement for the purchase and sale of the resort. 979 F.2d 1187, 1192 (7th Cir. 1992). The unit holders sued their title insurer for coverage over the loss of their property interests. The insurer argued that because the unit holders failed to object to the bankruptcy court's order, judicial estoppel applied and prevented them from challenging the agreement for the purchase and sale of the resort. *See id.* at 1193. The Seventh Circuit rejected this argument, declaring that "the sole fact that [the unit holders] failed to object to" the agreement did not mean they took an "inconsistent position[]" when they later argued that they were not bound by the agreement. *See id.* at 1194. The Seventh Circuit also pointed out that the unit holders "certainly did not prevail in bankruptcy court because of" their failure to object to the agreement. *Id.*

Applying *Allison* here, the "fact that [Alcoa] failed to object to" the *Curtis* court's finding that the post-1993 retirees had vested benefits does not mean that Alcoa took an "inconsistent position" in the two cases or otherwise warrant judicial estoppel. *See id.* Moreover, as

28

explained, Alcoa "certainly did not prevail [in *Curtis*] because of" the court's finding that the post-1993 retirees had vested benefits. *See id.*

**Second**, the Court held that "[t]he complexity of the interpretive question posed to this court and the *Curtis* court also weighs in favor of applying judicial estoppel." Order at 12. The Court remarked that "[t]he *Curtis* court was tasked with sifting through decades of continuous bargaining between the Unions and Alcoa" and that "[t]he parties submitted around 9,382 pages" of trial exhibits. *Id.* at 12. The Court noted that "Alcoa was also the only entity with any experience at the bargaining table," and held that "allowing Alcoa to reverse its position would give the impression that Alcoa hoodwinked the *Curtis* court instead of assisting it in sifting through the voluminous record and lengthy bargaining history." *Id.* at 12-13.

This conclusion was in error. Defendants are not aware of any authority establishing a rule that judicial estoppel is warranted based on the "complexity" of a case, such as the number of trial exhibits or the span of the collective bargaining history at issue. *Id.* at 12. *In re Airadigm Communications, Inc.*, 616 F.3d 642 (7th Cir. 2010), which the Court invoked, does not stand for the general proposition that judicial estoppel is warranted if the prior court was faced with a complex contract interpretation question. The comments in *Airadigm* focused on by the Court were dicta confined to the unique circumstances of that case, where the bankruptcy court wrestled with trying to ascertain the impact of recent Supreme Court precedent on its prior rulings. *See* 616 F.3d at 647-50, 659-63. Such circumstances are inapplicable here.

More fundamentally, there simply is no basis for a concern that Alcoa "hoodwinked" the *Curtis* court so as to warrant judicial estoppel. Order at 13. Again, *Curtis* was about whether the post-1993 retirees were entitled to receive uncapped benefits; Alcoa argued that they were not, either because their benefits were entirely unvested, or because even if the benefits were vested,

they had vested subject to the Cap.  The court agreed with the second theory and accordingly entered judgment for Alcoa.  Although the underlying facts were complex, the bottom line was straightforward—the Cap was legal, and the class was not entitled to any relief.  And the court never once suggested that it thought Alcoa took the position that benefits are vested, or that any of its rulings were based on such an impression.

In sum, for the foregoing reasons, there is a reasonable likelihood that the Seventh Circuit will reverse the Court's Order granting summary judgment for Plaintiffs on the basis of judicial estoppel.  Respectfully, rather than apply judicial estoppel "with caution and in the narrowest of circumstances," the Court did the opposite.  *Eli Lilly*, 2011 WL 573761 at *4.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Stay and stay the injunction pending Defendants' appeal.

DATED:  April 11, 2025                    Respectfully submitted,


　 */s/ Thomas Birsic* 　　　　　　　　

**K&L GATES LLP**
Thomas Birsic (admitted *pro hac vice*)
Jeffrey Richter (admitted *pro hac vice*)
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: 412.355.6500
Fax: 412.355.6501
thomas.birsic@klgates.com
jeff.richter@klgates.com

Rosemary Alito (admitted *pro hac vice*)
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Telephone: 973.848.4000
Fax: 973.848.4001
rosemary.alito@klgates.com

30

**MARK MILLER LAW OFFICE**
Mark E. Miller (Attorney No. 10458-82)
915 Main Street – Suite 203
PO Box 3009
Evansville, Indiana 47708
Telephone: 812.303.3444
mmiller@indianalawonline.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that, on April 11, 2025, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

 */s/ Thomas Birsic*
Thomas Birsic