# Exhibit H

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **CHARLES CURTIS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civ. No. 3:06-cv-448** |
| | ) | **Judge Phillips** |
| **v.** | ) | |
| | ) | |
| **ALCOA INC., Individually and as Fiduciary of** | ) | |
| **the Employees' Group Benefits Plan of Alcoa** | ) | |
| **Inc., Plan II,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR AMENDMENT OF THE JUDGMENT ORDER

Plaintiffs, through counsel, pursuant to Fed. R. Civ. P. 59(a)(2) and (e) hereby submit their Memorandum in support of their Motion for Clarification and/or Amendment of the Judgment Order entered in this case on March 9, 2011. In further support of their motion the Plaintiffs show as follows:

## I.  INTRODUCTION

Throughout this litigation at each and every stage of these proceedings the Plaintiffs consistently asserted that their health care benefits were vested lifetime benefits. The Defendant consistently denied it. Plaintiffs also contended that the vested benefits were not subject to a cap. The Court's Findings of Fact and Conclusions of Law (hereinafter referred to as "FOF") dated March 9, 2011 state at paragraph 289 that "Plaintiffs who retired after the effective date of a cap agreement were vested in their health care benefits subject to the limitations imposed by the cap." Thus while ruling against Plaintiffs as to the cap issue, the Court did still determine the benefits were vested. This finding that the benefits are vested (albeit subject to a cap) is important to

Plaintiffs because the law affords greater protection to vested than non-vested benefits. However, the Judgment Order (hereinafter referred to as "Order") does not carryover this finding but instead dismisses every claim with prejudice, including Plaintiffs' claim for a declaratory judgment that benefits were vested. In order to cure the apparent contradiction between the FOF and the Order, the Plaintiffs request that the Court clarify and amend its Order to include a specific judgment granting the Plaintiffs' request for a declaration that their health care benefits are lifetime, vested benefits and appropriate injunctive relief.

## II.     FACTUAL BACKGROUND

This ERISA and LMRA action was filed based on allegations that the Defendant improperly reduced vested retiree health care medical benefits. The Plaintiffs sought declaratory, injunctive and monetary relief. The case was tried September 22, 2009 through October 1, 2009. On March 9, 2011 the Court filed the Order and the 100-page written FOF. The Order states in its entirety:

> Upon consideration of the evidence produced at the nonjury trial held September 22, 2009 through October 1, 2009, and for the reasons set forth in the findings of fact and conclusions of law filed contemporaneously with this order, IT IS ORDERED AND ADJUDGED that the plaintiffs take nothing, and that the action be DISMISSED WITH PREJUDICE on the merits.

Because the Order appears not to address several points stated in the FOF and because the Order appears to fail to address all of the remedies sought by the Plaintiffs, they now seek clarification, and if necessary, amendment of the Order.

### III.    ISSUES FOR CLARIFICATION

**A.    The Plaintiffs request the Court to clarify its Judgment Order with respect to the issue of whether the retiree health care benefits at issue in this case were vested.**

Throughout the litigation at each and every stage of these proceedings, the

Plaintiffs have consistently asserted that their benefits are vested lifetime benefits:

1)    "Each Plaintiff was a member of a union (or derives his or her rights from such a member) which entered into collective bargaining agreements with Defendant . . . providing them with *vested rights* to retiree health care . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*; Doc. 169, *Fifth Amended Complaint*, ¶5) (emphasis added).

2)    "Plaintiffs bring this action because Defendant has modified the Plan in violation of their *vested rights* under ERISA . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*; Doc. 169, *Fifth Amended Complaint*, ¶8) (emphasis added).

3)    "Plaintiffs allege herein that their retiree health care benefits under the Plan *are vested* and, as such, cannot be modified by Defendant without Plaintiffs' consent, which consent Plaintiffs have not provided." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*; Doc. 169, *Fifth Amended Complaint*, ¶9) (emphasis added).

4)    "Accordingly, Plaintiffs allege that such a change to their Plan . . . is breach of contract under the NLRA, a violation of their *vested rights* under ERISA . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*; Doc. 169, *Fifth Amended Complaint*, ¶10) (emphasis added).

5)    "All of the Plaintiffs *are vested in their welfare benefits* under the Plan and were vested in their welfare benefits under the Plan prior to the signing (sometime after June 22, 2006 relevant to most Plaintiffs) by the Union and Alcoa of the CBAs between

3

Defendant Alcoa and the Union, purporting to reduce *the vested benefits* to which Plaintiffs are entitled." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint,* ¶28; Doc. 169, *Fifth Amended Complaint*, ¶32) (emphasis added).

6)  "Defendant is collaterally estopped from arguing that Plaintiffs do not have vested benefits because the issue has been previously decided . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶29; Doc. 169, *Fifth Amended Complaint*, ¶33) (emphasis added).

7)  "The Former Reynolds Metals Company Employees, who remained actively employed, were also covered by the CBAs between the Union and Alcoa after the merger in or around 1996, which provided for the *vested welfare benefits* Defendant now seeks to improperly reduce and withhold and which continued the *vested benefits* that these former Reynolds Metals Company employees had prior to the merger." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶35; Doc. 169, *Fifth Amended Complaint*, ¶39) (emphasis added).

8)  "Between June 1, 1993 and June 30, 2006, all Plaintiffs (or persons from whom Plaintiffs derive their *rights to vested welfare benefits*) . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶41; Doc. 169, *Fifth Amended Complaint*, ¶45) (emphasis added).

9)  "The CBAs and SPDs provided Plaintiffs *with vested welfare plan benefits* which could not be changed by Defendant or the Union without Plaintiffs' consent." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶55; Doc. 169, *Fifth Amended Complaint*, ¶59) (emphasis added).

10) "All Plaintiffs *have vested welfare benefits* under the Plan and relevant CBAs." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶61; Doc. 169, *Fifth Amended Complaint*, ¶69) (emphasis added).

11) "Alternatively, Plaintiffs *vested in retiree medical benefits* under the terms of the Plan upon retirement . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶69; Doc. 169, *Fifth Amended Complaint*, ¶89) (emphasis added).

12) "*Plaintiffs bring this cause of action for and request relief in the form of an order declaring that Plaintiffs are vested in the welfare benefits plan* provided to Plaintiffs and their spouses at the times of Plaintiffs' retirement (or earlier vesting in the Plan). (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶72; Doc. 169, *Fifth Amended Complaint*, ¶91) (emphasis added).

13) Defendant has breached its contract in the CBAs by failing to provide . . . Plaintiffs with the vested welfare benefits contracted for (in the form of vested retiree healthcare benefits) in the CBAs relevant to each Plaintiff . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶76; Doc. 169, *Fifth Amended Complaint*, ¶97).

14) "Defendant has breached its duty under ERISA to provide Plaintiffs their vested welfare benefits." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶82; Doc. 169, *Fifth Amended Complaint*, ¶103).

15) "An actual controversy exists between the parties in that the Plaintiffs contend that their employee welfare benefits plan retiree benefits vested either at the same time as they became *vested* under Defendant's tax qualified retirement plan (after ten (10) years of service, or after five years of service) or, at the latest, on retirement, and Defendant contends that Plaintiffs *do not have vested welfare benefits* and that Defendant is entitled to change the benefits it owes to Plaintiffs." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶91; Doc. 169, *Fifth Amended Complaint*, ¶115) (emphasis added).

16) "Plaintiffs bring two claims for relief under ERISA: (1) a claim that they *vested in the retiree health care benefits* under the terms

of the plan, and an alternate claim that, (2) if they did not vest, then Alcoa breached its fiduciary duties *by misrepresenting that the benefits were vested*." (Doc. 22, *Brief in Support of Motion for Preliminary Injunction*, p. 3) (emphasis added).

17)   "According to the union leaders, the CBAs and SPDs were intended to provide Plaintiffs *vested health care benefits* paid entirely by Alcoa until their death." (Doc. 22, *Brief in Support of Motion for Preliminary Injunction*, p. 8) (emphasis added).

18)   "First, the documents show vesting unambiguously in favor of Plaintiff (sic) and *provide vested lifetime retiree healthcare benefits*." (Doc. 78, *Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction*, p. 2) (emphasis added).

19)   "It is clear the documents indicate that Plaintiffs *have vested benefits* until death." (Doc. 78, *Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction*, p. 16) (emphasis added).

20)   "Plaintiffs here did not agree to any reduction in *their vested benefits*." (Doc. 78, *Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction*, p. 20) (emphasis added).

21)   "Furthermore, *the vesting claims* and other claims in this action are readily susceptible to class treatment." (Doc. 114, *Plaintiffs' Brief in Support of Motion to Amend and in Support of Motion for Class Certification*, p. 2) (emphasis added).

22)   "Under ERISA and the LMRA, all courts agree that if a document explicitly indicates *that retiree medical benefits are vest*ed then that document's language will be enforced." (Doc. 116, *Plaintiffs' Omnibus Brief on Court-Ordered Issues*, p. 2) (emphasis added).

23)   1)  Whether Plaintiffs' retiree *health care benefits are vested* . . ." (Doc. 254, *Brief in Support of Motion for Partial Summary Judgment*, p. 14) (emphasis added).

At each stage of the litigation Defendant consistently categorically denied that

Plaintiffs' health care benefits were vested:

1)   "Alcoa denies the remaining allegations contained in paragraph 5 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶5; "Denies the

allegations of Paragraph 5 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶5).

2)    "Alcoa denies the allegations contained in paragraph 8 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶8; "Denies the allegations of paragraph 8 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶8).

3)    "Alcoa denies the allegations contained in paragraph 9 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶9; "Denies the allegations of Paragraph 9", Doc. 176, *Answer to Fifth Amended Complaint*, ¶9).

4)    "Alcoa denies the allegations contained in paragraph 10 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint* ¶10; "Denies the allegations of Paragraph 10", Doc. 176, *Answer to Fifth Amended Complaint*, ¶10).

5)    "Alcoa denies the allegations contained in paragraph 28 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶28; "Denies the allegations of Paragraph 32", Doc. 176, *Answer to Fifth Amended Complaint*, ¶32).

6)    "Alcoa denies the allegations contained in paragraph 29 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶29; "Denies the allegations of Paragraph 33", Doc. 176, *Answer to Fifth Amended Complaint*, ¶33).

7)    "Alcoa denies the remaining allegations contained in paragraph 35 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*; "Denies the allegations of paragraph 39 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶35).

8) "Alcoa denies the remaining allegations contained in paragraph 41 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶41; "Denies the allegations of Paragraph 45 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶45).

9) "Alcoa denies the allegations contained in paragraph 55 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶55; "Denies the allegations of paragraph 59", Doc. 176, *Answer to Fifth Amended Complaint*, ¶59).

10) "Alcoa denies the allegations contained in paragraph 61 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶61; "Denies the allegations of paragraph 69 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶69).

11) "Alcoa denies the remaining allegations contained in paragraph 69 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶69; "Denies the allegations of Paragraph 89" Doc. 176, *Answer to Fifth Amended Complaint*, ¶89).

12) "Alcoa denies the allegations contained in paragraph 72 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶72; "Denies the allegations of Paragraph 91 except admits that Plaintiffs request relief as stated in Paragraph 91. "Alcoa specifically denies that Plaintiffs are entitled to any of the relief sought in Paragraph 91", Doc. 176, *Answer to Fifth Amended Complaint*, ¶91).

13) "Alcoa denies the allegations contained in paragraph 76 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶76; "Denies the allegations of Paragraph 97 . . .", Doc. 176, *Answer to Fifth Amended Complaint*, ¶97).

14) "Alcoa denies the remaining allegations contained in paragraph 82 [see Plaintiffs' allegations quoted above] of the First Amended

Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, ¶82; "Denies the allegations of Paragraph 103", Doc. 176, *Answer to Fifth Amended Complaint*, ¶103).

15) "Alcoa denies the allegations contained in paragraph 91 [see Plaintiffs' allegations quoted above] of the First Amended Complaint." (Doc. 11, *Answer to First Amended Complaint*; Doc. 56, *Answer to Fourth Amended Complaint*, 91; "Denies the allegations of paragraph 115 . . . and Alcoa asserts that Plaintiffs do not have vested welfare benefits and are not entitled to fully funded, lifetime health care benefits", Doc. 176, *Answer to Fifth Amended Complaint*, ¶115).

16) "The evidence does not support Plaintiffs' contention that retiree medical benefits are vested." (Doc. 507-2, *Defendant's Proposed Findings of Fact*, pp. 75-76).

17) "Alcoa's position is that Plaintiffs' retiree health benefits never vested." (Doc. 511-2, *Defendant's Response to Plaintiffs' Proposed Findings of Fact*, p. 1).

18) "The fact that there is a connection between the receipt of retiree health benefits and the receipt of pension benefits does not mean that health benefits vested…" (Doc. 511-2, *Defendant's Response to Plaintiffs' Proposed Findings of Fact*, p. 17).

The Court has also recognized in its rulings throughout the litigation that the issues of vesting was one to be decided at trial:

1) "Finally, plaintiffs claim that they have shown a strong likelihood of success on the merits and that the CBAs, SPDs and other relevant documents are clear on their face that plaintiffs have in fact *vested medical benefits that cannot now be reduced* . . . At this point, plaintiffs have not shown a likelihood of success on the merits. For that matter neither has the defendant. (Doc. 163, *Memorandum Opinion* [on Plaintiffs' Motion for Preliminary Injunction], pp. 9, 13) (emphasis added).

2) "Whether Plaintiffs *were and are vested* in their retiree health care benefits?" (Doc. 456, *Pre-Trial Order*, p. 4) (emphasis added).

3) "What, *if any*, retiree health care benefits *became vested* upon Plaintiffs' retirement?" (Doc. 456, *Pre-Trial Order*, p. 4) (emphasis added).

In the Court's earlier rulings in this case, such as the one on the Plaintiffs' motion for a preliminary injunction, the Court found that the Plaintiffs had not (as of that time) proved a right to vested benefits. (Doc. 163, *Order on Motion for Preliminary Injunction*). That finding was repeated in the Court's ruling on the cross-motions for summary judgment. (Doc. 392, *Order on Cross Motions for Summary Judgment*). The Order that was issued after the trial in this case, as noted, simply states, "IT IS ORDERED AND ADJUDGED that the plaintiffs take nothing, and that the action be DISMISSED WITH PREJUDICE on the merits." The Plaintiffs' request for a declaratory judgment finding that the benefits were vested was not addressed in the Order. The Order also fails to address the Plaintiffs' request for appropriate injunctive relief to prevent Alcoa from reducing their benefits from their vested amounts.

In the FOF however it appears the Court clearly found in favor of the Plaintiffs on this issue (albeit, finding that the benefits though vested were subject to a cap). The Court stated in numerous places throughout the FOF that the Plaintiffs' health care benefits were vested. See, for example, the following paragraphs:

> "To prevail on their ERISA claim, plaintiffs must prove, by a preponderance of the evidence, that it was a term of the Plan that plaintiffs would, for the rest of their lives, if and when they became vested . . ." (FOF, ¶204).

> "The CBAs linked eligibility for retiree health benefits to eligibility for a pension. The retiree health benefits provided by the CBAs included benefits to a surviving spouse, and a Medicare Supplement plan. The SPDs provided that retirees would receive retiree health benefits on the first day of their retirement and they would last until the death of the retiree." (FOF, ¶236).

> "The language of the CBAs and SPDs show that plaintiffs' health benefits are lifetime benefits. Further proof *that plaintiff's health benefits are vested* is promises for benefits after Medicare eligibility and Medicare

10

premium reimbursements, which would be illusory if the benefits were not vested. *Accordingly the court finds that the plaintiff's benefits vested at the time of retirement, subject to the cap*." (FOF, ¶237) (emphasis added).

" . . . Plaintiffs who retired after the effective date of a cap agreement *were vested in their healthcare benefits* subject to the limitations imposed by the cap." (FOF, ¶289) (emphasis added).

The finding that the benefits are vested (albeit subject to a cap) is important to Plaintiffs because the law affords greater protection to vested benefits. The Court's finding that the benefits are vested protects retirees against Alcoa's ability to reduce its current contribution toward benefits of over $7,000/year for pre-Medicare retirees, for example. However, though the FOF find that "Plaintiffs who retired after the effective date of a cap agreement were vested in their health care benefits subject to the limitations imposed by the cap" (FOF, ¶289), the Order does not include this finding but instead dismisses every claim with prejudice. As it stands, the Order does not declare that the Plaintiffs' health care benefits are vested and instead dismisses the Plaintiffs' request for a declaratory judgment on this issue with prejudice. The Plaintiffs therefore request that the Order be amended to reflect that the Court did find in favor of the Plaintiffs on this issue, and that Plaintiffs have vested lifetime benefits.

## B.    The Plaintiffs request the Court to clarify its Judgment Order with respect to the cap amount to which the Plaintiffs' vested health care benefits are subject.

The Order does not state the amount of the cap to which the Court found the Plaintiffs' vested health care benefits subject. The Court refers to the figure of $7,767.00 for pre-65/non-Medicare eligible retirees and at $3,389.00 for post-65/Medicare eligible retirees in the FOF:

"Workers who retired after the cap agreements were effective received vested rights subject to the cap. The parties might have agreed in later

years to provide greater benefits to the retirees, as they did in this case, but the vested rights were only to the capped contributions."  (FOF, ¶245).

"Finally, the court concludes that the 2006 CBA properly implemented the 2001 cap at $7,767.00 for pre-65/non-Medicare eligible retirees and at $3,389.00 for post-65/Medicare eligible retirees."  (FOF, ¶276).

Although the FOF states that "Plaintiffs who retire after the effective date of a cap agreement were vested in their health care benefits subject to the limitations imposed by the cap" (See ¶289 of FOF), the Order conflicts with this finding that the Plaintiffs' health care benefits are vested and dismisses the Plaintiffs' request for a declaratory judgment and injunctive relief on this issue with prejudice.

Further, the Court in its Order does not state whether the level of vesting to which the Court refers in the FOF is in fact $7,767.00 for pre-65/non-Medicare eligible retirees and $3,389.00 for post-65/Medicare eligible retirees.  Stated differently, as it stands the Order does not indicate whether by being vested subject to a cap the benefits for retirees under the 2006 CBA requires Alcoa to contribute $7,767.00 for pre-65/non-Medicare eligible retirees and $3,389.00 for post-65/Medicare eligible retirees, although that is what the FOF indicates.  The Plaintiffs accordingly request that the Court amend the Order to reflect what the Court has ruled as to the amount of the cap under the 2006 CBA.

**C.**  **The Plaintiffs request the Court to clarify its Judgment Order with respect to whether the plan design, premiums and deductibles to which the Plaintiffs are subject are to remain constant until 2017.**

The Order is also silent as to Plaintiffs' request for injunctive and declaratory relief preventing Alcoa from making changes to the plan design, premiums and deductibles to which the Plaintiffs have been and will remain subject between 2007 to 2017.  In this regard the pleadings state:

"Plaintiffs also request relief in the form of . . . an injunction and preliminary injunction against Defendant's reduction of their welfare benefits under the Plan . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶73; Doc. 169, *Fifth Amended Complaint*, ¶92).

"The requested order would include: (a) declaratory judgment for Plaintiffs; (b) an injunction prohibiting Defendant from changing Plaintiffs' welfare benefits plan benefits from what they were on the date of retirement or other date on which said benefits commenced; (c) injunctive relief directing Defendant to comply with the CBAs in effect when each Plaintiff retired or otherwise commenced receipt of benefits via specific performance of Defendant's obligation to provide payment for their vested welfare benefits;" (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶79; Doc. 169, *Fifth Amended Complaint*, ¶98).

"Plaintiffs request that the court grant Plaintiffs' equitable relief, injunctive relief, declaratory relief . . . as a result of Defendant's breached described herein of its fiduciary duty to them under ERISA." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶89; Doc. 169, *Fifth Amended Complaint*, ¶112).

"Plaintiffs are entitled to injunctive and declaratory relief in the form of an order: (a) that Plaintiffs and their spouses and dependants are entitled to receive in an unreduced form the welfare benefits they received and which were included in the relevant SPDs and CBAs at the time of retirement or earlier commencement of retiree health care benefits; and (b) ordering Defendant to restore Plaintiffs' benefits to what they were prior to January 1, 2007 and prior to any CBA provisions purporting to effectuate changes in those benefits." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, ¶93; Doc. 169, *Fifth Amended Complaint*, ¶116).

"[Requesting relief of] 1. Preliminarily and permanently enjoining Defendant from reducing Plaintiffs' welfare benefits from the levels provided Plaintiffs by Defendant at the time Plaintiffs retired or otherwise commenced receiving retiree health care benefits." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, Prayer for Relief ¶1; Doc. 169, *Fifth Amended Complaint*, Prayer for Relief ¶2).

"[Requesting relief of] 3. A declaratory judgment stating that Plaintiffs have vested welfare benefit plans benefits to be provided by Defendant unreduced from those previously and currently received by Plaintiffs and promised to Plaintiffs at the time of retirement of Plaintiffs . . ." (Doc. 1, *Complaint*; Doc. 2, *First Amended Complaint*; Doc. 8, *Second Amended Complaint*; Doc. 9, *Third Amended Complaint*; Doc. 42-43, *Fourth Amended Complaint*, Prayer for Relief ¶3; Doc. 169, *Fifth Amended Complaint*, Prayer for Relief ¶4).

"[Plaintiffs] claim that on or around January 11, 2007 Plaintiffs' retiree health care benefits were impermissibly reduced in violation of ERISA and the LMRA and they are entitled to injunctive and declaratory relief . . ." (Doc. 456, *Pretrial Order*, p. 2).

In the FOF, the Court seems to indicate that the cap in the 2006 CBA acts to prevent Alcoa from increasing premiums until 2017 from the 2007 level of $150.00 per month for the retiree and the retiree's spouse ($75.00 per person) for a pre-Medicare retiree and $80.00 per month for the retiree and the retiree's spouse ($40.00 per person) for a pre-Medicare retiree.

"As a concession to the Union, Alcoa negotiated a plan design that would ensure that retiree premiums *remained constant from year to year rather than fluctuating with the cost of healthcare*. Accordingly, any premiums paid while annual costs are below the cap will boost the notional account *and will prevent premiums from rising sporadically* when costs exceed the cap by greater margins in the future." (FOF, ¶277, emphasis added).

"However, Lauren McCullough testified that the Union insisted and Alcoa agreed that rather than have increasing premiums to match the rising costs of healthcare, *retirees would pay flat premiums* over the term of the CBA." (FOF, ¶278, emphasis added).

"Plan design changes included a change to a 90/10 co-insurance plan, with out-of-pocket maximums and deductibles. The 2006 deductibles are $250 per person/$500 per family, compared to $75/$150 before 1993." (FOF, ¶281, emphasis added).

"As discussed above, the Union negotiated with Alcoa in 2006 to soften the impact of implementing the cap by providing retirees with benefits that the cap letter did not obligate Alcoa to provide, *such as keeping retiree premiums constant from year to year* and providing additional payments to

widows covered under Alcoa's benefit plan."  (FOF, ¶283, emphasis added)

"Under the negotiated 2006 CBA, a pre-Medicare retiree pays $150 per month for himself and his spouse ($75 per person), a post-Medicare retiree pays $80 per month for himself and his spouse ($40 per person), *and those premiums are expected to stay flat until 2017.*"  (FOF, ¶287, emphasis added)

"The plan design changes set forth in the 2006 CBA *will ensure that no further plan design changes will be necessary until 2017. . . . Alcoa's actuaries currently estimate that the notional account should allow retiree premiums to remain constant until 2017.*"  (FOF, ¶288, emphasis added).

Based on this language the Plaintiffs understand the FOF to require Alcoa to keep premiums, deductibles and the plan design constant and unchanged until 2017.  However, as is apparent from the 2010 CBA summary materials attached as Exhibit A to Declaration of Gregory F. Coleman, (hereinafter referred to as "Coleman Declaration") submitted herewith, these amounts are in fact going up.  As of January 1, 2011 the monthly premium for pre-Medicare retirees has increased by $10 per month to $85 per month (or more than 13%) and in addition will go up another $5 per month beginning January 1, 2013.  As of January 1, 2011 the monthly premium for post-Medicare retirees has increased by $5 per month to $45 per month (or more than 12%) and in addition will go up another $5 per month beginning January 1, 2013.   (Exhibit A, *Coleman Declaration*, Bates number 000002).

The Court will also note that there have been plan design changes in the 2010 attachment that clearly conflict with the language in the FOF quoted above.  At Bates number 000003 of the Coleman Declaration, the Court will note that the deductible has risen to $300 per person/$600 per family under the proposed revisions, up from $250 per

person/$500 per family under the 2006 CBA. This seems to contravene the Court's finding that there were to be no plan design changes until 2017.

This information was not available to the Plaintiffs at the time of trial as the negotiations that resulted in these increases did not take place until May/June 2010. The actual 2010 CBA and SPD have not been published yet. The information stated above is contained in the attachment to Plaintiffs' counsel declaration only. Since the terms of the agreement stated in the attachment generally ends in 2014 based on previous CBAs and SPDs, there is a possibility there could be additional increases between 2014 and 2017.

For this reason, the Plaintiffs request that the Court clarify and amend its Judgment Order with respect to whether the premiums, deductibles and plan design are to remain constant and unchanged through 2017 as indicated in the FOF. In this regard Plaintiffs are submitting herewith a proposed amended Judgment Order reflecting the clarifications that are requested.

## IV. LEGAL ARGUMENT

Parties seeking a clarification of a judgment or order from the Court may do so under Fed. R. Civ. P. 59(e). *E.g., Capacchione v. Charlotte-Mecklenberg* Schools, 190 F.R.D. 170, 175 (W.D.N.C. 1999); *Belair v. Lombardi*, 151 F.R.D. 698, 699 (M.D. Fla. 1993).

> [The] Court has considerable discretion to grant or deny a Rule 59(e) motion. *See Huff v. Metro Life Ins. Co*., 675 F.2d 119, 122 (6th Cir. 1982). To prevail on such a motion, a party must show "clear error in the court's prior decision or . . . put forth an intervening controlling decision or newly discovered evidence not previously available." *Al-Sadoon v. FISI Madison Financial Corp*., 188 F.Supp.2d 899, 901-902 (M.D. Tenn. 2002). Such a Motion may also be granted to "prevent manifest injustice." *Id. at 901, quoting GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

*Grier v. Goetz*, 402 F.Supp.2d 871, 873 (M.D. Tenn. 2005). In addition, after a non-jury trial the Court can alter or amend the judgment for one of three reasons,

> Rule 59 provides that, in an action tried without a jury, the court 'may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, and direct entry of a new judgment. FED. R. CIV. P. 59(a). Under the rule, the court may alter or amend the judgment entered after a non-jury trial for (1) manifest errors of law, (2) manifest errors of fact, or (3) newly discovered evidence. *Geshwind v. Garrick*, 738 F. Supp. 792, 793 (S.D.N.Y. 1990, aff'd 927 F.2d 594 (2[d] Cir.), *cert. denied,* 502 U.S. 811, 116 L.Ed.2d 34, 112 S.Ct. 58 (1991); *Agola v. Hagner,* 678 F. Supp. 988, 991 (E.D.N.Y. 1987).

> *DiPirro v. United States*, 189 F.R.D. 60, 62-63 (W.D.N.Y. 1999).

Plaintiffs assert there is clear error in the Order, that there is newly discovered evidence previously unavailable at the time of trial and/or that absent clarification and amendment to the Order there will be manifest injustice to the Plaintiffs. The Plaintiffs therefore request that the Court exercise its discretion to clarify and/or amend the Order in this case. *See Huff v. Metro Life Ins. Co*., 675 F.2d 119, 122 (6th Cir. 1982).

**A.      There is clear error in the Order with respect to the absence of a declaratory ruling that the Court found in favor of the Plaintiffs on the issues of whether their health care benefits were vested, and/or the Plaintiffs would suffer manifest injustice absent amendment of the Order.**

Even though the issue of whether the Plaintiffs' health care benefits were vested was contested at each and every stage of this litigation, and was addressed and decided in favor of the Plaintiffs in the FOF (though subject to a cap), the Order includes no declaratory relief for Plaintiffs in this regard. The absence of a judgment in the Plaintiffs' favor as to their request for a declaratory judgment on this issue is clear error and/or results in manifest injustice to the Plaintiffs.

Taken literally, the language in the Order indicates (contrary to the FOF) that the Plaintiffs were not successful on their claim for a declaration that their health care

benefits were vested, and further that their request for declaratory relief is dismissed with prejudice. Plaintiffs respectfully contend that in light of the numerous references to these benefits being vested (albeit subject to a cap) in the FOF, the Order as currently worded misstates what the Court ruled. Under the wording of the Order, Alcoa could terminate the remainder of Plaintiffs' health care benefits immediately as there is no prohibition against that in the Order – that is, no declaration, consistent with the FOF, that Plaintiffs proved the benefits are vested though subject to a cap. While the FOF gives the Court's reasoning for what is stated in an Order, it is the Order itself that carries the weight of law. *See* Fed. R. Civ. P. 58 (entry of the judgment triggers the time for an appeal to run); *Cf. Communications Workers of America, AFL-CIO v. United Telephone Co. of Ohio*, 491 F.2d 207 (6th Cir. 1974) (discussing the difference in effect between the judgment pursuant to Rule 58 and the memorandum entered by the Court). The Court's finding in the FOF that the benefits are vested is important to the retirees since vested benefits are afforded greater protection. *E.g., Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660 (6th Cir. 1998) (noting how vested benefits are forever unalterable). Accordingly Plaintiffs request that the Court clarify and amend its Order to include a specific judgment granting the Plaintiffs' request for a declaration that their health care benefits are lifetime, vested benefits.

**B.     There is clear error in the Order with respect to the absence of a declaratory ruling to defining specifically the cap amount to which the Plaintiffs' vested health care benefits are subject, and/or the Plaintiffs would suffer manifest injustice absent amendment.**

The Court's FOF indicates that, while the Court agreed with the Plaintiffs' contention that their health care benefits were lifetime vested benefits, it disagreed with

the Plaintiffs' contention that those benefits were not subject to a cap, and disagreed with Plaintiffs' argument that if vested and capped, Alcoa was not paying the vested and capped amount (as of the time of trial). (FOF, ¶245) However the Court did not make clear what the exact amount of that cap is and what it should be in the future. The Court does state, "the 2006 CBA properly implemented the 2001 cap at $7,767 for pre-65/non-Medicare retirees and at $3,389 for post-65/Medicare eligible retirees." (FOF ¶276). Accordingly Plaintiffs request that the Court declare that retirees under the 2006 CBA are entitled to have Alcoa fund benefits at $7,767 for pre-65/non-Medicare retirees and at $3,389 for post-65/Medicare eligible retirees. Because the Order as it stands is silent as to these specifics the Plaintiffs assert it offers them no guidance and offers Alcoa no restriction on figuring what the cap is in future years, thus leaving Alcoa free to set the cap arbitrarily in whatever amount it chooses and passing any costs associated with that change on to the retirees (and potentially triggering additional time-consuming and costly litigation). That scenario contravenes what the Plaintiffs believe was the intent of the Court as shown in the language quoted from the FOF. As unrestricted changes in the cap amount would cause an unfair hardship on the Plaintiffs, they assert manifest injustice would result from the Court's omission of a specific cap amount. The FOF do seem fairly clear that the cap is $7,767 for pre-65/non-Medicare retirees and $3,389 for post-65/Medicare eligible retirees. The Plaintiffs therefore request that the Order be clarified and, if necessary, amended to include a declaration of the specific cap amount to which their vested health care benefits are subject.

**C.      There is clear error in the Order in light of newly discovered evidence with respect to whether the plan design, premiums and deductibles to which the Plaintiffs are subject are to remain constant until 2017, and/or the Plaintiffs would suffer manifest injustice absent amendment.**

Despite language in the FOF that appears to indicate that the plan design, premiums and deductibles set forth in the 2006 CBA are to remain unchanged until 2017, the Order itself is silent. As is shown in the document attached to the Coleman Declaration, the 2010 Retiree Healthcare Summary shows an increase (as of January 1, 2011) in the monthly premium for pre-Medicare retirees in the amount of $10 per month and then another increase in the amount of $5 per month beginning January 1, 2013. As of January 1, 2011 the monthly premium for post-Medicare retirees will go up by $5 per month and in addition will go up another $5 per month beginning January 1, 2013. Also as of January 1, 2011 the deductible had risen to $300 per person/$600 per family under the proposed revisions, up from $250 per person/$500 per family under the 2006 CBA. This seems to contravene the Court's finding that there were to be no plan premium increase or design changes until 2017.

As stated above, one of the reasons that a judgment may be revisited is because of the discovery of new evidence that was unavailable at the time of trial. *Fed. R. Civ. P.* 59(a). The information contained in the attachment to the Declaration is exactly this sort of newly discovered evidence. The attachment came about as a result of negotiations between Alcoa and the Union that took place in June 2010, well after the conclusion of the trial in this case on October 1, 2009. It is now appropriate for the Court to consider the information contained in the attachment to the Declaration, because this evidence was not available prior to the completion of the trial.

When examined, the importance of this new evidence is obvious. The Court stated in the FOF that "[a]s a concession to the Union, Alcoa negotiated a plan design that would ensure that retiree premiums remained constant from year to year rather than

fluctuating with the cost of health care. Accordingly, any premiums paid while annual costs are below the cap will boost the notional account and *will prevent premiums from rising sporadically when costs exceed the cap by greater margins in the future*," (FOF, ¶277, emphasis added) and "[t]he plan design changes set forth in the 2006 CBA *will ensure that no further plan design changes will be necessary until 2017*." (FOF, ¶288, emphasis added). The new evidence attached to Plaintiffs' declaration shows just the opposite. Alcoa has in fact increased the premiums and deductibles to be paid by the Plaintiffs beginning in 2011 and will increase them again in 2013. This is exactly the situation contemplated by the portion of the federal rule that allows the Court to receive and consider new evidence. *Compare Keweenaw Bay Indian Community v. State of Michigan*, 152 F.R.D. 562, 563 (W.D. Mich. 1992) (refusing to grant a Rule 59 motion because the plaintiff did "not assert that there has been a change of facts since the submission of the issues to the Court.")

From Plaintiffs' initial Complaint filing onward, Plaintiffs consistently alleged a right to declaratory and injunctive relief under 29 U.S.C. § 1132(a) and other law. See Complaint filed November 17, 2006, at ¶¶ 66-73. Plaintiffs requested "relief in the form of an order declaring that Plaintiffs are vested in the welfare benefits plan benefits provided to Plaintiffs and their spouses at the times of Plaintiffs' retirement (or earlier vesting in the plan)." *Id.* ¶ 73. Accordingly, the relief sought herein in the form of a modification of the Judgment Order to declare that Plaintiffs' benefits are vested (consistent with what is found in the Findings of Fact and Conclusions of Law) is consistent with what Plaintiffs requested in their Complaint. Further, the Complaint also requested "an injunction … against Defendant's reduction of their welfare benefits under

the Plan ....." *Id.* Accordingly, it is appropriate for the Court to amend the Judgment Order to clarify that Defendant is obligated to maintain the benefits at the levels this Court in its Findings has found to be vested.

Plaintiffs sought similar relief elsewhere in the Complaint. *See id.* ¶ 79 (claim under NLRA including for "declaratory judgment" and "injunctive relief"); ¶ 89 (claim under ERISA for breach of fiduciary duty including request for "equitable relief, injunctive relief, declaratory relief"); ¶¶ 90-93 (claim for declaratory and injunctive relief); Prayer for Relief ¶¶ 1, 3 (accord). Further, it is clear that courts have routinely awarded such relief under ERISA and other applicable law. *See, e.g., Rose v. Volvo Const. Equipment North America, Inc.*, 542 F.Supp.2d 751, 768-69 (N.D. Ohio 2008) ("The court hereby grants declaratory and injunctive relief for Plaintiffs, ordering that VCENA is obligated under ERISA and the LMRA to maintain fully-funded health care insurance benefits to Plaintiff retirees, spouses, surviving spouses, and eligible dependents of retirees and fully-funded life insurance benefits to Plaintiff retirees during the lifetime of the class representatives and class members.").

In light of the new evidence, the Plaintiffs now seek a clarification/amendment of the Order that declares that the premiums, deductibles and the plan design set forth in the 2006 CBA are to carry through until 2017 as indicated in the FOF. Further, the Plaintiffs request that the Order be amended to enjoin Alcoa from making any changes in the premiums, deductibles or plan design until 2017 as stated by the Court in the FOF.

## V.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their motion to clarify and/or amend the existing Order to address the Plaintiffs' requests for declaratory and injunctive relief.

Respectfully submitted this 23rd day of March, 2011 by:

  s/Gregory F. Coleman
Gregory F. Coleman, BPR No. 014092
Greg Coleman Law PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 247-0080 (phone)
(865) 522-0049 (fax)
greg@gregcolemanlaw.com

s/Mona Lisa Wallace
Mona Lisa Wallace
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
Admitted Pro Hac Vice

s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, P.C.
11 N. Pearl St., Suite 1609, Box 45
Albany, New York 12207
(518) 463-7501 (phone)
(518) 463-7502 (fax)
catapan@inbox.com
Admitted Pro Hac Vice

s/Sarah Catapano-Friedman
Sarah Catapano-Friedman
Robert S. Catapano-Friedman, P.C.
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110

23

(617) 542-7711 (phone)
617-542-7712 (fax)
scf@cflawfirm.com
Admitted Pro Hac Vice

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify on this 23rd day of March, 2011, I electronically filed the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR AMENDMENT OF THE JUDGMENT ORDER with the Clerk of the Court using the CM/ECF filing system, which will electronically serve on the same date, the attorneys for Defendant as indicated on the electronic filing receipt.

s/Gregory F. Coleman
Gregory F. Coleman