# Exhibit L

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CHARLES CURTIS et al.,                )
                                      )
        Plaintiffs,                   )
                                      )
    v.                                )        Civil Action No.:  3:06cv448
                                      )
ALCOA INC., Individually and as       )
Fiduciary of the Employees' Group     )
Benefits Plan of Alcoa Inc., Plan II, )
                                      )
        Defendant.                    )


DEFENDANT ALCOA INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR AMENDMENT
OF THE JUDGMENT ORDER



Evan R. Chesler
Daniel Slifkin
CRAVATH, SWAINE & MOORE LLP
    825 Eighth Avenue
        New York, New York 10019
            (212) 474-1000

John A. Lucas
MERCHANT & GOULD, P.C.
    Suite 203
        110 McGhee Tyson Boulevard
            Alcoa, Tennessee 37701
                (865) 380-5978

*Counsel for Defendant*



April 11, 2011

# Table of Contents

**Page**

Table of Authorities ........................................................................................................... ii

Preliminary Statement .........................................................................................................1

Statement of Facts ...............................................................................................................3

      A.     The Record Through Trial ................................................................................3

      B.     Plaintiffs' New Factual Assertions Concerning the 2010 CBA..............................4

Applicable Law.....................................................................................................................5

Argument ..............................................................................................................................6

I.     PLAINTIFFS FAIL TO SHOW THAT THE ORDER SHOULD BE AMENDED TO DECLARE THAT THEIR BENEFITS HAVE VESTED. ......................6

II.    PLAINTIFFS FAIL TO SHOW THAT THE ORDER SHOULD BE AMENDED TO PREVENT ALCOA FROM CONTRIBUTING BELOW A SPECIFIED CAP AMOUNT OR CHANGING PLAINTIFFS' PREMIUMS, DEDUCTIBLES AND PLAN DESIGNS. ..................................10

      A.     The Order Contains No "Clear Error of Law" and Creates No "Manifest Injustice". ......................................................................................10

      B.     "Newly Discovered Evidence" Does Not Justify Plaintiffs' Proposed Amendments. ......................................................................................13

Conclusion ..........................................................................................................................16

# Table of Authorities

**Page(s)**

**Cases**

Athenian Realty Corp. v. Sw. Bell Tel. Co., 338 F.2d 1001 (5th Cir. 1965)...................................8

Carter v. Nance, 200 S.W.2d 457 (Ky. Ct. App. 1947) ...............................................................8

City of Quincy v. Sturhahn, 165 N.E.2d 271 (Ill. 1960)...............................................................8

Commc'ns Workers of Am., AFL-CIO v. United Tel. Co. of Ohio, 491 F.2d 207 (6th Cir. 1974) ........................................................................................................................9

Day v. Krystal Co., 241 F.R.D. 474 (E.D. Tenn. 2007) ...............................................................5

Deplae v. Reg'l Acceptance Corp., No. 09-cv-227, Order (Dkt. No. 24) (June 3, 2010) ........................................................................................................................8

Dorger v. Allstate Ins. Co., No. 2:08-56, 2009 WL 2136268 (E.D. Ky. July 16, 2009) ...............6

GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804 (6th Cir. 1999)...................................6, 13

H & A Land Corp. v. City of Kennedale, No. 4:02-cv-458, 2005 U.S. Dist. LEXIS 25797 (N.D. Tex. Oct. 24, 2005) ........................................................................................6

Huffaker v. Metro. Life Ins. Co., No. 05-cv-527, Order (Dkt. No. 37) (March 8, 2007) ........................................................................................................................8

Jacobs v. Elec. Data Sys. Corp., 240 F.R.D. 595 (M.D. Ala. 2007)...............................................8

Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv., 616 F.3d 612 (6th Cir. 2010) .............5, 6, 13

Lufkin v. Cap. One Bank (USA), No. 10-cv-18, Order (Dkt. No. 33) (July 16, 2010)...................8

Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743 (2010)...................................................11

Reese v. CNH America LLC, 574 F.3d 315 (6th Cir. 2009) .....................................................2, 11

Tr. of the Int'l Bhd. of Elec. Workers Local No. 129 Pension Fund v. Crafton, No. 1:10-cv-2197, 2011 WL 332723 (N.D. Ohio Jan. 31, 2011) ...................................................5

Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., Nos. 90-1983 & 90-2601, 1992 WL 364999 (E.D. La. Nov. 24, 1992) ...........................................................................5

United States v. Alaska S. S. Co., 253 U.S. 113 (1920) ...............................................................7

United States v. Hark, 320 U.S. 531 (1944) ...............................................................................9

Case 3:06-cv-00448-PLR-CCS    Document 532    Filed 04/11/11    Page 3 of 20
PageID #: 13010

**<u>Statutes & Rules</u>**

Fed. R. Civ. P. 58 .................................................................................................................9

Fed. R. Civ. P. 59(a)(2) ........................................................................................................5

Fed. R. Civ. P. 59(e) ............................................................................................................5

Defendant Alcoa Inc. ("Alcoa") respectfully submits this memorandum in opposition to Plaintiffs' Motion for Clarification and/or Amendment of the Judgment Order (the "Motion").

## Preliminary Statement

Plaintiffs sued Alcoa on behalf of a class of its former union-represented hourly employees who retired between June 1, 1993, and June 1, 2006, and the spouses and dependents of those retirees. The purpose of the lawsuit was to secure health benefits for the class beyond those that the class was receiving from Alcoa under its then-prevailing 2006 CBA. On March 9, 2011, the Court conclusively determined that the class was not entitled to any additional benefits. Indeed, the Court found that Alcoa was <u>already</u> providing Plaintiffs with more than it was required to provide under its prior agreements with the Union. Accordingly, the Court held that Plaintiffs were entitled to "take nothing" in the lawsuit, and dismissed their claims.

Now, after failing to secure any tangible victory for their clients, Plaintiffs' counsel ask the Court to amend its Judgment Order to include, among other things, declaratory relief that would do nothing more than declare as vested a level of benefits that is <u>less</u> than what Alcoa is actually paying on behalf of retirees. In a transparent attempt to obtain attorney's fees, Plaintiffs' counsel request relief that will gain their clients no benefit that they do not already have.

Plaintiffs fail to acknowledge that amending a judgment is an extraordinary remedy that is granted sparingly—when there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. Plaintiffs' failure to establish any of those bases is unsurprising given that the two

types of amendments that they seek do not call into question the rationale of the Court's decision or the outcome that the Court reached.

First, Plaintiffs ask the Court to amend the Judgment Order to declare—as the Court already has done in its Findings of Fact and Conclusions of Law—that Plaintiffs' retirement healthcare benefits are vested. Plaintiffs claim that the Court's failure to do so constitutes a "clear error of law", but they cannot cite a single case for the extraordinary proposition that a court must issue an order reflecting all legal conclusions that the court has reached—even those that have no bearing on the outcome of the case. Plaintiffs further claim that absent such an amendment to the Judgment Order they would suffer "manifest injustice", but fail to explain how. Even before this Court's ruling, Alcoa was committed to providing benefits to members of the plaintiff class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa agreed to give them.

Second, Plaintiffs ask the Court to amend its Judgment Order to include declaratory and injunctive relief that, among other things, would prevent Alcoa from changing Plaintiffs' premiums, deductibles and plan designs through 2017—a result that is potentially inconsistent with this Court's ruling that Alcoa is entitled to cap its retiree healthcare payments. They contend that failure to include such relief in the Judgment Order is error in light of what it dubs "newly discovered evidence": the plan design changes that Alcoa and its Union negotiated in the 2010 CBA. This argument, too, must fail, as there is no basis to read the Court's ruling as suggesting that Alcoa cannot continue to bargain over its retiree healthcare plan (so long as it meets its obligations under the cap) and cannot continue to make reasonable modifications to its plan design (as allowed by the Sixth Circuit's decision in Reese v. CNH America LLC, 574 F.3d

2

315 (6th Cir. 2009)).  In fact, the cap agreements and the 2006 CBA, all of which were upheld by

this Court, make retiree health benefits a mandatory subject of bargaining in the future; therefore,

Alcoa and the Union <u>must</u> bargain over the terms of any plan design changes.  There is no basis

for Plaintiffs to attempt to undo the bargain that Alcoa and its Union reached in 2010 (which

provides Plaintiffs with even further benefits than they would have obtained under earlier

CBAs), and certainly not on this motion to amend—without the benefit of formal allegations,

discovery and a trial.

## **<u>Statement of Facts</u>**

### A. <u>The Record Through Trial</u>

Plaintiffs brought this lawsuit pursuant to the Labor Management Relations Act of

1947 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"),

alleging that Alcoa had unlawfully modified Plaintiffs' retiree healthcare plans.  (Fifth Am.

Compl. ("Compl.") (Dkt. No. 169) ¶¶ 1, 8.)  From the beginning of this lawsuit, Plaintiffs'

purpose was to undo the 2006 Collective Bargaining Agreement ("CBA") that Alcoa had

reached with its Union.  (<u>See, e.g.</u>, Compl. ¶ 116 (asking for an order requiring Alcoa "to restore

Plaintiffs' benefits to what they were . . . prior to any 2006 CBA provisions purporting to

effectuate changes to those benefits").)  Plaintiffs sought, principally, injunctive relief preventing

Alcoa "from reducing Plaintiffs' welfare benefits from the level provided Plaintiffs by [Alcoa] at

the time Plaintiffs retired" (<u>id.</u>, Prayer for Relief, ¶ 2), as well as "compensatory damages to

make Plaintiffs whole for losses caused by [Alcoa's] refusal to continue the Plan at the level

provided Plaintiffs at the time Plaintiffs retired" (<u>id.</u> ¶ 3).  In addition, and pertinent to the instant

Motion, Plaintiffs sought "a declaratory judgment stating that Plaintiffs have vested welfare

benefits to be provided by [Alcoa] unreduced from those previously promised and provided to

3

Plaintiffs at the time of [their] retirement". (Id. ¶ 4.) Following the close of discovery, the parties filed cross-motions for summary judgment, which the Court denied. (See 3/19/09 Mem. & Order (Dkt. No. 392) at 14.)

After holding an eight-day bench trial, the Court issued its Findings of Fact and Conclusions of Law (the "Findings and Conclusions") on March 9, 2011. The Court held that Plaintiffs were not entitled to any benefit beyond what they were receiving under the 2006 CBA because: (1) each of the so-called "cap letters" (negotiated in 1993, 1996 and 2001) was enforceable (Op. (Dkt. No. 523) ¶¶ 238-75); (2) Plaintiffs' retirement benefits did not vest until retirement and, thus, vested subject to the enforceable cap agreements (id. ¶¶ 211-37); and (3) Alcoa had properly implemented the 2001 cap agreement through collective bargaining with the Union in 2006 (id. ¶¶ 276-89). The Court issued a Judgment Order (the "Order") (Dkt. No. 524) accompanying the Findings and Conclusions, which provides, in pertinent part: "[F]or the reasons set forth in the findings of fact and conclusions of law filed contemporaneously with this order, it is ordered and adjudged that the plaintiffs take nothing, and that the action be dismissed with prejudice on the merits."

B.    Plaintiffs' New Factual Assertions Concerning the 2010 CBA

In support of this Motion, Plaintiffs have submitted a Summary Plan Description ("SPD") pertaining to the 2010 CBA (see Decl. of Gregory F. Coleman in Supp. of Pls.' Mot. for Clarification and to Am. the J. Order ("Coleman Decl.") (Dkt. No. 526), Ex. A), which was negotiated between Alcoa and its Union in June 2010 (see Pls.' Mem. in Supp. of Mot. for Clarification and/or Am. of the J. Order ("Mem.") (Dkt. No. 526) at 20).

The SPD shows that, as a result of the June 2010 negotiations with the Union, Alcoa increased premiums, beginning on January 1, 2011, by $10 per month for pre-Medicare retirees and by $5 per month for post-Medicare retirees, and by an additional $5 per month for all

retirees beginning on January 1, 2013. Alcoa also increased deductibles by $50 per person and changed the 90/10 plan under the 2006 CBA to an 85/15 plan. (See Coleman Decl., Ex. A, at 2-3.) In addition, Alcoa agreed to several additional expenditures that will serve to reduce the burden on certain participants—such as two lump sum payments to surviving spouses of deceased retirees totaling $1,750 (id. at 8)—as well as annual contributions to the notional account totaling $15 million over the term of the CBA (id. at 1). Alcoa's actuaries currently estimate that, with those plan design changes, the notional account will last beyond 2017 (the date that Alcoa's actuaries previously estimated), until 2020.

## Applicable Law

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to make "[a] motion to alter or amend a judgment". Fed. R. Civ. P. 59(e).[1] "Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose." Tr. of the Int'l Bhd. of Elec. Workers Local No. 129 Pension Fund v. Crafton, No. 1:10-cv-2197, 2011 WL 332723, at *1 (N.D. Ohio Jan. 31, 2011); see also Day v. Krystal Co., 241 F.R.D. 474, 476 (E.D. Tenn. 2007) ("In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." (internal quotation marks omitted)).

A motion to amend the judgment may be granted on only four bases: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice". Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,

---

[1] Plaintiffs' Motion is also made pursuant to Rule 59(a)(2), which provides: "After a nonjury trial, the court may, on a motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2) (emphasis added). A motion for a new trial under Rule 59(a)(2) has similar requirements to a motion to amend the judgment. See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., Nos. 90-1983 & 90-2601, 1992 WL 364999, at *2 (E.D. La. Nov. 24, 1992).

5

616 F.3d 612, 615 (6th Cir. 2010) (internal quotation marks omitted).  Each basis is exceedingly

narrow.  For example, a clear error of law can be established only if "a judgment [is] dead

wrong", H & A Land Corp. v. City of Kennedale, No. 4:02-cv-458, 2005 U.S. Dist. LEXIS

25797, at *5 (N.D. Tex. Oct. 24, 2005) (internal quotation marks omitted), or if the "errors were

so egregious that an appellate court could not affirm the judgment", Dorger v. Allstate Ins. Co.,

No. 2:08-56, 2009 WL 2136268, at *2 (E.D. Ky. July 16, 2009).  Likewise, newly discovered

evidence will provide a basis to overturn a judgment only if a party can "demonstrate that their

'newly discovered' evidence was unavailable prior to the Court's ruling".  Leisure Caviar, 616

F.3d at 615 (internal quotation marks omitted); see also GenCorp, Inc. v. Am. Int'l Underwriters,

178 F.3d 804, 834 (6th Cir. 1999).

## Argument

Plaintiffs' basic argument is that the Court should amend the Order because it is

inconsistent with the Court's Findings and Conclusions.  (Mem. at 2.)  They request seven

specific amendments to the Order (see Pls.' [Proposed] Am. J. Order (the "Proposed Order")

(Dkt. No. 525)), which fall into two broad categories:  (1) declaratory relief establishing that

Plaintiffs' benefits have vested (see Proposed Order ¶¶ 2-3, 5-6; Mem. at 17-18); and

(2) declaratory and injunctive relief preventing Alcoa from making changes to Plaintiffs'

premiums, deductibles and plan designs (Proposed Order ¶¶ 1, 5-7; Mem. at 19-22), and

preventing Alcoa from contributing below a specified cap level (see Proposed Order ¶¶ 3-4;

Mem. at 18-19).  There is no basis for any of the amendments that Plaintiffs seek.

I.     PLAINTIFFS FAIL TO SHOW THAT THE ORDER SHOULD BE AMENDED TO
       DECLARE THAT THEIR BENEFITS HAVE VESTED.

Throughout this litigation, Plaintiffs have taken the position that they are entitled

to unlimited healthcare for life because they retired with vested, uncapped benefits.  (See, e.g.,

Compl. ¶¶ 103-04; Op. ¶ 204.)  Alcoa, by contrast, has argued that Plaintiffs were not entitled to more than what they were receiving under the 2006 CBA because <u>either</u> they did not have a vested right to retiree benefits <u>or</u> their benefits had vested subject to the earlier cap agreements. This Court agreed with Alcoa—that Plaintiffs' benefits had vested "subject to the cap" (Op. ¶ 237)—and dismissed the lawsuit, finding that Alcoa was already providing benefits to its retirees beyond what the cap agreement required of it (<u>see</u> <u>id.</u> ¶¶ 282-83).  As such, the Court issued an Order that Plaintiffs shall "take nothing", and Plaintiffs have no basis to challenge that Order.

<u>First</u>, central to Plaintiffs' contention that the Court failed to address all of their claims for relief is the half-truth that they actually requested a declaratory judgment that their benefits were vested.  In fact, Plaintiffs sought only a declaration that their benefits were vested at the <u>uncapped, unreduced amount</u>.  (<u>See, e.g.</u>, Compl., Prayer for Relief, ¶ 4 (requesting "a declaratory judgment stating that Plaintiffs have vested welfare benefits to be provided by Defendant <u>unreduced from those previously promised and provided to Plaintiffs at the time of retirement</u>" (emphasis added)); <u>id.</u> ¶ 5 (requesting "equitable reformation of the Plan to provide that said benefits <u>shall not be reduced from the level provided Plaintiffs by Defendant at the time Plaintiffs retired</u>" (emphasis added)); <u>see also</u> <u>id.</u> ¶¶ 2-3.)  It is unsurprising that Plaintiffs did not seek declaratory relief as to the vesting of their benefits generally; that would not have achieved any victory for the class, as evidenced by the fact that the Court ultimately did find vesting but ruled against the class, finding that Plaintiffs "were vested in their healthcare benefits <u>subject to the limitations imposed by the cap</u>".  (Op. ¶ 289 (emphasis added).)  Thus, a declaratory judgment merely of vested benefits would have been outside the scope of relief that Plaintiffs sought.  <u>See</u> <u>United States v. Alaska S. S. Co.</u>, 253 U.S. 113, 116 (1920) (noting the "settled

7

principle" that a court "will determine only actual matters in controversy essential to the decision of the particular case before it").

Second, even if Plaintiffs had requested a declaration that their benefits were vested, Plaintiffs fail to explain the necessity of including such a declaration in the Order itself (as opposed to the Findings and Conclusions), much less how failure to do so constitutes a "clear error of law" or causes them "manifest injustice". "[N]o technical form is prescribed for a declaration of rights in a suit for declaratory judgment, and it is sufficient if the rights may be ascertained from the findings of the court . . . in view of the controversy presented." City of Quincy v. Sturhahn, 165 N.E.2d 271, 275 (Ill. 1960) (emphasis added); see also Athenian Realty Corp. v. Sw. Bell Tel. Co., 338 F.2d 1001, 1001-02 (5th Cir. 1965) (holding that "the conclusions of law in the Court's memorandum opinion, which are deemed to be incorporated in the judgment, set forth an adequate declaration of the rights of the respective parties" (citation omitted)); Carter v. Nance, 200 S.W.2d 457, 459 (Ky. Ct. App. 1947) ("It is not necessary that a declaratory judgment be in any particular form . . . so long as the court actually passes upon or adjudges the issues raised by the pleadings.").[2]

Third, beyond their allegation of a mere technical error, Plaintiffs have not provided a good reason why the Order should be amended, which they must do as "a judgment will not be amended or altered if to do so would serve no useful purpose". Jacobs v. Elec. Data Sys. Corp., 240 F.R.D. 595, 599 (M.D. Ala. 2007). Plaintiffs claim that, without the proposed amendment, "Alcoa could terminate the remainder of Plaintiffs' health care benefits

---

[2] Indeed, the Order is consistent with this Court's standard practice, in cases in which the plaintiffs do not prevail, of issuing a brief order stating that the plaintiffs shall "take nothing", and preparing an accompanying opinion setting forth a thorough discussion of the Court's rationale. See, e.g., Lufkin v. Cap. One Bank (USA), No. 10-cv-18, Order (Dkt. No. 33) (July 16, 2010); Deplae v. Reg'l Acceptance Corp., No. 09-cv-227, Order (Dkt. No. 24) (June 3, 2010); Huffaker v. Metro. Life Ins. Co., No. 05-cv-527, Order (Dkt. No. 37) (March 8, 2007).

immediately". (Mem. at 18.) But Plaintiffs do not explain why that is the case given that this Court found that their benefits are vested and stated so explicitly in its Findings and Conclusions.[3] Nor do they cite any evidence that even suggests that Alcoa has any intention, or has taken any action, to terminate Plaintiffs' benefits. To the contrary, over the course of the trial, during which the Court heard detailed testimony of the roughly 13 years of negotiations between Alcoa and its unions over retiree healthcare, there was no suggestion that Alcoa so much as contemplated eliminating, or even reducing the amount it spent on, healthcare for retirees within the plaintiff class. (See, e.g., DX 205, 263A (memoranda from Buck Consultants contemplating "alternatives" to the retiree medical program, none of which entailed eliminating benefits or lowering the cap).) In fact, during the course of the litigation, Alcoa's counsel represented that Alcoa had no intention to fall short of its contractual obligation to provide benefits at the capped level. (See, e.g., Summ. J. Tr. (Dkt. No. 379) at 87 (Aug. 27, 2008) ("Alcoa's paying almost $8,000 per person pre-Medicare. We'll continue to do that for the rest of [Plaintiffs'] lives.").) Furthermore, because retiree healthcare is a mandatory subject of bargaining under the cap agreements, the Union is in a position to enforce Plaintiffs' rights under

---

[3] There is nothing that requires that every legal conclusion in a court's opinion be included in the court's order. Plaintiffs argue that unlike the Findings and Conclusions, "it is the Order itself that carries the weight of law". (Mem. at 18.) But the authorities Plaintiffs cite for this proposition (see id.) establish only that the Order "carries the weight of law" for the purposes of the appealability of the decision. See Fed. R. Civ. P. 58 (entry of judgment triggers the time for an appeal to run); Commc'ns Workers of Am., AFL-CIO v. United Tel. Co. of Ohio, 491 F.2d 207, 208 (6th Cir. 1974) (holding that the court lacked jurisdiction over the action because the judgment was not set out in a separate document). Indeed, that is the purpose of a separate judgment: to make the decision appealable and to start the clock for filing an appeal. See United States v. Hark, 320 U.S. 531, 535 (1944) ("tak[ing] the [court's] formal order . . . as in fact and in law . . . fixing the date from which the time for appeal ran").

them.[4]  This Court need not amend its Order based on speculation about hypothetical reductions in benefits that Plaintiffs will not suffer in the future.

II.     PLAINTIFFS FAIL TO SHOW THAT THE ORDER SHOULD BE AMENDED TO PREVENT ALCOA FROM CONTRIBUTING BELOW A SPECIFIED CAP AMOUNT OR CHANGING PLAINTIFFS' PREMIUMS, DEDUCTIBLES AND PLAN DESIGNS.

Plaintiffs also argue that the Order should be amended:  (1) to specify a particular cap amount and require Alcoa to contribute payments of at least that amount (see Proposed Order ¶¶ 3-4; Mem. at 18-19); and (2) to prevent Alcoa from making changes to the premiums, deductibles and plan designs set forth in the 2006 CBA until 2017 (Proposed Order ¶¶ 5-7; Mem. at 19-22).  Plaintiffs contend that those amendments are justified based on a "clear error of law" (namely that the Order is inconsistent with the Findings and Conclusions) and that Plaintiffs will suffer "manifest injustice" absent the amendments.  (Mem. at 18-22.)  Plaintiffs also argue that their amendments are proper because of "newly discovered evidence" that "Alcoa has . . . increased premiums and deductibles to be paid by the Plaintiffs beginning in 2011 and will increase them again in 2013".  (Id. at 20-21.)  All of those arguments fail.

A.     The Order Contains No "Clear Error of Law" and Creates No "Manifest Injustice".

Plaintiffs' contention that the Order is clearly erroneous and unjust stems from their own mistaken reading of this Court's Findings and Conclusions and of Sixth Circuit law.

First, this Court did not erroneously fail to specify a particular cap amount because Plaintiffs never requested as much.  (See Compl., Prayer for Relief.)[5]  Rather, it was

_____

[4] In fact, the Union continues to successfully represent Plaintiffs' interests, as it negotiated additional benefits for the retirees as part of the 2010 CBA, beyond that which Alcoa was obligated to provide under its earlier cap agreements.  (See infra at 14-15.)

[5] As discussed above, Alcoa has always contributed up to the cap amount and has given no indication that it will fail to do so in the future.  (See supra at 9.)

10

Plaintiffs' position throughout the litigation that their healthcare plans were not subject to <u>any</u> cap. Furthermore, the actual amount of the cap (which Plaintiffs now request in a formal order) was never in serious dispute during the litigation; Alcoa proposed the amount in its 2006 CBA negotiations, the Union agreed to the amount and the only one who <u>ever</u> disputed the amount was Plaintiffs' actuarial expert, Ian Altman, whose opinion, as the Court found, was replete with inconsistencies and faulty assumptions. (<u>See</u> Op. ¶¶ 190-92.) Despite Plaintiffs' contention that such a ruling would offer "guidance" to Plaintiffs and would impose additional "restriction[s]" on Alcoa (Mem. at 19), any such "guidance" is unnecessary because the 2006 cap letter is clear as to the amount of the cap, and Alcoa is fully committed to stand by its obligations under that cap letter.

    <u>Second</u>, Plaintiffs' proposed amendments restricting future modification to the plan design are directly <u>contrary</u> to this Court's ruling (which upheld Alcoa's <u>capped</u> plan) and prevailing Sixth Circuit law. As the Findings and Conclusions make clear, reasonable modifications to a retiree healthcare plan are permissible under <u>Reese v. CNH America LLC</u>, 574 F.3d 315 (6th Cir. 2009). (<u>See, e.g.</u>, Op. ¶¶ 283, 289.) By asking the Court to prevent Alcoa from making modifications to Plaintiffs' healthcare plans, Plaintiffs are effectively asking the Court to reverse its decision upholding Alcoa's capped plan (which anticipates that future cost increases will be borne by retirees) and write <u>Reese</u> out of its Findings and Conclusions.[6] In fact,

---

[6] Indeed, Plaintiffs ask for an <u>injunction</u> to prevent Alcoa from making changes to its plan design (<u>see</u> Proposed Order ¶ 7) without any argument as to why an injunction is the appropriate vehicle by which to constrain Alcoa's behavior. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." <u>Monsanto Co. v. Geertson Seed Farms</u>, 130 S. Ct. 2743, 2761 (2010). A permanent injunction is available only if the plaintiff can demonstrate: (1) "irreparable injury; (2) that remedies available at law . . . are inadequate"; (3) that the injunction is "warranted" in light of the "balance of hardships between the plaintiff and defendant"; and (4) "that the public interest would not be disserved by a permanent injunction". <u>Id.</u> at 2756 (internal quotation marks omitted). Plaintiffs' request for injunctive

the Findings and Conclusions make clear that, far from effecting "manifest injustice", reasonable modifications to Plaintiffs' healthcare plans have the potential to benefit the retirees, as they did in 2006 when they served to "reduce the overall cost of Alcoa's healthcare plan while also minimizing the burden placed on Alcoa's retirees".  (Id. ¶ 285.)

Third, Plaintiffs mistakenly seek support for their attempt to bind Alcoa in future negotiations in this Court's statement in the Findings and Conclusions that "[t]he plan design changes set forth in the 2006 CBA will ensure that no further plan design changes will be necessary until 2017".  (Mem. at 15 (emphasis omitted) (quoting Op. ¶ 288).)[7]  The Court made this statement in the context of explaining how the 2006 plan design changes were likely to benefit the retirees and thus were "reasonable modifications" under Reese.  At no point did the Court suggest that it would revisit its ruling if the prediction turned out to be incorrect, or that Alcoa and its Union were barred from subsequently undertaking any additional "reasonable modifications".  (See id. ¶¶ 283, 289).  In fact, this Court fully understands that healthcare costs are rising unpredictably; as such, the Court was careful to make no firm predictions but rather to say only that premiums were "expected to stay flat until 2017".  (Id. ¶ 287 (emphasis added); see also id. ¶ 288 ("Alcoa's actuaries currently estimate that the notional account should allow retiree premiums to remain constant until 2017." (emphases added)).)

_____

relief is also improper because Plaintiffs seek to void the terms of a CBA between Alcoa and the Union without including the Union as a party.  As Alcoa argued at the outset of this litigation, the Union is a necessary party to any decision issuing injunctive relief with respect to the 2006 CBA because it is a party to that CBA, and naturally has an ongoing interest in its enforcement.  (See, e.g., Def. Alcoa Inc.'s Resp. to Pls.' Omnibus Br. on Court-Ordered Issues (Dkt. No. 130) at 18-19.)

[7] Plaintiffs themselves make this argument half-heartedly, as they only go so far as to say that the "language in the FOF . . . appears to indicate that the plan design, premiums and deductibles set forth in the 2006 CBA are to remain unchanged until 2017 . . .".  (Mem. at 20 (emphasis added).)

In sum, Plaintiffs' complaint that the Order is "silent" as to their new request for relief preventing Alcoa from making plan design changes "between 2007 to 2017" (Mem. at 12), is not the same as identifying a flaw with this Court's Order. Rather, the substance of the Court's Order on this issue reflects the common sense conclusion that the Court intended to grant Plaintiffs no relief with respect to future, yet-to-be negotiated CBAs, just as it granted them no relief with respect to the 2006 CBA.

   B.    "Newly Discovered Evidence" Does Not Justify Plaintiffs' Proposed Amendments.

Plaintiffs also argue that the Court should grant their Motion based on "newly discovered evidence" that "Alcoa has . . . increased premiums and deductibles to be paid by the Plaintiffs beginning in 2011 and will increase them again in 2013". (Mem. at 20-21; see also supra at 4-5.) This "newly discovered evidence" has no bearing on the pending Motion.

Plaintiffs' attempt to introduce "newly discovered evidence" is untimely because that evidence was available to Plaintiffs before the Order issued. See Leisure Caviar, 616 F.3d at 615; GenCorp, 178 F.3d at 834. Plaintiffs concede that their "newly discovered evidence" arose in June 2010 (see Mem. at 20)—at least eight months before the Court's Order. They have not explained why they sat on this supposed "new" evidence and, on that basis alone, the Court should disregard this evidence.

Moreover, even had Plaintiffs pointed out the evidence in a timely fashion, it still would not provide a basis for amending the Order. First, Plaintiffs' evidence has no bearing on this Court's decision. Plaintiffs claim that this recent development contradicts the Court's prediction, based on Alcoa's actuarial valuations, that, with the 2006 plan design changes and the notional account, "no further plan design changes w[ould] be necessary until 2017". (Op. ¶ 288.) But as discussed above (supra at 12-13), the Court never suggested that its ruling that the 2006

13

plan design was permissible depended on Alcoa's inability to change the plan design in the future. Retiree healthcare has been a mandatory subject of bargaining since 1993, and thus Alcoa and the Union have the right—and the obligation—to negotiate modifications to retiree healthcare that respond to changing conditions.

Second, this Court's Findings and Conclusions did not invite Plaintiffs to bring before this Court, by way of motion, challenges to future CBAs between Alcoa and its Union. To the extent that Plaintiffs wish to challenge the 2010 CBA—which had not yet been negotiated at the time of the 2009 trial—they must state their allegations in a formal pleading, seek and provide discovery through the normal channels and undergo a trial on disputed issues. In their Motion, however, Plaintiffs do not even request an evidentiary hearing on their newly discovered evidence, seeking instead to re-open the record with a single declaration and obtain a summary ruling invalidating the 2010 plan design changes in their entirety.

Third, Plaintiffs fail to explain why the 2010 changes are less reasonable under Reese than the 2006 changes that were expressly upheld by the Court. Plaintiffs only baldly assert that they will suffer "unfair hardship" from "unrestricted changes" to the plan design. (Mem. at 19.) In support of this argument, they point to several plan design changes that will increase the healthcare costs to retirees. But even those changes—such as a $10 increase (at most) in monthly premiums beginning in 2011 and a $5 increase beginning in 2013 (see id. at 20; see also Coleman Decl., Ex. A, at 2)—are modest. Furthermore, Plaintiffs ignore the fact that those increases are offset by Alcoa's agreement to make an additional $15 million in contributions to the notional account—which will all go to pay for retiree healthcare—as well as lump sum payments to surviving spouses totaling $1,750 over the course of the CBA (which more than compensate for the higher monthly premiums). (See Coleman Decl., Ex. A, at 1, 8.)

14

Alcoa's actuaries currently predict that all of these changes, taken together, would extend the life of the notional account beyond 2017, to 2020, and thus forestall the date by which retirees would be required to bear 100% of the costs exceeding the cap. Of course, Alcoa is not criticizing Plaintiffs for failing to bring that fact to the Court's attention because Plaintiffs did not conduct discovery on the 2010 CBA—after all, it had nothing to do with this lawsuit. But that only further supports the conclusion that Plaintiffs' attempt to shoehorn its challenge to the 2010 CBA into this motion to amend cannot succeed.

In sum, Plaintiffs seek to challenge the 2010 CBA based on a flawed reading of this Court's Findings and Conclusions, to the effect that Alcoa cannot make any plan design changes until 2017. But Plaintiffs fail to recognize how those plan design changes actually confer a benefit on them, by extending the life of the notional account until 2020—when even more retirees will be over 65 and covered by Medicare. As discussed at greater length in Alcoa's Opposition to Plaintiffs' Motion for Attorney Fees and Expenses, Plaintiffs' counsel are stretching to identify a way in which this lawsuit brought their clients any "success on the merits". Plaintiffs' counsel have achieved nothing for their clients during this lawsuit and, in fact, the additional benefits that Plaintiffs now enjoy are due to collective bargaining between the Union and Alcoa.

## Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' Motion for

Clarification and/or Amendment of the Judgment Order.


April 11, 2011

                                        Respectfully Submitted,

                                        **ALCOA INC.**

By:    /s/  Daniel Slifkin                  
     *Evan R. Chesler (N.Y. Bar No. 1475722)
     *Daniel Slifkin (N.Y. Bar No. 2439768)
     CRAVATH, SWAINE & MOORE LLP
     825 Eighth Avenue
     New York, New York 10019
     212.474.1000 (telephone)
     212.474.3700 (facsimile)
     echesler@cravath.com
     dslifkin@cravath.com
     (*Admitted pro hac vice)
     Counsel for Defendant Alcoa Inc.

     John A. Lucas (Tenn. Bar No. 011198)
     MERCHANT & GOULD, P.C.
     Suite 203
     110 McGhee Tyson Boulevard
     Alcoa, Tennessee 37701
     865.380.5978 (telephone)
     865.380.5999 (facsimile)
     jlucas@merchantgould.com